## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DARIN MATHEWS, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>HOME DEPOT USA, INC.<br><br>          Defendant. | CIVIL ACTION<br><br>FILE NO. _____<br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Darin Mathews ("Plaintiff"), on behalf of himself and all others similarly situated, files this class action Complaint against Home Depot USA, Inc. ("Home Depot" or "Defendant"), and in support thereof states the following:

## NATURE OF THE CASE

1.      This is a nation-wide class action lawsuit by Plaintiff, individually, and on behalf of a putative class and subclasses of persons who rented tools from Home Depot pursuant to the form contract attached as Exhibit A (the "Contract") and who elected and paid for "Damage Protection" under the Contract.[1]

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning given them in the Contract.

2.    Under the Contract, if a customer rents a tool from Home Depot and the tool is damaged during the rental, the Contract requires Home Depot, and not the customer, to cover the cost of repair or replacement of the damaged tool if the customer pays an extra 15% of the tool rental fee to purchase Damage Protection, and the damage is not caused by "theft, abuse, or intentional acts." *See* Contract, ¶ 4(b).

3.    Plaintiff asserts that Home Depot is in breach of the Contract because only tool damage caused by "theft abuse, or intentional acts" is excluded from coverage, yet in practice Home Depot's Damage Protection excludes all "damage" and only covers "normal wear and tear".

4.    In the alternative to breach of contract, a unilateral mistake by Home Depot in its drafting of the Contract renders the entirety of the Damage Protection of the Contract meaningless and illusory and incapable of being enforced by a customer. *Id.* (emphasis added).  Accordingly, Plaintiff brings claims for rescission and return of all for all Damage Protection fees and associated sales taxes paid by members of the Class, as well as other damages.

5.    In the alternative to Plaintiff's claims for breach of contract, rescission, and restitution, Home Depot has engaged in promissory fraud because its uniform corporate policy regarding Damage Protection reflects that it never intended to

perform its obligations under the Contract, and instead only intended to cover the cost of "normal wear and tear" to tools as opposed to "damage" as required by the Contract.  Pursuant to this uniform corporate policy and despite conflicting Contract obligations, Home Depot charges its customers who purchased Damage Protection for *all* damage to tools rented under the Contract.

## THE PARTIES

6.      Plaintiff is a resident of Texas and was a Texas citizen at all times relevant to this lawsuit.

7.      Home Depot is a corporation organized under the laws of Delaware and with a principal place of business in Cobb County, Georgia.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) Plaintiff is a member of the putative class and both putative subclasses, each of which consists of at least 100 members; (b) Plaintiff is a Texas citizen; (c) Home Depot is a citizen of Delaware and Georgia; and (d) the amount in controversy for each of the Class and Subclasses exceeds the sum of $5 million exclusive of interest and costs; and (e) none of the exceptions under § 1332 applies to this claim.

9.    Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district, and Defendant's corporate headquarters is located in this district and division and Defendant is subject to personal jurisdiction in this district and division.

## STATEMENT OF FACTS

10.    On or about July 17, 2021 at 11:33 a.m., Plaintiff rented a Drain Camera from the Home Depot store number 0580 Windsor Park, located at 4909 Windsor Hill, San Antonio, Texas (the "Windsor Park Home Depot").

11.    The Drain Camera was due to be rented for four (4) hours, and was due to be returned to the Windsor Park Home Depot that same day, July 17, 2021, at 3:33 p.m.

12.    A Drain Camera is a snake-like device with a camera at one end that allows its user to execute complete inspection of pipes and drains.  A photograph of the Drain Camera rented by Plaintiff is attached as Exhibit B.

13.    In connection with the rental of the Drain Camera, Plaintiff and Home Depot entered into the Contract.

14.    The initial cost of renting the Drain Camera was $139.00.

15.    In connection with the rental of the Drain Camera, Plaintiff elected to purchase "Damage Protection" from Home Depot.

16.    The terms of the Damage Protection are set forth in the below excerpt from

the Contract:

**I. For Tool and Large Equipment Rentals Only.**

**(a)**    Equipment Damage.  Regardless of fault, Renter is responsible for all loss of and damage to tools and large equipment (including loss or damage due to normal use, caused by theft, abuse, misuse, neglect, or intentional acts). Renter is responsible for The Home Depot's loss of use and an administrative charge for expenses associated with processing the loss and damage claim (collectively, "**Administrative Charges**").

**(b)**    Damage Protection. Damage protection is an optional service offered by The Home Depot that, if selected, modifies this Agreement to relieve Renter of repair charges, replacement charges and Administrative Charges if the Equipment is damaged during normal use during the Rental Period ("**Damage Protection**"). In the event Renter elects Damage Protection services, the charge for Damage Protection is 15% of the Rental Price and will appear as a separate line-item on the Agreement and on the invoice. Renter must accept or decline the Damage Protection. Damage Protection is not insurance and The Home Depot may make a profit on its Damage Protection.  Damage Protection does not cover loss of or damage to the tools and large equipment caused by theft, abuse, or intentional acts. Renter expressly acknowledges and agrees that Renter will be responsible for all loss or damage.

**(c)**    Repairs.  In the event Renter does not elect to purchase Damage Protection, Renter agrees that an estimated "**Repair Cost**" will be charged for tools and large equipment that is returned with damage due to abuse, misuse, neglect, or intentional acts. The Repair Cost will not exceed the fair market value of the tool or large equipment and applicable fees. Renter acknowledges and agrees to pay the Repair Cost and authorizes The Home Depot to charge the Repair Cost to the Renter Card.  All maintenance or repairs must be performed by The Home Depot.

17.    Plaintiff's initial cost for the Damage Protection was $20.85 – which was

15% of the initial cost of the rental.

18.    The initial total cost of the Drain Camera rental, Damage Protection, and

estimated sales tax on those two charges was $173.04.

19.    Plaintiff was charged a $500.00 deposit to his Home Depot Account No.

XX8970 to cover the cost of the rental, Damage Protection, and estimated sales

tax.

20.    That same day, July 17, 2021, while operating the Drain Camera under

normal conditions and as the Drain Camera was intended to be used, the Drain

Camera became stuck in a "cleanout drain" at Plaintiff's residence.

21.     Shortly thereafter, on the same day, July 17, 2021, Plaintiff returned to the Windsor Park Home Depot and advised the tool rental department that the Drain Camera had become stuck in his drain.

22.     A Home Depot representative advised Plaintiff to "twist and pull" the Drain Camera to dislodge it from the drain.

23.     Plaintiff followed Home Depot's advice at which point the Drain Camera signal was lost, and the Drain Camera was damaged.

24.     Plaintiff reported to Home Depot that he had followed its advice but that the Drain Camera remained stuck in his drain.

25.     Home Depot advised Plaintiff that he needed to hire a plumber to remove the Drain Camera from his drain.

26.     On Monday July 19, 2021, and Tuesday July 20, 2021, Plaintiff hired a professional plumber to come to his residence, demolish masonry and rebar blocking access to the drain, and remove the Drain Camera from the cleanout drain.

27.     When the Drain Camera was removed from the drain, there was damage to the Drain Camera.  A photograph of this damage is attached hereto as Exhibit C.

28.     The Drain Camera was not damaged due to abuse or an intentional act.

29.     Plaintiff returned the Drain Camera to Home Depot on Tuesday July 20, 2021.

30.     Upon returning the Drain Camera to Home Depot, Plaintiff fully expected the damage to the Drain Camera to be covered by the Damage Protection he purchased.

31.      To Plaintiff's complete surprise, Plaintiff was advised by Jessica Leon, rental manager at the Windsor Park Home Depot, that because the Drain Camera had been damaged due to "neglect", the Damage Protection that Plaintiff purchased did not apply.

32.     To support Home Depot's position, Jessica Leon then handed Plaintiff the document attached as Exhibit D, which is an internal Home Depot corporate policy which asserts that Damage Protection only "covers repairs due to normal wear and tear."

33.     Jessica Leon left the counter for several minutes, and upon her return told Plaintiff she had spoken to the Windsor Park Home Depot store manager Louis Tuttle, who also confirmed to Plaintiff that Damage Protection only covered "normal wear and tear".

34.     The terms of Home Depot's internal corporate policy conflict with the terms of the Contract in that the policy states that Damage Protection only covers "normal wear and tear on equipment" while the Section 4(b) of the Contract covers tools "damaged during normal use" – which is a scope of coverage *much broader* than mere "wear and tear".  Furthermore, Exhibit D is evidence that at the time Plaintiff contracted with Home Depot, Home Depot did not intend to perform its duties under Section 4(b) of the Contract.

35.     Thereafter, Plaintiff was informed that in addition to there being no coverage under Damage Protection, that Plaintiff would be charged $2,467.01 to offset Home Depot's cost of having the Drain Camera replaced, a total rental fee of $796.00, **additional** Damage Protection of $45.90 (despite Plaintiff's claim for damage protection being denied), all in addition to his initial deposit of $500.00, and sales tax on all the above of $232.56 – for a total charge to Plaintiff of $3,051.47. Plaintiff's total charge of $3,051.47 as shown on the statement attached as Exhibit E.

36.     Plaintiff refused to pay the above charges.

37.     In response to Plaintiff's unwillingness to pay, Home Depot charged Plaintiff's Home Depot Account No. XX8970 the amounts it claimed to be owed.

38.    Home Depot's website advertises the terms of its tool rental Damage Protection.  A copy of that advertisement is attached as Exhibit F.  The terms of Exhibit F regarding the scope of Damage Protection coverage are inconsistent with the terms of the Contract and also with the terms of Home Depot's corporate policy given to Plaintiff by Jessica Leon.

39.    Home Depot's advertised terms make clear that "Customer shall be responsible for all repair or replacement costs ***not covered by Damage Protection***."  Exhibit F (emphasis added).

40.    In the alternative to promissory fraud, a Home Depot committed a unilateral mistake in the drafting of Section 4(b) the Contract in that, even after Damage Protection is selected by the Customer, Section 4(b) provides that "Renter expressly acknowledges and agrees that *Renter will be responsible for all loss or damage*." Exhibit A (emphasis added).

41.    The unilateral mistake in the drafting of Section 4(b) creates a loophole to Damage Protection coverage which, in effect, "swallows" any coverage extended by the other part of Section 4(b) and makes Damage Protection completely illusory, rendering Plaintiff, and all Class members, without any protection whatsoever, or at best, subject to arbitrary determination by Home Depot as to which claims are covered and which claims are not.

42.    Furthermore, Section 4(a) of the Contract expressly identifies six (6) distinct ways in which a tool can be damaged: "normal use, theft, abuse, misuse, neglect, or intentional acts."

43.    The Damage Protection plan only excludes damage which is caused by "theft, abuse or intentional acts" – which is inconsistent with Home Depot's internal policy, which provides that only "normal wear and tear" is covered under Damage Protection, and which in turn is inconsistent with Home Depot's advertisement regarding the scope of exclusions from Damage Protection.

44.    Damage to tools from "normal use", "misuse", and "neglect" are not excluded from coverage under Damage Protection, but despite this, if a customer pays for Damage Protection and the tool is damaged due to "normal use", "misuse" or "neglect", Home Depot still denies coverage and covers only "normal wear and tear", as evidenced by the corporate policy attached as Exhibit C.

## CLASS ACTION ALLEGATIONS

45.    Plaintiffs bring this lawsuit as a class action seeking representation of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

46.    Plaintiff asserts claims for rescission, restitution/money had and received, unjust enrichment and O.C.G.A. § 13-6-11 attorneys' fees and expenses of

litigation on behalf of a class (hereafter the "Class") defined as follows:

> All Home Depot customers who rented tools from Home
> Depot by executing a contract with language identical to
> or materially similar to the Contract, and who purchased
> Damage Protection and who did not have Damage
> Protection claims honored by Home Depot, for the time
> period of four (4) years before the filing of this lawsuit
> through the date of a class certification order.

47.    In the alternative to the Class, Plaintiff asserts a claim for breach of

contract on behalf of a subclass ("Subclass 1") defined as follows:

> All Home Depot customers who rented tools from Home
> Depot by executing a contract with language identical to
> or materially similar to the Contract, and who purchased
> Damage Protection and had the tool damaged by a cause
> other than an excluded cause, and who were denied
> coverage for Damage Protection, for the time period of six
> (6) years before the filing of this lawsuit through the date
> of a class certification order.

48.    In the alternative to the Class and Subclass 1, Plaintiff asserts a claim for

fraud and rescission on behalf of a subclass ("Subclass 2") defined as follows:

> All Home Depot customers in the state of Texas who
> rented tools from Home Depot by executing a contract
> with language identical to or materially similar to the
> Contract, and who purchased Damage Protection, for the
> time period of four (4) years before the filing of this
> lawsuit through the date of a class certification order.

49.    Excluded from the Class and the Subclasses are all officers and employees

of Home Depot and its affiliates, parents, and subsidiaries; all persons who make

a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

## Fed. R. Civ. P. 23(a)

50.     **Numerosity.** In 1995, Home Depot opened Tool Rental centers.  By 2015, the company was "the fourth largest equipment company in the U.S. and the biggest general large equipment and small tool rental company in the world."[2]  Upon information and belief, members of the Class, Subclass 1 and Subclass 2 are believed to number in the tens of thousands  and are so numerous and geographically dispersed throughout the United States that separate joinder of each is impracticable.

51.     **Ascertainability.** The members of the Class, Subclass 1 and Subclass 2 are ascertainable and readily identifiable from Home Depot information and data.

52.     **Commonality.** Common questions of law and fact predominate, which are susceptible to common answers:

> a.     Whether a unilateral mistake by Home Depot in the drafting Section 4(b) of the Contract allows the Damage Protection provision to be rescinded;

---

[2]     *See*     https://corporate.homedepot.com/newsroom/home-depot-tool-rental-20-years (last visited 6/29/2022).

b.      Whether the Home Depot is required to return to members of the Class the money paid by the Class Members paid for Damage Protection, sales taxes and all other monies paid;

c.      In the alternative to (a)-(b), whether Home Depot has breached the Contract to members of Subclass 1 and owes damages to members of the Subclass;

d.      Whether Subclass 2 has been defrauded by Home Depot and whether Home Depot owes damages to members of Subclass 2 or whether Subclass 2 is entitled to rescission.

53.     **Typicality.** Plaintiff's claims are typical of the claims of all members of the Class, Subclass 1 and Subclass 2.  The Contract contains a Georgia choice of law provision which results in uniform application of law to all members of the Class. Each member of the class signed the same or materially identical contract with Home Depot and is governed by the same material terms.  Furthermore, Plaintiff is also a member of Subclass 1 who was charged with "repair, replacement and Administrative Charges" after not having his damage claim covered. In addition, Plaintiff is a member of Subclass 2 and was induced by sign the Contract based on the promises made by Home Depot in the Contract, and

who was entitled as a matter of law to rely on the promises made by Home Depot in the Contract.

54.     **Adequacy.** Plaintiff is an adequate class representative because his interest do not conflict with Class Members' interests, and he will fairly and adequately protect these interests. Plaintiff's counsel are experienced in litigating consumer class actions and complex litigation.

### Fed. R. Civ. P. 23(b)(3).

55.     Plaintiff's claims are maintainable on behalf of the Class pursuant to Fed. R. Civ. P. 23(b)(3).

56.     Questions of law and fact, including the common questions identified above, predominate over any questions only affecting individual members of the Class, Subclass 1 and Subclass 2.

57.     A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute. Members of the Class, Subclass 1 and Subclass 2 have individual damages, that while meaningful, are too small to prosecute individually. Given the relatively small damages individually suffered, individual members of the Class, Subclass 1 and Subclass 2 appear to have little interest in controlling the prosecution of this matter in separate actions. Thousands of individual lawsuits seeking relatively small recoveries based on the

same legal theories would burden the court system. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiff's counsel are unaware of likely difficulties in managing this class action.

58.    It is desirable to concentrate the litigation of these claims in this forum because the class action involves claims under Georgia law.

59.    Plaintiffs are unaware of other pending litigation on behalf of Class Members or members of either Subclass involving these claims against Home Depot.

**COUNT I**
**<u>BREACH OF CONTRACT</u>**

60.    The allegations in Paragraphs 1 through 59 are hereby incorporated by reference.

61.    Plaintiff, and members of Subclass 1, rented tools from Home Depot that were damaged either by normal use, misuse or neglect after having purchased Damage Protection.

62.    Home Depot's internal policy mandates that only "repairs due to normal wear and tear" are covered under Damage Protection – and that damage from normal use, misuse or neglect are not subject to Damage Protection coverage.

63.     Home Depot denied Damage Protection to Plaintiff and Subclass 1 despite the fact that damage from normal use, misuse or neglect are covered under Section 4(b) of the Contract.

64.     Home Depot then charged members of Subclass 1 "repair, replacement and Administrative Charges" rather than honoring the Damage Protection, as well as sales tax on these charges.

65.     Plaintiff, and members of Subclass 1, have been damaged by Home Depot's breach of the contract.

## COUNT II
## EQUITABLE RESCISSION

66.     The allegations in Paragraphs 1 through 59 are hereby incorporated by reference.

67.     Home Depot's unilateral mistake in drafting Section 4(b) of the Contract has created a contract that renders the Damage Protection purchased by Plaintiff and the Class Members meaningless, and allows Home Depot to deny coverage under Section 4(b) for any reason or no reason at all.  Any "Damage Protection" coverage sold by Home Depot is inherently and fundamentally illusory given the final sentence in Section 4(b).

68.     The final sentence in Section 4(b) renders Damage Protection coverage flatly contradictory with the terms of the Damage Protection program advertised by Home Depot.

69.     Furthermore, the clear inconsistencies between causes of damage that are not excluded from Damage Protection coverage (damage due to "misuse" and "neglect") and Home Depot's corporate policies used by its managers (Exhibit C) further make any coverage under Damage Protection illusory.

70.     Plaintiff, and the Class Members, seek an order from this Court rescinding the Damage Protection provision of the Contract.

## COUNT III
## RESTITUTION, MONEY HAD AND RECEIVED AND UNJUST ENRICHMENT

71.     The allegations in Paragraphs 1 through 59 are hereby incorporated by reference.

72.     Plaintiff and all Class Members have made payment to Home Depot for sham Damage Protection coverage that was non-existent and illusory and these payments were made pursuant to a contract provision that Plaintiff and the Class Members seek to rescind.

73.     Under the circumstances, equity and good conscience should not allow Home Depot to retain the payments made to it by Plaintiff and the Class

members, and Home Depot has been unjustly enriched by such payments.

74.     Plaintiff and the Class Members are entitled to repayment from Home Depot of all Damage Protection premiums paid to Home Depot, all Administrative Charges paid by Class Members, and all sales taxes paid on said payments.

**COUNT IV**
**PROMISSORY FRAUD**

75.     The allegations in Paragraphs 1 through 59 are hereby incorporated by reference.

76.     Home Depot entered into the Contract with members of Subclass 2 with the intent not to perform the duties imposed on it by Section 4(b) of the Contract.

77.     It was the intent and design of Home Depot to deceive members of Subclass 2 and to induce them into entering the Contract.

78.     The members of Subclass 2 entered into the Contract and paid Home Depot for Damage Protection in reasonable reliance on the representations made by Home Depot in the Contract.

79.     The members of Subclass 2 were entitled to rely on the representations made by Home Depot in the Contract.

80.    The members of Subclass 2 were damaged by relying on Home Depot's representations in Section 4(b) of the Contract in that they purchased Damage Protection that Home Depot did not intend to honor, and in fact did not honor.

81.    The damages of Subclass 2 include, but are not limited to, the amounts paid for the Damage Protection, and any amounts charged by Home Depot to be paid for damage to tools.

82.    Subclass 2 seeks an award of punitive damages and attorneys' fees and expenses of litigation in connection with Home Depot's promissory fraud.

83.    In the alternative Plaintiff and Subclass 2 seek rescission and restitution as a remedy

## COUNT  V
## O.C.G.A. § 13-6-11 ATTORNEYS' FEES AND EXPENSES OF LITIGATION

84.    The allegations in Paragraphs 1 through 59 are hereby incorporated by reference.

85.    Home Depot has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense thereby entitling Plaintiff, the Class and Subclass to an award of attorneys' fees and expenses of litigation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, demand a trial by jury on all triable issues and seek judgment as follows:

a)  An order certifying this action as a class action on behalf of the Class Subclass 1 and Subclass 2;

b)  As for Subclass 1, for an award of damages in the amount of the "repair, replacement and Administrative Charges" paid by Subclass 1;

c)  As for Subclass 2, an award of damages in the amount of all fees and "repair, replacement and Administrative Charges" paid  by or charged to Subclass 2, as well as an award of punitive damages and attorneys' fees and expenses of litigation, or in the alternative, an order of rescission and a return of all fees and charges paid by Subclass 2 in connection with Damage Protection, as well as an award of punitive damages and attorneys' fees and expenses of litigation.

d)  As for the Class, for an order of rescission and an award of damages in the amount of  all fees and charges paid by Class Members;

e)  for all other damages according to proof;

f)  for an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11;

g)      for pre-judgment interest as allowed by law;

h)      for costs of court;

i)      for all other relief this Court deems necessary and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury as to all issues so triable.

**PRATT CLAY LLC**

*/s/Bradley W. Pratt*
Bradley W. Pratt
Georgia Bar No. 586673
4401 Northside Parkway, Suite 520
Atlanta, Georgia 30327
Telephone: (404) 949-8118
bradley@prattclay.com


**THE LOCKETT LAW FIRM LLC**

*/s/ John Lockett*
John A. Lockett, III
Georgia Bar No. 455549
john@lockettlawfirm.com
Benjamin J. Warlick
Georgia Bar No. 594669
ben@lockettlawfirm.com
1397 Carroll Drive
Atlanta, Georgia 30318
Telephone: (404) 806-7448