## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DARIN MATHEWS, individually and
on behalf of all others similarly
situated,

      Plaintiff,

v.

HOME DEPOT USA, INC.

      Defendant.

CIVIL ACTION

FILE NO. 1:22-cv-02605-ELR

JURY TRIAL DEMANDED

### FIRST AMENDED CLASS ACTION COMPLAINT

Darin Mathews ("Plaintiff"), on behalf of himself and all others similarly

situated, files this First Amended Class Action Complaint against Home Depot USA,

Inc. ("Home Depot" or "Defendant"), and in support thereof states the following:

### NATURE OF THE CASE

1.     This is a nation-wide and Texas class action lawsuit filed by Plaintiff,

individually, and on behalf of putative classes of similarly situated consumers

who rented tools from Home Depot pursuant to the "form" contract attached as

Exhibit A (the "Contract"),[1] and who elected and were charged for "Damage

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning
given them in the Contract.

Protection" under the Contract and/or who were overcharged late fees following a rental period extending beyond the original rental period.

2.      Home Depot's tool rental Contract is a uniform "form" contract that is materially identical in Home Depot stores throughout all the fifty (50) states in the United States.

3.      The "form" Contract has a choice of law provision, entitled "**<u>GOVERNING LAW</u>**," in which Home Depot has selected Georgia law for all legal issues to be determined under the Contract.

4.      This "form" Contract is a sophisticated financial trap for the ordinary consumer.  Home Depot's corporate policies for employees carrying out the Contract terms are carefully designed by the company to take advantage of unsuspecting consumers.  Pursuant to those policies, Home Depot breaches its own Contract and harms its consumers in the following ways:

5.      **First**, Home Depot breaches the Contract by overcharging consumers who elect Damage Protection and who keep their tools longer than the Rental Period.

6.      Under the Contract, if a consumer rents a tool from Home Depot, the consumer can purchase Damage Protection to cover the cost of repair or replacement if the tool is damaged for a payment equaling 15% of the Rental Price.  *See* Contract, ¶ 4(b).  Rental Price is defined in the Contract as "the rental

subtotal price identified on Page 1." *Id*. at ¶ 1.

7.      However, if a consumer keeps the tool beyond the Rental Period, Home Depot charges the consumer **additional amounts** equal to 15% of the late fees charged to the consumer.  The additional charge of 15% of late fees violates Section 4(b) of the Contract, which provides that the cost of Damage Protection is 15% of the "rental subtotal price identified on Page 1" of the Contract.

8.      **Second**, Home Depot breaches the Contract by overcharging consumers who keep their tools longer than the Rental Period by charging excessive late fees prohibited by the Contract terms.

9.      Pursuant to Section 8(a) of the Contract, "if the Equipment is not returned prior to expiration of the Rental Period, Renter will be charged an additional rental fee in the amount identified on Page 1 on a **daily** recurring basis ('Additional Rental Fees')."  (Emphasis added).

10.     However, in practice, if a rented tool is returned after the expiration of the Rental Period, Home Depot does not charge the consumer a **daily** rental rate on a recurring basis.  Rather, if the tool is returned one day late, for example, Home Depot charges the consumer **an entire week** of late fees based on a **weekly** rental rate, instead of a **daily** rental rate.  This policy and practice violates Section 8(a) of the Contract.

11.    **Third**, Home Depot's "form" Contract is designed to benefit Home Depot and harm consumers by creating a "heads I win, tails you lose" scenario in the event a consumer purchasing Damage Protection returns a damaged tool.  This scenario allows Home Depot to deny Damage Protection claims that should be covered under the letter and spirit of the Contract.

12.    Specifically, Home Depot is in breach of the Contract because only tool damage caused by "theft abuse, or intentional acts" is excluded from coverage under the Contract, yet in practice and pursuant to Home Depot's uniform corporate policies, Damage Protection does not cover any "damage" to tools and instead only covers "normal wear and tear."

13.    This violation also sounds in promissory fraud because Home Depot's uniform corporate policy regarding Damage Protection demonstrates that it never intended to perform its obligations under the Contract, and instead only intended to cover the cost of "normal wear and tear" to tools as opposed to "damage" as required by the Contract.  Pursuant to this uniform corporate policy and despite conflicting Contract obligations, Home Depot charges consumers who purchased Damage Protection for **<u>all</u>** damage to tools rented under the Contract.

14.    **Fourth**, and in the alternative to Plaintiff's claim for breach of contract related to coverage under the Damage Protection plan, a unilateral mistake by

Home Depot in its drafting of the Contract renders the entirety of the Damage Protection of the Contract meaningless, illusory, and incapable of being enforced by a consumer. The Contract purports to provide Damage Protection in the event a tool is damaged during use, however Section 4(b) of the Contract goes on to provide that "Renter expressly acknowledges and agrees that **Renter will be responsible for all loss or damage**." Exhibit A (emphasis added). This clause creates a loophole for Home Depot to avoid providing the Damage Protection purchased by consumers, and which, in effect, "swallows" any coverage extended by the other part of Section 4(b) and makes Damage Protection completely illusory. Accordingly, Plaintiff brings claims for rescission and return of all for all Damage Protection fees and associated sales taxes paid by members of the Classes, as well as other damages allowed by law.

## THE PARTIES

15.    Plaintiff is a resident of Texas and was a Texas citizen at all times relevant to this lawsuit.

16.    Home Depot is a corporation organized under the laws of Delaware and with a principal place of business in Cobb County, Georgia.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) Plaintiff is a member of each of the putative classes and subclasses, each of which consists of at least 100 members; (b) Plaintiff is a Texas citizen; (c) Home Depot is a citizen of Delaware and Georgia; (d) the amount in controversy for each of the classes exceeds the sum of $5 million exclusive of interest and costs; and (e) none of the exceptions under § 1332 applies to this claim.

18.    Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district, and Defendant's corporate headquarters is located in this district and division, and Defendant is subject to personal jurisdiction in this district and division.

## STATEMENT OF FACTS

19.    On or about July 17, 2021, at 11:33 a.m., Plaintiff rented a Drain Camera from the Home Depot store number 0580 Windsor Park, located at 4909 Windsor Hill, San Antonio, Texas (the "Windsor Park Home Depot").

20.    The Drain Camera was due to be rented for four (4) hours (the Rental Period under the Contract), and was due to be returned to the Windsor Park Home Depot that same day, July 17, 2021, at 3:33 p.m.

21.     A Drain Camera is a snake-like device with a camera at one end that allows its user to execute complete inspection of pipes and drains.  A photograph of the Drain Camera rented by Plaintiff is attached as Exhibit B.

22.     In connection with the rental of the Drain Camera, Plaintiff and Home Depot entered into the Contract.

23.     The Rental Price of the Drain Camera was $139.00.

24.     In connection with the rental of the Drain Camera, Plaintiff elected to purchase "Damage Protection" from Home Depot.

25.     The terms of the Damage Protection are set forth in the below excerpt from the Contract:

**I. For Tool and Large Equipment Rentals Only.**

**(a)** <u>Equipment Damage</u>.  Regardless of fault, Renter is responsible for all loss of and damage to tools and large equipment (including loss or damage due to normal use, caused by theft, abuse, misuse, neglect, or intentional acts). Renter is responsible for The Home Depot's loss of use and an administrative charge for expenses associated with processing the loss and damage claim (collectively, "**Administrative Charges**").

**(b)** <u>Damage Protection</u>. Damage protection is an optional service offered by The Home Depot that, if selected, modifies this Agreement to relieve Renter of repair charges, replacement charges and Administrative Charges if the Equipment is damaged during normal use during the Rental Period ("**Damage Protection**"). In the event Renter elects Damage Protection services, the charge for Damage Protection is 15% of the Rental Price and will appear as a separate line-item on the Agreement and on the invoice. Renter must accept or decline the Damage Protection. <u>Damage Protection is not insurance and The Home Depot may make a profit on its Damage Protection</u>. Damage Protection does not cover loss of or damage to the tools and large equipment caused by theft, abuse, or intentional acts. Renter expressly acknowledges and agrees that Renter will be responsible for all loss or damage.

**(c)** <u>Repairs</u>.  In the event Renter does not elect to purchase Damage Protection, Renter agrees that an estimated "**Repair Cost**" will be charged for tools and large equipment that is returned with damage due to abuse, misuse, neglect, or intentional acts. The Repair Cost will not exceed the fair market value of the tool or large equipment and applicable fees. Renter acknowledges and agrees to pay the Repair Cost and authorizes The Home Depot to charge the Repair Cost to the Renter Card.  All maintenance or repairs must be performed by The Home Depot.

26.    Originally, Plaintiff was correctly charged $20.85 for Damage Protection, which was 15% of the Rental Price.

27.    The Rental Price, Damage Protection Charge, and sales taxes on this transaction totaled $173.04.

28.    Plaintiff was also charged a $500.00 deposit to his Home Depot Account No. XX8970 to cover the Rental Price, Damage Protection, and estimated sales tax.

29.    That same day, July 17, 2021, while operating the Drain Camera under normal conditions and as the Drain Camera was intended to be used, the Drain Camera became stuck in a "cleanout drain" at Plaintiff's residence.

30.    Shortly thereafter, on the same day, July 17, 2021, Plaintiff returned to the Windsor Park Home Depot and advised the tool rental department that the Drain Camera had become stuck in his drain.

31.    A Home Depot representative advised Plaintiff to "twist and pull" the Drain Camera to dislodge it from the drain.

32.    Plaintiff followed Home Depot's advice at which point the Drain Camera's signal was lost, and the Drain Camera was damaged.

33.    Plaintiff reported to Home Depot that he had followed its advice, but that the Drain Camera remained stuck in his drain.

34.    Home Depot advised Plaintiff that he needed to hire a plumber to remove the Drain Camera from his drain.

35.    On Monday July 19, 2021, and Tuesday July 20, 2021, Plaintiff hired a professional plumber to come to his residence, demolish masonry and rebar blocking access to the drain, and remove the Drain Camera from the cleanout drain.

36.    When the Drain Camera was removed from the drain, there was damage to the Drain Camera.   A photograph of this damage is attached hereto as Exhibit C.

37.    The Drain Camera was not damaged due to abuse or an intentional act.

38.    Plaintiff returned the Drain Camera to Home Depot on Tuesday, July 20, 2021 – three (3) days after it was supposed to be returned according to the Rental Period.

39.    Upon returning the Drain Camera to Home Depot, Plaintiff fully expected the damage to the Drain Camera to be covered by the Damage Protection he had purchased.

40.     To Plaintiff's complete surprise, Plaintiff was advised by Jessica Leon, rental manager at the Windsor Park Home Depot, that the Damage Protection

which Plaintiff had purchased did not apply because Damage Protection only applies to "wear and tear".

41.    To support Home Depot's position, Jessica Leon then handed Plaintiff the document attached as Exhibit D, which is the uniform, internal Home Depot corporate policy for applying the terms of the Contract to Damage Protection claims, and which instructs Home Depot employees that Damage Protection only "covers repairs due to normal wear and tear."

42.    Jessica Leon left the counter for several minutes, and upon her return told Plaintiff she had spoken to the Windsor Park Home Depot store manager Louis Tuttle, who also confirmed to Plaintiff that Damage Protection only covered "normal wear and tear".

43.    The terms of Home Depot's internal corporate policy conflict with the terms of the Contract because the internal policy states that Damage Protection only covers "normal wear and tear on equipment," whereas Section 4(b) of the Contract states that it covers "damage."  The Contract's explicit scope of coverage is much broader than mere "wear and tear."  Furthermore, Exhibit D is evidence that at the time Plaintiff contracted with Home Depot, as a matter of uniform corporate policy, Home Depot did not intend to perform its duties under Section 4(b) of the Contract.

44.    Thereafter, Plaintiff was informed that in addition to there being no coverage under the Damage Protection he had purchased, Plaintiff would also be charged $2,467.01 to offset Home Depot's cost of having the Drain Camera replaced, plus a late fee penalty at the **weekly** rental fee rate of $796.00 (despite the Drain Camera being only three (3) days overdue), and also a new and additional Damage Protection charge of $45.90 (despite that the Contract provides Damage Protection will cost only 15% of the Rental Price, which was only $20.85). These additional charges and penalties were all in addition to Plaintiff's initial deposit of $500.00. The sales tax on all of the above was $232.56. Thus, the total charges from Home Depot to Plaintiff were $3,051.47.

45.    Plaintiff's total charges of $3,051.47 are shown on the statement attached as Exhibit E.

46.    Plaintiff disputed and refused to pay the above charges.

47.    In response to Plaintiff's dispute and refusal to pay, Home Depot charged Plaintiff's Home Depot Account No. XX8970 the amounts it claimed to be owed anyway.

48.    Home Depot's website advertises the terms of its tool rental Damage Protection. A copy of that advertisement is attached as Exhibit F. The terms of Home Depot's advertising to consumers (Exhibit F) regarding the scope of

Damage Protection coverage are inconsistent with the terms of the Contract (Exhibit A) and the terms of Home Depot's uniform internal corporate policy (Exhibit D) (handed to Plaintiff by Jessica Leon).

49.    Home Depot's advertised terms make clear that "Customer shall be responsible for all repair or replacement costs **not covered by Damage Protection**."  Exhibit F (emphasis added).

50.     In the alternative to promissory fraud, a Home Depot committed a unilateral mistake in the drafting of Section 4(b) the Contract in that, even after Damage Protection is selected by the consumer, Section 4(b) provides that "Renter expressly acknowledges and agrees that **Renter will be responsible for all loss or damage**."  Exhibit A (emphasis added).

51.    The unilateral mistake in the drafting of Section 4(b) creates a loophole for Home Depot to avoid providing the Damage Protection purchased by consumers, and which, in effect, "swallows" any coverage extended by the other part of Section 4(b) and makes Damage Protection completely illusory.  This renders Plaintiff, and all similarly situated consumers, without any protection whatsoever because Home Depot's uniform internal corporate policy directs its employees to reject all Damage Protection claims that are not for "repairs due to normal wear and tear on equipment.  Exhibit D.

52.    Furthermore, Section 4(a) of the Contract expressly identifies six (6) distinct ways in which a tool can be damaged: "normal use, theft, abuse, misuse, neglect, or intentional acts."

53.    The Damage Protection plan under the Contract only excludes damage which is caused by "theft, abuse or intentional acts."  This list of exclusions is inconsistent with Home Depot's internal policy, which provides that only "normal wear and tear" is covered under Damage Protection.  The internal policy is inconsistent with Home Depot's advertisement regarding the scope of exclusions from Damage Protection.

54.    Damage to tools from "normal use," "misuse," and "neglect" are not excluded from coverage under the Damage Protection terms in the Contract, but despite this, if a consumer pays for Damage Protection and the tool is damaged due to "normal use," "misuse," or "neglect," Home Depot still denies coverage and covers only "normal wear and tear", as evidenced by the corporate policy attached as Exhibit D.

## CLASS ACTION ALLEGATIONS

55.    Plaintiff brings this lawsuit as a class action seeking representation of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

56.    Plaintiff asserts claims for breach of contract and O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a class (hereafter "Class 1" or the "Nationwide Damage Protection Fee Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract and who were charged more than 15% of the Rental Price for Damage Protection from the period of six (6) years from the filing of this lawsuit through the date of a class certification order.

57.    In the alternative, Plaintiff asserts claims for breach of contract and attorneys' fees and expenses of litigation on behalf of a subclass (hereafter "Class 1a" or the "Texas Damage Protection Fee Subclass") defined as follows:

> All Home Depot customers who rented tools from Home Depot in Texas by executing a contract with language identical to or materially similar to the Contract and who were charged more than 15% of the Rental Price for Damage Protection from the period of four (4) years from the filing of this lawsuit through the date of a class certification order.

58.    Plaintiff asserts claims for breach of contract and O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a class (hereafter "Class 2" or the "Nationwide Late Fee Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract and who were charged Additional Rental Fees as a late fee penalty because they returned the tool after the expiration of the Rental Period,

> and whose Additional Rental Fees were assessed on a recurring weekly basis rather than a recurring daily basis, from the period of six (6) years from the filing of this lawsuit through the date of a class certification order.

59.     In the alternative, Plaintiff asserts claims for breach of contract and attorneys' fees and expenses of litigation on behalf of a subclass (hereafter "Class 2a" or the "Texas Late Fee Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot in Texas by executing a contract with language identical to or materially similar to the Contract and who were charged Additional Rental Fees as a late fee penalty because they returned the tool after the expiration of the Rental Period, and whose Additional Rental Fees were assessed on a recurring weekly basis rather than a recurring daily basis, from the period of four (4) years from the filing of this lawsuit through the date of a class certification order.

60.     Plaintiff asserts a claim for breach of contract and O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a class ("Class 3" or the "Nationwide Damage Protection Coverage Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection and had the tool damaged by a cause other than an enumerated excluded cause under the Contract, and who were denied coverage for Damage Protection, for the time period of six (6) years before the filing of this lawsuit through the date of a class certification order.

61.     Plaintiff asserts a claim for breach of contract and attorneys' fees and expenses of litigation on behalf of a subclass ("Class 3a" or the "Texas Damage Protection Coverage Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection and had the tool damaged by a cause other than an enumerated excluded cause under the Contract, and who were denied coverage for Damage Protection, for the time period of four (4) years before the filing of this lawsuit through the date of a class certification order.

62.     In the alternative to the Class 3 and Class 3a, Plaintiff asserts a claim for fraud on behalf of a class ("Class 4" or the "Texas Fraud Class") defined as follows:

> All Home Depot customers in the state of Texas who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection, for the time period of four (4) years before the filing of this lawsuit through the date of a class certification order.

63.     In the alternative to Class 3, Subclass 3a, and Class 4, Plaintiff asserts claims for rescission, restitution/money had and received, unjust enrichment and O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a class (hereafter "Class 5" or the "Nationwide Rescission Class") defined as follows:

> All Home Depot customers who rented tools from Home
> Depot by executing a contract with language identical to
> or materially similar to the Contract, and who purchased
> Damage Protection and who did not have Damage
> Protection claims honored by Home Depot, for the time
> period of four (4) years before the filing of this lawsuit
> through the date of a class certification order.

64.     In the alternative to Class 3, Subclass 3a, and Class 4, Plaintiff asserts

claims for rescission, restitution/money had and received, unjust enrichment and

O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a

subclass (hereafter "Class 5a" or the "Texas Rescission Class") defined as

follows:

> All Home Depot customers who rented tools from Home
> Depot in Texas by executing a contract with language
> identical to or materially similar to the Contract, and who
> purchased Damage Protection and who did not have
> Damage Protection claims honored by Home Depot, for
> the time period of four (4) years before the filing of this
> lawsuit through the date of a class certification order.

65.     Excluded from these classes and subclasses are all officers and employees

of Home Depot and its affiliates, parents, and subsidiaries; all persons who make

a timely election to be excluded from the classes and subclasses; government

entities; and the judges to whom this case is assigned and their immediate family

and court staff.

## Fed. R. Civ. P. 23(a)

66.    **Numerosity.**  In 1995, Home Depot opened Tool Rental centers.  By 2015, the company was "the fourth largest equipment company in the U.S. and the biggest general large equipment and small tool rental company in the world."[2]  Upon information and belief, members of each Nationwide Class 1, 2, 3, and 5 and each Texas Class and Subclass 1a, 2a, 3a, 4, and 5a are so numerous and geographically dispersed throughout the United States and throughout the State of Texas that separate joinder of each is impracticable.

67.    **Ascertainability.**  The members of each of the Classes and Subclasses 1 through 5 are ascertainable and readily identifiable from Home Depot's own information, documents, and data.

68.    **Commonality.**  Common questions of law and fact predominate, which are susceptible to common answers:

a.    Has Home Depot breached the Contract with members of Class 1 and Subclass 1a by charging fees for Damage Protection in excess of 15% of the Rental Price for such protection under the Contract;

---

[2]    *See*    https://corporate.homedepot.com/newsroom/home-depot-tool-rental-20-years (last visited 6/29/2022).

b.     Has Home Depot breached the Contract with Class 2 and Subclass 2a by charging late fees on a basis other than a recurring daily basis (such as a recurring weekly basis);

c.     Whether Home Depot has breached the Contract with Class 3 and Subclass 3a by denying Damage Protection claims for anything other than "wear and tear," and denying coverage for damage caused by normal use, misuse or neglect, in violation of the Contract terms;

d.     Did Home Depot engage in promissory fraud with respect to Class 4 by representing in the Contract that it intended to provide Damage Protection for damage caused to tools by normal use, misuse or neglect without having any intention of doing so;

e.     Whether a unilateral mistake by Home Depot in the drafting Section 4(b) of the Contract's the Damage Protection provision allows Class 5 and Subclass 5a to rescind that section of the Contract;

69.  **Typicality.**  Plaintiff's claims are typical of the claims of all members of all classes. The Contract contains a Georgia choice of law provision which results in uniform application of Georgia law to all members of Classes and

Subclasses 1 through 5a.  To the extent Home Depot takes the position that the Texas class and the Texas subclasses are subject to Texas law, then Plaintiff as a Texas citizen and consumer at a Texas Home Depot is typical of the members of those classes.  In addition, each member of each class signed the same or materially identical contract with Home Depot and is governed by the same material terms.  Upon information and belief, the unform, internal corporate policy of Home Depot provided to Plaintiff as a justification for Defendant's breach of contract is the same throughout the country and throughout the State of Texas.  Furthermore, Plaintiff is also a member of (i) Class 1 and Sublcass 1a because he incurred charges for Damage Protection in excess of 15% of the Rental Price; (ii) Class 2 and Subclass 2a because he was charged Additional Rental Fees on a basis other than a daily basis; (iii) Class 3 and Subclass 3a because he purchased Damaged Protection and Home Depot did not honor his claim due to its "wear and tear" policy; (iv) Class 4 because he purchased Damage Protection on the Drain Camera in Texas based on representations Home Depot made in the Contract and (v) Class 5 and Subclass 5a because he purchased Damage Protection made illusory due to a unilateral mistake by Home Depot.

70.    **Adequacy.** Plaintiff is an adequate class representative because his interests do not conflict with interests of the members of the classes and

subclasses, and he will fairly and adequately protect these interests. Plaintiff's attorneys are experienced in litigating consumer class actions and complex litigation, and are adequate class counsel for this case.

### Fed. R. Civ. P. 23(b)(3).

71.     Plaintiff's claims are maintainable on behalf of the Classes and Subclasses pursuant to Fed. R. Civ. P. 23(b)(3).

72.     Questions of law and fact, including the common questions identified above in paragraph 68, predominate over any questions only affecting individual members of the classes.

73.     A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute.  Members of the classes have individual damages that, while meaningful, are too small to prosecute individually.  Given the relatively small damages individually suffered, individual members of the classes and subclasses would have little interest in controlling the prosecution of this matter in separate actions, and individual plaintiffs would find it difficult to locate adequate counsel to litigate these claims against counsel hired by corporate giant Home Depot.  Thousands of individual lawsuits seeking relatively small recoveries based on the same legal theories would burden the court system.  A class action presents far fewer management difficulties and provides the benefits

of a single adjudication, economies of scale, and comprehensive supervision by a single court.  Plaintiff's counsel are unaware of likely difficulties in managing this class action.

74.    It is desirable to concentrate the litigation of these claims in this forum because the class action involves claims under Georgia law according to Home Depot's own uniform nationwide Contract.

75.    Plaintiffs are unaware of other pending litigation on behalf members of the various classes involving these claims against Home Depot.

**COUNT I**
**BREACH OF CONTRACT**
**CLASS 1 or the Nationwide Damage Protection Fee Class**
**CLASS 1a or the Texas Damage Protection Fee SubClass**

76.    The allegations in paragraphs 1 through 75 are incorporated herein by reference.

77.    The Contract provides that "the charge for damage Protection is 15% of the Rental Price and will appear as a separate line item on the Agreement and on the invoice."  Contract § 4(b).

78.    The Rental Price is defined as "the rental subtotal price identified on Page 1."  Contract § 1.

79.    Home Depot charges consumers more than 15% of the Rental Price for Damage Protection if Additional Rental Fees are assessed.

80.    There is no basis in the Contract for Home Depot to charge more than 15% of the Rental Price for Damage Protection.

81.    Home Depot has breached the Contract and the implied duty of good faith and fair dealing as to Plaintiff, Class 1, and Subclass 1a by charging more than 15% of the Rental Price for Damage Protection.

82.    Plaintiff, Class 1, and Subclass 1a have been damaged by this breach by Home Depot in an amount to be determined at trial.

**COUNT II**
**BREACH OF CONTRACT**
**CLASS 2 or the Nationwide Late Fee Class**
**CLASS 2a or the Texas Late Fee SubClass**

83.    The allegations in paragraphs 1 through 75 are incorporated herein by reference.

84.    Section 8(a) of the Contract provides that "if the Equipment is not returned prior to expiration of the Rental Period, Renter will be charged an additional rental fee in the amount identified on Page 1 on a daily recurring basis."

85.    However, if a consumer returns a tool to Home Depot after the expiration of the Rental Period, the consumer is not charged a daily rental rate on a daily recurring basis until the tool is returned.

86.    Instead, if the tool is returned one (1) day late, Home Depot charges the consumer a **weekly** recurring rate – despite the tool only being **one day** late rather than **one week** late.

87.    Home Depot's practice of charging a recurring weekly charge of the weekly rate for late tools, as opposed to a recurring daily charge, is a breach of the Contract and the implied duty of good faith and fair dealing.

88.    Home Depot breached its contract with Plaintiff by charging Plaintiff Additional Rental Fees on a weekly basis rather than a daily basis  even though he had the tool for three (3) days and did not have the tool for one (1) week.

89.    Plaintiff, Class 2, and Subclass 2a have been damaged by this breach of the Contract by Home Depot in an amount to be determined at trial.

**COUNT III**
**BREACH OF CONTRACT**
**CLASS 3 or the Nationwide Damage Protection Coverage Class**
**SUBCLASS 3a or the Texas Damage Protection Coverage Class**

90.    The allegations in Paragraphs 1 through 75 are hereby incorporated by reference.

91.    Plaintiff, members of Class 3, and members of Subclass 3a rented tools from Home Depot that were damaged either by normal use, misuse or neglect after having purchased Damage Protection.

92.    Home Depot's internal policy mandates that only "repairs due to normal wear and tear" are covered under Damage Protection – and that damage from normal use, misuse or neglect are not subject to Damage Protection coverage.

93.    Home Depot denied Damage Protection to Plaintiff, Class 3, and Subclass 3a despite the fact that damage from normal use, misuse or neglect are covered under Section 4(b) of the Contract.

94.    Home Depot then charged Plaintiff, members of Class 3, and members of Subclass 3 "repair, replacement and Administrative Charges" rather than honoring the Damage Protection, as well as sales tax on these charges.

95.    Plaintiff, members of Class 3, and members of Subclass 3a have been damaged by Home Depot's breach of the contract and the implied duty of good faith and fair dealing in an amount to be determined at trial.

### COUNT IV
### PROMISSORY FRAUD
### CLASS 4 or the Texas Fraud Class
### (in the alternative to Count III)

96.    The allegations in Paragraphs 1 through 75 are hereby incorporated by reference.

97.    Home Depot entered into the Contract with members of Class 4 with the intent not to perform the duties imposed on it by Section 4(b) of the Contract.

98.    It was the intent and design of Home Depot to deceive members of Class 4 and to induce them into entering the Contract.

99.    The members of Class 4 entered into the Contract and paid Home Depot for Damage Protection in reasonable reliance on the representations made by Home Depot in the Contract.

100.    The members of Class 4 were entitled as a matter of law to rely on the representations made by Home Depot in the Contract, and such reliance was reasonable as a matter of law.

101.    The members of Class 4 were damaged by relying on Home Depot's representations in Section 4(b) of the Contract in that they purchased Damage Protection that Home Depot did not intend to honor, and in fact did not honor.

102.    The damages of Class 4 include, but are not limited to, the amounts paid for the Damage Protection, and any amounts charged by Home Depot to be paid for damage to tools.

103.    Class 4 seeks an award of punitive damages and attorneys' fees and expenses of litigation in connection with Home Depot's promissory fraud.

**COUNT V**
**EQUITABLE RESCISSION AND RESTITUTION/UNJUST ENRICHMENT**
**CLASS 5 or the Nationwide Rescission Class**
**SUBCLASS 5a or the Texas Recission Class**
**(in the alternative to Count III)**

104.   The allegations in Paragraphs 1 through 75 are hereby incorporated by reference.

105.   Home Depot's unilateral mistake in drafting Section 4(b) of the Contract has created a Contract that renders the Damage Protection purchased by Plaintiff and the members of Class 5 and Subclass 5a meaningless and valueless, and allows Home Depot to deny coverage under Section 4(b) for any reason or no reason at all.   Any "Damage Protection" coverage sold by Home Depot is inherently and fundamentally illusory because of the final sentence Home Depot inserted into Section 4(b) of the Contract.

106.   The final sentence in Section 4(b) of the Contract flatly contradicts the terms of the Damage Protection program advertised by Home Depot and set out in the earlier portions of the Contract to entice consumers to pay Home Depot to purchase such coverage.

107.   As a matter of law, the final sentence in Section 4(b) of the Contract is a unilateral mistake by Home Depot.   It has the purpose and function of disadvantaging consumers and allowing Home Depot to reject coverage for any

reason, making Damage Protection a profit center for the company rather than a financial protection for the consumer.

108.   Furthermore, the clear inconsistencies between causes of damage that are not excluded from Damage Protection coverage (damage due to "misuse" and "neglect") and Home Depot's corporate policies used by its managers (Exhibit C) further make any coverage under Damage Protection illusory.

109.   Plaintiff, the members of Class 5, and the members of Subclass 5a, seek an order from this Court rescinding the Damage Protection provision of the Contract.

110.   Plaintiff and all members of Class 5, and all members of Subclass 5a have made payment to Home Depot for sham Damage Protection coverage that was non-existent and illusory, and these payments were made pursuant to a contract provision that Plaintiff, the members of Class 5, and the members of Subclass 5a seek to rescind.

111.   Under the circumstances, equity and good conscience should not allow Home Depot to retain the payments made to it by Plaintiff, the members of Class 5, and the members of Subclass 5a, and Home Depot has been unjustly enriched by such payments.

112.    Plaintiff, the members of Class 5, and the members of Subclass 5a are entitled to repayment from Home Depot of all Damage Protection premiums paid to Home Depot, all Administrative Charges paid by Class and Subclass Members, and all sales taxes paid on said payments.

## COUNT  VI
## O.C.G.A. § 13-6-11 and V.T.C.A. § 38.001 ATTORNEYS' FEES AND EXPENSES OF LITIGATION

113.    The allegations in Paragraphs 1 through 75 are hereby incorporated by reference.

114.    Home Depot has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff and the members of the various classes unnecessary trouble and expense thereby entitling Plaintiff and the members of the classes to an award of attorneys' fees and expenses of litigation.

115.    Home Depot has breached the Contract and damaged Plaintiff and all Class and Subclass members, thus entitling Plaintiff and all members of the Classes and Subclasses to an award of attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes and Subclasses, demands a trial by jury on all triable issues and seek judgment as follows:

a)  An order certifying this action as a class action on behalf of Class 1, and an award of all damages for provable at trial;

b)  An order certifying this action as a class action on behalf of Subclass 1a, and an award of all damages for provable at trial

c)   An order certifying this action as a class action on behalf of Class 2, and an award of all damages provable at trial;

d)  An order certifying this action as a class action on behalf of Subclass 2a, and an award of all damages for provable at trial;

e)  An order certifying this action as a class action on behalf of Class 3, and an award of all damages provable at trial including punitive damages;

f)  An order certifying this action as a class action on behalf of Subclass 3a, and an award of all damages provable at trial including punitive damages;

g)  In the alternative to Class 3 and Subclass 3a, an order certifying this action as a class action as to Class 4, and an award of all damages provable at trial;

h)  Also in the alternative to Class 3 and Subclass 3a, for an order rescinding the Contract as to Class 5, and for an order of restitution

requiring Home Depot to repay all Damage Protection fees and related fees;

i)     Also in the alternative to Class 3, Subclass 3a, and Class 5, for an order rescinding the Contract as to Class 5a, and for an order of restitution requiring Home Depot to repay all Damage Protection fees and related fees;

j)     for all other damages according to proof;

k)     for an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11;

l)     for pre-judgment interest as allowed by law;

m)     for costs of Court;

n)     for all other relief this Court deems necessary and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury as to all issues so triable.

**PRATT CLAY LLC**

*/s/Bradley W. Pratt*
Bradley W. Pratt
Georgia Bar No. 586673
4401 Northside Parkway, Suite 520
Atlanta, Georgia 30327
Telephone: (404) 949-8118
bradley@prattclay.com

**THE LOCKETT LAW FIRM LLC**

*/s/ John Lockett*
John A. Lockett, III
Georgia Bar No. 455549
john@lockettlawfirm.com
Benjamin J. Warlick
Georgia Bar No. 594669
ben@lockettlawfirm.com
1397 Carroll Drive
Atlanta, Georgia 30318
Telephone: (404) 806-7448