# EXHIBIT A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DARIN MATHEWS and RONALD
REEVES, individually and on behalf of
all others similarly situated,

        ~~Plaintiff~~Plaintiffs,

v.

HOME DEPOT USA, INC~~.~~.,

        Defendant.

CIVIL ACTION

FILE NO. 1:22-cv-02605-ELR

JURY TRIAL DEMANDED

### ~~FIRST~~SECOND AMENDED CLASS ACTION COMPLAINT

Darin Mathews ~~("Plaintiff~~and Ronald Reeves ("Plaintiffs"), on behalf of ~~himself~~themselves and all others similarly situated, ~~files~~file this ~~First~~Second Amended Class Action Complaint against Home Depot USA, Inc. ("Home Depot" or "Defendant"), and in support thereof ~~states~~state the following:

### INTRODUCTION

1. Home Depot collects many millions, if not billions, of dollars of revenue annually from its rental program.[1]  A portion of that revenue is made through its

---

[1] ". . . Home Depot Rentals reported $940 million in rental revenue in 2018 and is growing the heavy equipment and moving truck portions of its rental business." Michael Roth, *Home Depot to Grow its Rental Program, CEO Menear Says*,

practices of systematically overcharging customers for late fees they did not incur, overcharging customers for "damage protection" above and beyond the contractual price for "damage protection," and charging customers for damage that is contractually covered by the "damage protection" they purchased. This lawsuit addresses each of these unlawful practices.

## **NATURE OF THE CASE**

~~1.~~2.    This is a ~~nation-wide~~nationwide, Texas, and ~~Texas~~Pennsylvania class action lawsuit filed by ~~Plaintiff,~~Plaintiffs individually, and on behalf of putative classes of similarly situated consumers, who rented tools from Home Depot pursuant to the "form" contract attached as Exhibit A (the "Contract"),[2] and who ~~elected and were charged for "Damage Protection" under the Contract and/or who~~ were overcharged late fees following a rental period extending beyond the original rental period~~.~~, and/or who elected and were overcharged for "Damage Protection" under the Contract.

~~2.~~3.    Home Depot's tool rental Contract is a uniform "form" contract that is materially identical in Home Depot stores throughout all the ~~fifty (50~~) states in the

---

Rental Equipment Register, May 28, 2019, https://www.rermag.com/rental-news/article/20954736/home-depot-to-grow-its-rental-program-ceo-menear-says.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning given them in the Contract.

United States.

~~3.~~4.   The "form" Contract has a choice of law provision, entitled "**GOVERNING LAW**," in which Home Depot has selected Georgia law for all legal issues to be determined under the Contract.

~~4.~~5.   This "form" Contract is a sophisticated financial trap for the ordinary consumer.  Home Depot's corporate policies for employees carrying out the Contract terms are carefully designed by the company to take advantage of unsuspecting consumers.  Pursuant to those policies, Home Depot breaches its own Contract and harms its consumers in the following ways:

~~1.~~   **First**, Home Depot breaches the Contract by overcharging consumers who ~~elect Damage Protection and who keep their tools longer than the Rental Period.~~

~~2.   Under the Contract, if a consumer rents a tool from Home Depot, the consumer can purchase Damage Protection to cover the cost of repair or replacement if the tool is damaged for a payment equaling 15% of the Rental Price.  *See* Contract, ¶ 4(b).  Rental Price is defined in the Contract as "the rental subtotal price identified on Page 1."  *Id.* at ¶ 1.~~

~~5.   However, if a consumer keeps the tool beyond the Rental Period, Home Depot charges the consumer **additional amounts** equal to 15% of the late fees charged to the consumer.  The additional charge of 15% of late fees violates~~

~~Section 4(b) of the Contract, which provides that the cost of Damage Protection is 15% of the "rental subtotal price identified on Page 1" of the Contract.~~

6.      **~~Second~~**~~,~~ Home Depot breaches the Contract by overcharging consumers ~~who~~ keep their tools longer than the Rental Period by charging excessive late fees prohibited by the Contract terms.

7.      Pursuant to Section 8(a) of the Contract, "if the Equipment is not returned prior to expiration of the Rental Period, Renter will be charged an additional rental fee in the amount identified on Page 1 on a **daily** recurring basis ('Additional Rental Fees')." <u>Ex. A, § 8(a)</u> (emphasis added).

<u>8.</u>      However, in practice, if a rented tool is returned after the expiration of the Rental Period, Home Depot does not charge the consumer a **daily** rental rate on a recurring basis~~. Rather,~~<u>; instead, and by way of example,</u> if the tool is returned ~~one day~~<u>five days</u> late, ~~for example,~~ Home Depot charges the consumer **an entire week** of late fees ~~based~~ <u>—that is, the late fees are imposed</u> on a **weekly** ~~rental rate~~<u>basis</u>, instead of a **daily** ~~rental rate~~<u>basis</u>.  This policy and practice <u>overcharges consumers and</u> violates Section 8(a) of the Contract.

<u>9.      **Second**, Home Depot breaches the Contract by overcharging consumers who elect Damage Protection and then keep their tools longer than the Rental Period.</u>

- 4 -

10.    Under the Contract, if a consumer rents a tool from Home Depot, the consumer can purchase Damage Protection, to cover the cost of repair or replacement if the tool is damaged, for a payment equaling 15% of the Rental Price. *See* Ex. A, § 4(I)(b).  Rental Price is defined in the Contract as "the rental subtotal price identified on Page 1."  *Id*. § 1.

8.11.  However, if a consumer keeps the tool beyond the Rental Period, Home Depot charges the consumer amounts equal to 15% of the Rental Price **plus an additional 15% of the late fees** charged to the consumer.  The additional charge of 15% of the late fees violates Section 4(I)(b) of the Contract, which provides that the cost of Damage Protection is 15% of the "rental subtotal price identified on Page 1" of the Contract (which does not include 15% of any eventual late fees).  Ex. A, § 4(I)(b).

9.12.  **Third**, Home Depot's "form" Contract is designed to benefit Home Depot and harm consumers by creating a "heads I win, tails you lose" scenario in the event a consumer purchasing Damage Protection returns a damaged tool.  This scenario allows Home Depot to deny Damage Protection claims that should be covered under the letter and spirit of the Contract.

10.13. Specifically, Home Depot is in breach of the Contract because only tool damage caused by "theft abuse, or intentional acts" is excluded from coverage under

the Contract, yet in practice, and pursuant to Home Depot's uniform corporate policies, Damage Protection does not cover any "damage" to tools and instead only covers "normal wear and tear."

~~11.~~14.**Fourth,** this violation also sounds in promissory fraud because Home Depot's uniform corporate policy regarding Damage Protection demonstrates that it never intended to perform its obligations under the Contract, and instead only intended to cover the cost of "normal wear and tear" to tools, as opposed to "damage~~"~~." as required by the Contract.  Pursuant to this uniform corporate policy and despite conflicting Contract obligations, Home Depot charges consumers who purchased Damage Protection for **all** damage to tools rented under the Contract.

~~12.~~15.**~~Fourth~~Fifth,** and in the alternative to Plaintiff's claim for breach of contract related to coverage under the Damage Protection plan, a unilateral mistake by Home Depot in its drafting of the Contract renders the entirety of the Damage Protection of the Contract meaningless, illusory, and incapable of being enforced by a consumer.  The Contract purports to provide Damage Protection in the event a tool is damaged during use, however Section 4(I)(b) of the Contract goes on to provide that "Renter expressly acknowledges and agrees that **Renter will be responsible for all loss or damage**."  ~~Exhibit~~Ex. A, § 4(I)(b) (emphasis added).  This clause creates a loophole for Home Depot to avoid providing the Damage Protection purchased by

consumers, and which, in effect, "swallows" any coverage extended by the other part of Section 4(I)(b) and makes Damage Protection completely illusory. Accordingly, Plaintiff Mathews brings claims for rescission and return of all for all Damage Protection fees and associated sales taxes paid by members of the Classes, as well as other damages allowed by law.

16.    **Sixth**, Home Depot's nationwide pattern and practice of overcharging consumers who keep their tools longer than the Rental Period by charging excessive late fees prohibited by the Contract terms violates the Pennsylvania Unfair Trade Practices and Consumer Protection Law.  The statute prohibits engaging in "unfair or deceptive acts or practices," including, but not limited to, "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  *See* 73 Pa. Cons. Stat. §§ 201-2(4).  The statute also establishes a private right of action for Pennsylvania consumers who lease goods primarily for personal, family, or household purposes and suffer an ascertainable loss of money as a result of the unlawful practice.  *See id.* §§ 201-3, -9.2.

## **THE PARTIES**

17.    Plaintiff Darin Mathews is a resident of Texas and was a Texas citizen at all times relevant to this lawsuit.

~~13.~~18.Plaintiff Ronald Reeves is a resident of Pennsylvania and was a Pennsylvania citizen at all times relevant to this lawsuit.

~~14.~~19.Home Depot is a corporation organized under the laws of Delaware and with a principal place of business in Cobb County, Georgia.

## JURISDICTION AND VENUE

~~15.~~20.This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) ~~Plaintiff is a member of each~~Plaintiffs are members of the putative classes and subclasses relevant to each of them, each of which consists of at least 100 members; (b)~~ ~~Plaintiff Mathews is a Texas citizen; (c) Plaintiff Reeves is a Pennsylvania citizen; (d) Home Depot is a citizen of Delaware and Georgia; (~~d~~e) the amount in controversy for each of the classes exceeds the sum of $5 million exclusive of interest and costs; and (~~e~~f) none of the exceptions under § 1332 applies to this claim.

~~16.~~21.Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district, ~~and~~ Defendant's corporate headquarters is located in this district and division, and Defendant is subject to personal jurisdiction in this district and division.

## STATEMENT OF FACTS

<del>17.</del><u>22.</u> On or about July 17, 2021, at 11:33 a.m., Plaintiff <u>Mathews</u> rented a Drain Camera from the Home Depot store number 0580 Windsor Park, located at 4909 Windsor Hill, San Antonio, Texas (the "Windsor Park Home Depot").

<del>18.</del><u>23.</u> The Drain Camera was due to be rented for four <del>(4)</del> hours (the Rental Period under the Contract), and was due to be returned to the Windsor Park Home Depot that same day, July 17, 2021, at 3:33 p.m.

<del>19.</del><u>24.</u> A Drain Camera is a snake-like device with a camera at one end that allows its user to execute complete inspection of pipes and drains.  A photograph of the Drain Camera rented by Plaintiff <u>Mathews</u> is attached as Exhibit B.

<del>20.</del><u>25.</u> In connection with the rental of the Drain Camera, Plaintiff <u>Mathews</u> and Home Depot entered into the Contract. *See* Ex. A.

<del>21.</del><u>26.</u> The Rental Price of the Drain Camera was $139.00.

<del>22.</del><u>27.</u> In connection with the rental of the Drain Camera, Plaintiff <u>Mathews</u> elected to purchase "Damage Protection" from Home Depot.

<del>23.</del><u>28.</u> The terms of the Damage Protection are set forth in the below excerpt from the Contract:

**I. For Tool and Large Equipment Rentals Only.**

**(a)**    Equipment Damage.  Regardless of fault, Renter is responsible for all loss of and damage to tools and large equipment (including loss or damage due to normal use, caused by theft, abuse, misuse, neglect, or intentional acts). Renter is responsible for The Home Depot's loss of use and an administrative charge for expenses associated with processing the loss and damage claim (collectively, "**Administrative Charges**").

**(b)**    Damage Protection. Damage protection is an optional service offered by The Home Depot that, if selected, modifies this Agreement to relieve Renter of repair charges, replacement charges and Administrative Charges if the Equipment is damaged during normal use during the Rental Period ("**Damage Protection**"). In the event Renter elects Damage Protection services, the charge for Damage Protection is 15% of the Rental Price and will appear as a separate line-item on the Agreement and on the invoice. Renter must accept or decline the Damage Protection. Damage Protection is not insurance and The Home Depot may make a profit on its Damage Protection.  Damage Protection does not cover loss of or damage to the tools and large equipment caused by theft, abuse, or intentional acts. Renter expressly acknowledges and agrees that Renter will be responsible for all loss or damage.

**(c)**    Repairs.  In the event Renter does not elect to purchase Damage Protection, Renter agrees that an estimated "**Repair Cost**" will be charged for tools and large equipment that is returned with damage due to abuse, misuse, neglect, or intentional acts. The Repair Cost will not exceed the fair market value of the tool or large equipment and applicable fees. Renter acknowledges and agrees to pay the Repair Cost and authorizes The Home Depot to charge the Repair Cost to the Renter Card.  All maintenance or repairs must be performed by The Home Depot.

29.    Home Depot displays at its stores a pamphlet titled, "Damage Protection Plan" and "The Home Depot Rental."  *See* Exhibit G.

30.    This pamphlet informs consumers: "The Damage Protection Policy for The Home Depot Rental covers tools that are damaged while *in use*."  *Id*. (emphasis in original).

31.    The pamphlet further informs customers:

**What does this mean for customers?**

The Damage Protection Plan is a plan offered to waive possible repair fees that may occur while using the tool during the rental period. While Damage Protection is optional, it is highly recommended to ensure maximum protection when you rent tools and equipment from The Home Depot. It could cover potential gaps in your insurance coverage. The customer is not responsible for the repair cost of damages incurred while the tool or equipment is being used.

For only 15% of the rental price, Damage Protection can protect you against unexpected expenses that could be incurred from damage while using tools and large equipment.

32.    The pamphlet provides consumers the following example of how damage protection is intended to work for consumers' benefit:

**Example:** Kinked cable on a drain cleaner

| | Without DP | | With DP |
|---|---|---|---|
| Rental Fees | $100 | Rental Fees | $100 |
| Damage Protection | $0 | Damage Protection | $15 |
| Repair Cost | $240 | Repair Cost | $0 |
| Total | $340 | Total | $115 |

**Savings of $225**

33.    The pamphlet says nothing about Home Depot charging consumers an additional Damage Protection charge of 15% **of late fees** incurred if the tool is kept longer than the rental period (over and above the initial Damage Protection charge of 15% of the Rental Price).

34.    The pamphlet says nothing about limitations on the applicability of Damage Protection based on how the tool is used.  To the contrary, the pamphlet states, "The customer is not responsible for the repair cost of damages incurred while the tool or equipment is being used."  Ex. G.

~~24.~~35. Originally, Plaintiff Mathews was correctly charged $20.85 for Damage Protection, which was 15% of the Rental Price.

~~25.~~36. The Rental Price, Damage Protection Charge, and sales taxes on this transaction totaled $173.04.

26.37.Plaintiff Mathews was also charged a $500.00 deposit to his Home Depot Account No. XX8970 to cover the Rental Price, Damage Protection, and estimated sales tax.

27.38.That same day, July 17, 2021, while operating the Drain Camera under normal conditions and as the Drain Camera was intended to be used, the Drain Camera became stuck in a "cleanout drain" at Plaintiff'sPlaintiff Mathews' residence.

28.39.Shortly thereafter, on the same day, July 17, 2021, Plaintiff Mathews returned to the Windsor Park Home Depot and advised the tool rental department that the Drain Camera had become stuck in his drain.

29.40.A Home Depot representative advised Plaintiff Mathews to "twist and pull" the Drain Camera to dislodge it from the drain.

30.41.Plaintiff Mathews followed Home Depot's advice, at which point the Drain Camera's signal was lost, and the Drain Camera was damaged.

31.42.Plaintiff Mathews reported to Home Depot that he had followed its advice, but that the Drain Camera remained stuck in his drain.

32.43.Home Depot advised Plaintiff Mathews that he needed to hire a plumber to remove the Drain Camera from his drain.

33.44.On Monday July 19, 2021, and Tuesday July 20, 2021, Plaintiff Mathews hired a professional plumber to come to his residence, demolish masonry and rebar blocking access to the drain, and remove the Drain Camera from the cleanout drain.

34.45. When the Drain Camera was removed from the drain, there was damage to the Drain Camera.  A photograph of this damage is attached hereto as Exhibit C.

35.46.The Drain Camera was not damaged due to abuse or an intentional act.

36.47.Plaintiff Mathews returned the Drain Camera to Home Depot on Tuesday, July 20, 2021 – three (3) days after it was supposed to be returned according to the Rental Period.

37.48.Upon returning the Drain Camera to Home Depot, Plaintiff Mathews fully expected the damage to the Drain Camera to be covered by the Damage Protection he had purchased.

38.49. To Plaintiff'sPlaintiff Mathews' complete surprise, Plaintiffhe was advised by Jessica Leon, rental manager at the Windsor Park Home Depot, that the Damage Protection which Plaintiff had purchased did not apply because Damage Protection only applies to "wear and tear".."

39.50.To support Home Depot's position, Jessica Leon then handed Plaintiff Mathews the document attached as Exhibit D, which is the uniform, internal Home Depot corporate policy for applying the terms of the Contract to Damage Protection

claims, and which instructs Home Depot employees that Damage Protection only "covers repairs due to normal wear and tear."

40.51.Jessica Leon left the counter for several minutes, and upon her return told Plaintiff she had spoken to the Windsor Park Home Depot store manager Louis Tuttle, who also confirmed to Plaintiff Mathews that Damage Protection only covered "normal wear and tear"."

41.52.The terms of Home Depot's internal corporate policy conflict with the terms of the Contract because the internal policy states, as expressed in written and oral form to Plaintiff Matthews, provides that Damage Protection only covers "normal wear and tear on equipment," Ex. D, whereas Section 4(I)(b) of the Contract states that it covers "damage." Ex. A, § 4(I)(b). The Contract's explicitexpress scope of coverage is much broader than mere "wear and tear." Furthermore, Exhibit D is evidence that at the time Plaintiff contracted with." yet, Home Depot, as a matter of uniform corporate policy, Home Depot did not intendnever intended to perform its duties under Section 4(I)(b) of the Contract.

42.53.Thereafter, Plaintiff Mathews was informed that, in addition to there being no coverage under the Damage Protection he had purchased, Plaintiff Mathews would also be charged $2,467.01 to offset Home Depot's cost of having the Drain Camera replaced, plus a late fee penalty at the **weekly** rental fee rate of $796.00

(despite the Drain Camera being only three (3) days overdue), and also a new and additional Damage Protection charge of $45.90 (despite that the Contract provides Damage Protection will cost only 15% of the Rental Price, which was only $20.85). These additional charges and penalties were all in addition to Plaintiff's initial deposit of $500.00. [3]  The sales tax on all of the above was $232.56.  Thus, the total charges from Home Depot to Plaintiff Mathews were $3,051.47.

43.54. Plaintiff'sPlaintiff Mathews' total charges of $3,051.47 are shown on the statement attached as Exhibit E.

44.55. Plaintiff Mathews disputed and refused to pay the above charges.

56.    In responseThe Contract requires consumers to Plaintiff'suse a credit card to pay for their tool rental charges.  *See* Ex. A, § 2.

57.    Despite Plaintiff Mathews' dispute and refusal to pay, Home Depot charged Plaintiff'sPlaintiff Mathews' Home Depot Account No. XX8970 the amounts it claimed to be owed anyway and billed his Home Depot credit card in four installments over the following three weeks.  *See* Exhibit H (Plaintiff Mathews' August 2021 Home Depot Credit Card Account No. XX8970 statement).

_____

[3]  This, despite the fact that the Contract defines Damage Protection only as 15% of the **Rental Price** (which, here, came to $20.85, and for which Plaintiff Mathews had already been charged), not 15% of the Rental Price plus 15% of all late fees eventually imposed **after** Home Depot made the determination that Damage Protection would not cover the repair.

45.58.Plaintiff Mathews then did not receive his Home Depot credit card statement until more than 25 days after July 20, 2021.

46.59.Home Depot's website advertises the terms of its tool rental Damage Protection. A copy of that advertisement is attached as Exhibit F. The terms of Home Depot's advertising to consumers (ExhibitEx. F) regarding the scope of Damage Protection coverage are inconsistent with the terms of the Contract (ExhibitEx. A) and the terms of Home Depot's uniform internal corporate policy (ExhibitEx. D) (handedprovided to Plaintiff Mathews by Home Depot employee Jessica Leon).

47.60.Home Depot's advertised terms make clear that "Customer shall be responsible for all repair or replacement costs **not covered by Damage Protection**." Exhibit Ex. F (emphasis added).

61.    At its tool rental centers Home Depot makes available the pamphlet attached hereto as Exhibit G that describes the terms of its Damage Protection plan. Not only does Exhibit G expressly provide that the cost of Damage Protection is "15% of the rental price" – without any mention of late fees or Additional Rental Fees being added to the Rental Price – but Exhibit G also expressly provides that Damage Protection "covers tools that are damaged while *in use*." Ex. G, 2 (emphasis in original); *see also id.* ("The customer is not responsible for the repair cost of

damages incurred while the tool or equipment is being used. For only 15% of the rental price, Damage Protection can protect you against unexpected expenses that could be incurred from damage while using tools and large equipment.").  In other words, Home Depot uses Exhibit G to induce customers to purchase Damage Protection by telling them it will cover "tools that are damaged while *in use*," and not merely those that have experienced "wear and tear."

48.62.In the alternative to promissory fraud, a Home Depot committed a unilateral mistake in the drafting of Section 4(I)(b) the Contract in that, even after Damage Protection is selected by the consumer, Section 4(I)(b) provides that "Renter expressly acknowledges and agrees that **Renter will be responsible for all loss or damage**." Exhibit AEx. A, § 4(I)(b) (emphasis added).

49.63.The unilateral mistake in the drafting of Section 4(I)(b) creates a loophole for Home Depot to avoid providing the Damage Protection purchased by consumers, and which, in effect, "swallows" any coverage extended by the other part of Section 4(I)(b) and makes Damage Protection completely illusory.  This renders Plaintiff Mathews, and all similarly situated consumers, without any protection whatsoever because Home Depot's uniform internal corporate policy directs its employees to reject all Damage Protection claims that are not for "repairs due to normal wear and tear on equipment." Exhibit*See* Ex. D.

50.64. Furthermore, Section 4(I)(a) of the Contract expressly identifies six (6) distinct ways in which a tool can be damaged: "normal use, theft, abuse, misuse, neglect, or intentional acts." Ex. A, § 4(I)(a).

51.65. The Damage Protection plan under the Contract only excludes damage which is caused by "theft, abuse or intentional acts." Ex. A, § 4(I)(b). This list of exclusions is inconsistent with Home Depot's internal policy, which provides that is to only cover damage caused by "normal wear and tear" is covered under with the Damage Protection. The internal policy is inconsistent with (i) Home Depot's website advertisement regarding the scope of exclusions from Damage Protection., and the (ii) pamphlet that provides that tools that are damaged "in use" are covered by Damage Protection

52.66. Furthermore, damage to tools from "normal use," "misuse," and "neglect" are not excluded from coverage under the Damage Protection terms in the Contract, but despite this, if a consumer pays for Damage Protection and the tool is damaged due to "normal use," "misuse," or "neglect," Home Depot still denies coverage and covers only "normal wear and tear"," as evidenced by the corporate policy attached as Exhibit D.

## STATEMENT OF FACTS
### (as to Ronald Reeves)

67.    Plaintiff Reeves visited Home Depot Store Number 4103 located at 1336 Bristol Pike, Bensalem, Pennsylvania 19020 ("Bensalem Home Depot") on August 7, 2021.

68.    Plaintiff Reeves leased a jackhammer, which Home Depot called a PRO Small Breaker, for a duration of one day for a Rental Price of $119.  A copy of Page 1 of Plaintiff Reeves' contract with Home Depot is attached as Exhibit I.

69.    Plaintiff Reeves declined Damage Protection.

70.    Plaintiff Reeves rented this tool subject to the same uniform "form" Equipment Rental Agreement Terms and Conditions that is attached as Exhibit A and which expressly provides that late fees will assessed on a "daily recurring basis."

71.    In the event his tool was not returned on time, Plaintiff Reeves agreed to a "weekly recurring charge of $476.00" – which is $68.00 per day.  *See* Ex. I.

72.    Plaintiff Reeves returned the tool undamaged 11 days late on August 19, 2021.  *See* Ex. J.

73.    Accordingly, Plaintiff Reeves should have been charged for 11 days of late fees.

74.    Instead, and as a result of Home Depot's pattern and practice of overcharging rental tool customers for late fees, Plaintiff Reeves was charged

**$952.00** in rental charges (not including sales tax), as if he had kept the tool for two full weeks (i.e., 14 days).  *See* Ex. J.  A copy of the statement provided to Plaintiff Reeves showing these charges is attached as Exhibit J.

75.    Despite Reeves disputing these charges, Home Depot charged Plaintiff Reeves the full $952.00 on his Discover Credit Card.  *See* Ex. J.

**The Lowe's Tool Rental Agreement Is Evidence of**
**Internal Inconsistencies in the Home Depot Contract**

76.    For purposes of comparison, and to illustrate the internal inconsistencies in the Contract, a copy of the tool rental contract used by Home Depot's competitor, Lowe's Companies, Inc. ("Lowe's") is attached hereto as Exhibit K.

77.    The Lowe's contract does not contain the internal inconsistencies contained in the Home Depot Contract.  For instance, Section 5(c) of the Lowe's contract makes clear that a consumer who rents a tool from Lowe's and who elects Damage Protection coverage from Lowe's owes 15% of the Rental Price for Damage Protection *plus* an additional 10% if the Rental Period is extended as a result of the tool being returned late.  Ex. K at 7.

78.    In addition, Section 5(a) of the Lowe's contract also expressly provides that the consumer is responsible for all damage "beyond reasonable wear and tear." Ex. K at 6.

79. The contrast between the language of Lowe's tool rental agreement and the language of the Home Depot Contract brings into stark relief the problems and ambiguities identified in Home Depot's own Contract.

## CLASS ACTION ALLEGATIONS

53.80. Plaintiff bringsPlaintiffs bring this lawsuit as a class action seeking representation of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

3. Plaintiff assertsPlaintiffs Mathews and Reeves assert claims for breach of contract and O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a class (hereafter "Class 1" or the "Nationwide Damage Protection Fee Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract and who were charged more than 15% of the Rental Price for Damage Protection from the period of six (6) years from the filing of this lawsuit through the date of a class certification order.

54. In the alternative, Plaintiff asserts claims for breach of contract and attorneys' fees and expenses of litigation on behalf of a subclass (hereafter "Class 1a" or the "Texas Damage Protection Fee Subclass") defined as follows:

> All Home Depot customers who rented tools from Home Depot in Texas by executing a contract with language identical to or materially similar to the Contract and who were charged more than 15% of the Rental Price for Damage Protection from the period of four (4) years from

the filing of this lawsuit through the date of a class certification order.

55.81. Plaintiff asserts claims for breach of contract and O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a class (hereafter "Class 2" or the "Nationwide Late Fee Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract and who were charged Additional Rental Fees as a late fee penalty because they returned the tool after the expiration of the Rental Period, and whose Additional Rental Fees were assessed on a recurring weekly basis rather or some basis other than a daily recurring daily basis, from the period of six (6) years from the filing of this lawsuit through the date of a class certification order.

56.82. In the alternative, Plaintiff Mathews asserts claims for breach of contract and attorneys' fees and expenses of litigation on behalf of a subclass (hereafter "Class 2a1a" or the "Texas Late Fee Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot in Texas by executing a contract with language identical to or materially similar to the Contract and who were charged Additional Rental Fees as a late fee penalty because they returned the tool after the expiration of the Rental Period, and whose Additional Rental Fees were assessed on a recurring weekly basis rather or some basis other than a daily recurring daily basis, from the period of four (4) years from the filing of this lawsuit through the date of a class certification order.

83.    In the alternative, Plaintiff Reeves asserts a claim for breach of contract

and attorneys' fees and expenses of litigation on behalf of a subclass (hereafter

"Class 1b" or the "Pennsylvania Late Fee Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot in
> Pennsylvania by executing a contract with language identical to or
> materially similar to the Contract and who were charged Additional
> Rental Fees as a late fee penalty because they returned the tool after
> the expiration of the Rental Period, and whose Additional Rental
> Fees were assessed on a recurring weekly basis or some basis other
> than a daily recurring basis, from the period of four years from the
> filing of this lawsuit through the date of a class certification order.

84.    Plaintiff Mathews asserts claims for breach of contract and O.C.G.A.

§ 13-6-11 attorneys' fees and expenses of litigation on behalf of a class ("Class

(hereafter "Class 2" or the "Nationwide Damage Protection Fee Class") defined as

follows:

> All Home Depot customers who rented tools from Home Depot by
> executing a contract with language identical to or materially similar
> to the Contract and who were charged more than 15% of the Rental
> Price for Damage Protection from the period of six years from the
> filing of this lawsuit through the date of a class certification order.

85.    In the alternative, Plaintiff Mathews asserts claims for breach of contract

and attorneys' fees and expenses of litigation on behalf of a subclass (hereafter

"Class 2a" or the "Texas Damage Protection Fee Subclass") defined as follows:

> All Home Depot customers who rented tools from Home Depot in
> Texas by executing a contract with language identical to or
> materially similar to the Contract and who were charged more than

15% of the Rental Price for Damage Protection from the period of four years from the filing of this lawsuit through the date of a class certification order.

57.86. Plaintiff Mathews asserts a claim for breach of contract and O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a class ("Class 3" or the "Nationwide Damage Protection Coverage Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection and had the tool damaged by a cause other than an enumerated excluded cause under the Contract, and who were denied coverage for Damage Protection, for the time period of six (6) years before the filing of this lawsuit through the date of a class certification order.

58.87. Plaintiff Mathews asserts a claim for breach of contract and attorneys' fees and expenses of litigation on behalf of a subclass ("Class 3a" or the "Texas Damage Protection Coverage Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot in Texas by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection and had the tool damaged by a cause other than an enumerated excluded cause under the Contract, and who were denied coverage for Damage Protection, for the time period of four (4) years before the filing of this lawsuit through the date of a class certification order.

88.    Plaintiff Mathews asserts a claim for breach of contract and attorneys' fees and expenses of litigation on behalf of a subclass ("Class 3b" or the "Nationwide Damage Protection – Normal Use Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection and had the tool damaged through "normal use" and who were denied coverage for Damage Protection, for the time period of six years before the filing of this lawsuit through the date of a class certification order.

89.    Plaintiff Mathews asserts a claim for breach of contract and attorneys' fees and expenses of litigation on behalf of a subclass ("Class 3c" or the "Texas Damage Protection – Normal Use Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot in Texas by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection and had the tool damaged through "normal use" and who were denied coverage for Damage Protection, for the time period of four years before the filing of this lawsuit through the date of a class certification order.

~~59.~~90. In the alternative to the Class 3 and ~~Class~~Classes 3a, 3b and 3c, Plaintiff asserts a claim for fraud on behalf of a class ("Class 4" or the "Texas Fraud Class") defined as follows:

> All Home Depot customers in the state of Texas who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection, for the time period of four ~~(4)~~ years before the filing of this lawsuit through the date of a class certification order.

60.91. In the alternative to Class 3, Subclass 3a, and Class 4, Plaintiff asserts Mathews assert claims for rescission, restitution/money had and received, unjust enrichment and O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a class (hereafter "Class 5" or the "Nationwide Rescission Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection and who did not have Damage Protection claims honored by Home Depot, for the time period of four (4) years before the filing of this lawsuit through the date of a class certification order.

61.92. In the alternative to Class 3, Subclass 3a, and Class 4, Plaintiff Matthews asserts claims for rescission, restitution/money had and received, unjust enrichment and O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a subclass (hereafter "Class 5a" or the "Texas Rescission Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot in Texas by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection and who did not have Damage Protection claims honored by Home Depot, for the time period of four (4) years before the filing of this lawsuit through the date of a class certification order.

93.    Plaintiff Reeves asserts claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1 *et*

*seq.*, as well as for and attorneys' fees and expenses of litigation on behalf of a

subclass ("Class 6" or the "Pennsylvania UTPCPL Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot in
> Pennsylvania by executing a contract with language identical to or
> materially similar to the Contract and who were charged Additional
> Rental Fees as a late fee penalty because they returned the tool after
> the expiration of the Rental Period, and whose Additional Rental
> Fees were assessed on a recurring weekly basis or some basis other
> than a daily recurring basis, from the period of six years from the
> filing of this lawsuit through the date of a class certification order.

62.94. Excluded from these classes and subclasses are all officers and employees

of Home Depot and its affiliates, parents, and subsidiaries; all persons who make a

timely election to be excluded from the classes and subclasses; government entities;

and the judges to whom this case is assigned and, their immediate family, and their

court staff.

## **Fed. R. Civ. P. 23(a)**

63.95. **Numerosity.** In 1995, Home Depot opened Tool Rental centers. By 2015,

the company was "the fourth largest equipment company in the U.S. and the biggest

general large equipment and small tool rental company in the world."[4] Upon

information and belief, members of each Nationwide Class 1, 2, 3,of the Classes and

5 and each Texas Class and Subclass 1a, 2a, 3a, 4, and 5aSubclasses identified herein

---

[4] *See* https://corporate.homedepot.com/newsroom/home-depot-tool-rental-20-
years (last visited 6/29/2022).

are so numerous and geographically dispersed throughout the United States and throughout the ~~State~~States of Texas and Pennsylvania that separate joinder of each is impracticable.

~~64.~~96. **Ascertainability.**  The members of each of the Classes and Subclasses ~~1 through 5~~identified herein are ascertainable and readily identifiable from Home Depot's own information, documents, and data.

~~65.~~97. **Commonality.**  Common questions of law and fact predominate, which are susceptible to common answers:

        a.    Has Home Depot breached the Contract with Class 1 and Subclasses 1a and 1b by charging late fees on a basis other than a daily recurring basis (such as a weekly recurring basis);

        ~~a.~~b.  Has Home Depot breached the Contract with members of Class ~~1~~2 and Subclass ~~1a~~2a by charging fees for Damage Protection in excess of 15% of the Rental Price for such protection under the Contract;

        ~~a.    Has Home Depot breached the Contract with Class 2 and Subclass 2a by charging late fees on a basis other than a recurring daily basis (such as a recurring weekly basis);~~

        ~~b.~~c.  Whether Home Depot has breached the Contract with Class 3 and Subclass 3a by denying Damage Protection claims for anything other

than "wear and tear," and denying coverage for damage caused by

normal use, misuse or neglect, in violation of the Contract terms;

d.    Whether Home Depot breached the Contract with Subclass 3(b) and

3(c) by denying coverage for damage caused by normal use;

c.e.  Did Home Depot engage in promissory fraud with respect to Class 4

by representing in the Contract that it intended to provide Damage

Protection for damage caused to tools by normal use, misuse or

neglect without having any intention of doing so;

d.f.  Whether a unilateral mistake by Home Depot in the drafting Section

4(I)(b) of the Contract's the Damage Protection provision allows

Class 5 and Subclass 5a to rescind that section of the Contract;

g.    Whether Home Depot has engaged in fraudulent or deceptive conduct

that creates a likelihood of confusion or of misunderstanding, in

violation of Pennsylvania's UTPCPL.  *See* 73 Pa. Const. Stat. § 201-

1 *et seq.*

98.    **Typicality.**  Plaintiff'sPlaintiffs' claims are typical of the claims of all

members of all classes.  The Contract contains a Georgia choice of law provision

which results in uniform application of Georgia law to all members of Classes 1-3

and Subclasses 1 through 5a.  To the extent Home Depot takes the position that 5

and the associated subclasses. The Texas Class and the Texas Subclasses are subject to Texas law, then Plaintiff Mathews as a Texas citizen and consumer at a Texas Home Depot and is typical of the members of those classes. The Pennsylvania Class and Subclass are subject to Pennsylvania law, and Plaintiff Reeves is a citizen of Pennsylvania. In addition, each member of each class signed the same or materially identical contract with Home Depot and is governed by the same material terms.

66.99. Upon information and belief, the unform uniform, internal corporate policy of Home Depot provided to Plaintiff Mathews as a justification for Defendant's breach of contract is the same throughout the country and throughout the State of Texas. Furthermore, (i) Plaintiffs Mathews and Reeves are members of Class 1 (and Mathews Subclass 1a, and Reeves Subclass 1b and Class 6) because they were charged additional late fees on a basis other than a daily recurring basis; (ii) Plaintiff Mathews is also a member of (i) Class 12 and Subclass 1a Subclass 2a because he incurred charges for Damage Protection in excess of 15% of the Rental Price; (ii) Class 2 and Subclass 2a because he was charged Additional Rental Fees on a basis other than a daily basis; (iii) Plaintiff Mathews is a member of Class 3 and Subclass Subclasses 3a, 3b, and 3c because he purchased Damaged Protection and Home Depot did not honor his claim due to its "wear and tear" policy; (iv) Plaintiff Mathews is a member of Class 4 because he purchased Damage Protection on the

Drain Camera in Texas based on representations Home Depot made in the Contract and (v); (v) Plaintiff Mathews is a member of Class 5 and Subclass 5a because he purchased Damage Protection made illusory due to a unilateral mistake by Home Depot and (vi) Plaintiff Reeves is a member of Class 6 because he was overcharged late fees for a tool he rented in Pennsylvania.

67.100.  **Adequacy.**  Plaintiff is anPlaintiffs are adequate class representativerepresentatives because histheir interests do not conflict with interests of the members of the classes and subclasses, and hethey will fairly and adequately protect these interests. Plaintiff's Plaintiffs' attorneys are experienced in litigating consumer class actions and complex litigation, and are adequate class counsel for this case.

### Fed. R. Civ. P. 23(b)(3).

68.101.  Plaintiff'sPlaintiffs' claims are maintainable on behalf of the Classes and Subclasses pursuant to Fed. R. Civ. P. 23(b)(3).

69.102.  Questions of law and fact, including the common questions identified above in paragraph 6898, predominate over any questions only affecting individual members of the classes.

70.103.  A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute.  Members of the classes have individual

damages that, while meaningful, are too small to prosecute individually. Given the relatively small damages individually suffered, individual members of the classes and subclasses would have little interest in controlling the prosecution of this matter in separate actions, and individual plaintiffs would find it difficult to locate adequate counsel to litigate these claims against counsel hired by corporate giant Home Depot. Thousands of individual lawsuits seeking relatively small recoveries based on the same legal theories would burden the court system. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiff'sPlaintiffs' counsel are unaware of likely difficulties in managing this class action.

71.104.   It is desirable to concentrate the litigation of these claims in this forum because the class action involves claims under Georgia law according to Home Depot's own uniform nationwide Contract.

72.105.   Plaintiffs are unaware of other pending litigation on behalf members of the various classes involving these claims against Home Depot.

# COUNT I
# BREACH OF CONTRACT
**CLASS 1 or the Nationwide ~~Damage Protection~~Late Fee Breach of Contract Class**
**CLASS 1a or the Texas ~~Damage Protection~~Late Fee ~~SubClass~~**
**Breach of Contract Subclass**
**Class 1b or the Pennsylvania Late Fee Breach of Contract Subclass**

~~73.~~1.  The allegations in paragraphs 1 through ~~75 are incorporated herein by reference.~~

~~4.    The Contract provides that "the charge for damage Protection is 15% of the Rental Price and will appear as a separate line item on the Agreement and on the invoice."  Contract § 4(b).~~

~~74.    The Rental Price is defined as "the rental subtotal price identified on Page 1."  Contract § 1.~~

~~75.~~1.  Home Depot charges consumers more than 15% of the Rental Price for ~~Damage Protection if Additional Rental Fees are assessed.~~

~~76.~~1.  There is no basis in the Contract for Home Depot to charge more than 15% ~~of the Rental Price for Damage Protection.~~

~~5.    Home Depot has breached the Contract and the implied duty of good faith and fair dealing as to Plaintiff, Class 1, and Subclass 1a by charging more than 15% of the Rental Price for Damage Protection.~~

- 33 -

77.    Plaintiff, Class 1, and Subclass 1a have been damaged by this breach by Home Depot in an amount to be determined at trial.

### COUNT II

### 105BREACH OF CONTRACT
### CLASS 2 or the Nationwide Late Fee Class
### CLASS 2a or the Texas Late Fee SubClass

78.106.   The allegations in paragraphs 1 through 75 are incorporated herein by reference.

79.107.   Section 8(a) of the Contract provides that "if the Equipment is not returned prior to expiration of the Rental Period, Renter will be charged an additional rental fee in the amount identified on Page 1 on a daily recurring basis."  Ex. A, § 8(a).

80.108.   However, if a consumer returns a tool to Home Depot after the expiration of the Rental Period, the consumer is not charged a daily rental ratelate fee on a daily recurring basis until the tool is returned.

81.109.   Instead, if the tool is returned one (1) day late, Home Depot charges the consumer on a **weekly** recurring rate—despite the tool only being **one day** late ratherbasis, or some basis other than **one week** late.a daily recurring basis – which results in the consumer being overcharged for more days of late fees than the Contract permits.

82.110.   Home Depot's practice of charging a recurring weekly charge of the weekly rate for late tools, as opposed to its consumers late fees on a basis other than a daily recurring daily charge, basis is a breach of the Contract and the implied duty of good faith and fair dealing.

83.111.   Home Depot breached its contract with Plaintiff by charging Plaintiff Additional Rental Fees on a weekly basis rather than a daily basis  even though he had the tool for three (3) days and did not have the tool for one (1) week. Mathews by charging him for seven days of late fees despite him being only three days late in returning his tool.  Home Depot breached its contract with Plaintiff Reeves by charging him for fourteen days of late fees despite him returning the tool only eleven days late.

84.112.   Plaintiff, Class 2, and Subclass 2a Plaintiffs Mathews and Reeves, Class 1, and Subclasses 1a and 1b have been damaged by this breach of the Contract by Home Depot in an amount to be determined at trial.

### COUNT II
### BREACH OF CONTRACT
### CLASS 2 or the Nationwide Damage Protection Fee Class
### CLASS 2a or the Texas Damage Protection Fee Subclass

113.   The allegations in paragraphs 1 through 105 are incorporated herein by reference.

114.   The Contract provides that "the charge for damage Protection is 15% of the Rental Price and will appear as a separate line item on the Agreement and on the invoice." Ex. A, § 4(I)(b).

115.   The Rental Price is defined as "the rental subtotal price identified on Page 1." Ex. A, § 1.

116.   Neither the Rental Price definition, nor the "rental subtotal price identified on Page 1," includes or in any way indicates that the charge for Damage Protection will **also** include 15% of any late fees ultimately imposed.

117.   Home Depot charges consumers more than 15% of the Rental Price for Damage Protection if late fees are assessed.

118.   There is no basis in the Contract for Home Depot to charge more than 15% of the Rental Price for Damage Protection.

119.   Home Depot has breached the Contract and the implied duty of good faith and fair dealing as to Plaintiff, Class 2, and Subclass 2a by charging more than 15% of the Rental Price for Damage Protection.

120.   Plaintiff Mathews, Class 2, and Subclass 2a have been damaged by this breach by Home Depot in an amount to be determined at trial.

**COUNT III**

**BREACH OF CONTRACT**

**CLASS 3 or the Nationwide Damage Protection Coverage Class**

~~**SUBCLASS**~~**CLASS 3a or the Texas Damage Protection Coverage Subclass**

**CLASS 3b or the Nationwide Damage Protection – Normal Use Class**

**CLASS 3c or the Texas Damage Protection - Normal Use Class**

~~85.~~121.   The allegations in Paragraphs 1 through ~~75~~105 are hereby incorporated by reference.

122.   Plaintiff Mathews, members of Class 3, and members of Subclass 3a rented tools from Home Depot that were damaged either by normal use, misuse, or neglect after having purchased Damage Protection.

~~86.~~123.   Plaintiff Mathews, and members of Subclasses 3b and 3c, rented tools from Home Depot that were damaged by normal use after having purchased Damaged Protection.

~~87.~~124.   Home Depot's internal policy mandates that only "repairs due to normal wear and tear" are covered under Damage Protection – and that damage from normal use, misuse, or neglect are not subject to Damage Protection coverage.

~~88.~~125.   Home Depot denied Damage Protection to Plaintiff Mathews, Class 3, and ~~Subclass~~Subclasses 3a, 3b, and 3c, despite the fact that damage from normal use, misuse, or neglect are covered under Section 4(I)(b) of the Contract.

89.126.   Home Depot then charged Plaintiff Mathews, members of Class 3, and members of Subclass 3Subclasses 3a, 3b, and 3c "repair, replacement and Administrative Charges"," rather than honoring the Damage Protection, as well as sales tax on these charges.

90.127.  Plaintiff Mathews, members of Class 3, and members of SubclassSubclasses 3a, 3b and 3c, have been damaged by Home Depot's breach of the contract and the implied duty of good faith and fair dealing in an amount to be determined at trial.

**COUNT IV**
**PROMISSORY FRAUD**
**CLASS 4 or the Texas Fraud Class**
**(in the alternative to Count III)**

91.128.   The allegations in Paragraphs 1 through 75105 are hereby incorporated by reference.

92.129.   Home Depot entered into the Contract with members of Class 4 with the intent not to perform the duties imposed on it by Section 4(I)(b) of the Contract.

93.130.   It was the intent and design of Home Depot to deceive members of Class 4 and to induce them into entering the Contract.

94.131.   The members of Class 4 entered into the Contract and paid Home Depot for Damage Protection in reasonable reliance on the representations made by Home Depot in the Contract.

95.132.   The members of Class 4 were entitled as a matter of law to rely on the representations made by Home Depot in the Contract, and such reliance was reasonable as a matter of law.

96.133.   Plaintiff Mathews and the members of Class 4 were damaged by relying on Home Depot's representations in Section 4(I)(b) of the Contract in that they purchased Damage Protection that Home Depot did not intend to honor, and in fact did not honor.

97.134.   The damages of Class 4 include, but are not limited to, the amounts paid for the Damage Protection, and any amounts charged by Home Depot to be paid for damage to tools.

98.135.   Class 4 seeks an award of punitive damages and attorneys' fees and expenses of litigation in connection with Home Depot's promissory fraud.

## COUNT V

**EQUITABLE RESCISSION AND RESTITUTION/UNJUST ENRICHMENT**
**CLASS 5 or the Nationwide Rescission Class**
**SUBCLASS 5a or the Texas Recission Class**
**(in the alternative to Count III)**

~~99.~~136.   The allegations in Paragraphs 1 through ~~75~~105 are hereby incorporated by reference.

~~100.~~137. Home Depot's unilateral mistake in drafting Section 4(I)(b) of the Contract has created a Contract that renders the Damage Protection purchased by Plaintiff Mathews and the members of Class 5 and Subclass 5a meaningless and valueless, and allows Home Depot to deny coverage under Section 4(I)(b) for any reason or no reason at all.  Any "Damage Protection" coverage sold by Home Depot is inherently and fundamentally illusory because of the final sentence Home Depot inserted into Section 4(I)(b) of the Contract.

~~101.~~138. The final sentence in Section 4(I)(b) of the Contract flatly contradicts the terms of the Damage Protection program advertised by Home Depot and set out in the earlier portions of the Contract to entice consumers to pay Home Depot to purchase such coverage.

~~102.~~139. As a matter of law, the final sentence in Section 4(I)(b) of the Contract is a unilateral mistake by Home Depot.  It has the purpose and function of disadvantaging consumers and allowing Home Depot to reject coverage for any

reason, making Damage Protection a profit center for the company rather than a financial protection for the consumer.

103.140. Furthermore, the clear inconsistencies between causes of damage that are not excluded from Damage Protection coverage (damage due to "misuse" and "neglect") and Home Depot's corporate policies used by its managers (Exhibit C*see, e.g.*, Ex. D) further make any coverage under Damage Protection illusory.

104.141. Plaintiff Mathews, the members of Class 5, and the members of Subclass 5a, seek an order from this Court rescinding the Damage Protection provision of the Contract.

105.142. Plaintiff andMathews, all members of Class 5, and all members of Subclass 5a have made payment to Home Depot for sham Damage Protection coverage that was non-existent and illusory, and these payments were made pursuant to a contract provision that Plaintiff Mathews, the members of Class 5, and the members of Subclass 5a seek to rescind.

106.143. Under the circumstances, equity and good conscience should not allow Home Depot to retain the payments made to it by Plaintiff Mathews, the members of Class 5, and the members of Subclass 5a, and Home Depot has been unjustly enriched by such payments.

107.144.  Plaintiff, the Mathews, all members of Class 5, and theall members of Subclass 5a are entitled to repayment from Home Depot of all Damage Protection premiums paid to Home Depot, all Administrative Charges paid by Class and Subclass Members, and all sales taxes paid on said payments.

**COUNT VI**
**PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**CLASS 6 or the Pennsylvania UTPCPL Class**

145.  The allegations in Paragraphs 1 through 105 are hereby incorporated by reference.

146.  Plaintiff Reeves and the members of Class 6 leased goods through Home Depot's tool rental program, and primarily for personal, family, or household purposes.

147.  Home Depot's pattern and practice of overcharging consumers who keep their tools longer than the Rental Period by charging excessive late fees prohibited by the Contract terms is an unfair or deceptive practice, in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

148.  Plaintiff Reeves and the other members of Class 6 were overcharged for late fees they did not incur under the terms of the Contract, and they suffered an ascertainable loss of money as a result of the unlawful practice.

## COUNT VII
## O.C.G.A. § 13-6-11 and V.T.C.A. § 38.001
## ATTORNEYS' FEES AND
## EXPENSES OF LITIGATION

108.149. The allegations in Paragraphs 1 through 75105 are hereby incorporated by reference.

109.150. Home Depot has acted in bad faith, has been stubbornly litigious, and has caused PlaintiffPlaintiffs and the members of the various classes unnecessary trouble and expense thereby entitling PlaintiffPlaintiffs and the members of the classes to an award of attorneys' fees and expenses of litigation.

110.151. Home Depot has breached the Contract and damaged PlaintiffPlaintiffs, and all Class and Subclass members, thus entitling PlaintiffPlaintiffs and all members of the Classes and Subclasses to an award of attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, PlaintiffPlaintiffs, individually and on behalf of the Classes and Subclasses, demands a trial by jury on all triable issues and seek judgment as follows:

a)    An order certifying this action as a class action on behalf of Class 1, and an award of all damages for provable at trial;

b)    An order certifying this action as a class action on behalf of Subclass 1a and 1b, and an award of all damages for provable at trial;

- 43 -

c)    -An order certifying this action as a class action on behalf of Class 2, and an award of all damages provable at trial;

d)    An order certifying this action as a class action on behalf of Subclass 2a, and an award of all damages for provable at trial;

e)    An order certifying this action as a class action on behalf of Class 3, and an award of all damages provable at trial including punitive damages;

f)    An order certifying this action as a class action on behalf of Subclass 3a, and an award of all damages provable at trial including punitive damages;

g)    In the alternative to Class 3 and An order certifying this action as a class action on behalf of Subclass 3a3b, and an award of all damages provable at trial;

h)    An order certifying this action as a class action on behalf of Subclass 3c, and an award of all damages provable at trial;

g)i)    In the alternative to Class 3 and Subclasses 3a, 3b, and 3c, an order certifying this action as a class action as to Class 4, and an award of all damages provable at trial; including punitive damages;

h)j)    Also in the alternative to Class 3 and Subclass 3a, 3b, and 3c, for an order rescinding Section 4(I)(b) of the Contract as to Class 5, and for an order of restitution requiring Home Depot to repay all Damage Protection fees and related fees;

i)k)    Also in the alternative to Class 3, SubclassSubclasses 3a, 3b, and 3c, and Class 5, for an order rescinding Section 4(I)(b) of the Contract as to Class 5a, and for an order of restitution requiring Home Depot to repay all Damage Protection fees and related fees;

l)    An order certifying this action as a class action on behalf of Class 6, and an award of all damages for provable at trial and recoverable under the Pennsylvania UTPCPL, including treble damages and punitive damages;

j)m)    for all other damages according to proof;

k)n)    for an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11;

l)o)    for pre-judgment interest as allowed by law;

m)p)    for costs of Court;

n)q)    for all other relief this Court deems necessary and proper.

## JURY DEMAND

~~Plaintiff~~Plaintiffs hereby ~~demands~~demand a trial by jury as to all issues so triable.

BAYUK PRATT ~~CLAY~~, LLC

*/s/Bradley W. Pratt*
Bradley W. Pratt
Georgia Bar No. ~~586673~~586672
4401 Northside ~~Parkway~~Pkwy, Suite ~~520~~390
Atlanta, Georgia 30327
Telephone: (404) ~~949-8118~~500-2669
~~bradley@prattclay.com~~

bradley@bayukpratt.com

**THE LOCKETT LAW FIRM LLC**

*/s/ John A. Lockett III*
John A. Lockett~~,~~ III
Georgia Bar No. 455549
~~john@lockettlawfirm.com~~
~~Benjamin J. Warlick~~
~~Georgia Bar No. 594669~~
~~ben@lockettlawfirm.com~~
1397 Carroll Drive
Atlanta, Georgia 30318
Telephone: (404) 806-7448
john@lockettlawfirm.com

and

**CROSS KINCAID**

*/s/Meredith C. Kincaid*
Meredith C. Kincaid
Georgia Bar No. 148549
520 W. Ponce de Leon Ave. No. 1858
Decatur, Georgia 30030
Telephone: (404) 948-3022
meredith@crosskincaid.com
*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned certifies that this document has been prepared in Times New Roman 14-point font in accordance with Local Rule 5.1(B).

/s/John A. Lockett, III
John A. Lockett III
Georgia Bar No. 455549

# EXHIBIT A



**STORE 0580 Windsor Park**
**4909 Windsor Hill**
**San Antonio, TX 78239**
**(210)871-7602**

CONTRACT #: **288021**

DARIN MATHEWS
637 ROCKLYN DR.
WINDCREST, TX 78239
(210) 556-9480

**Rental Center Hours**

MON 6A-8P TUE 6A-8P WED 6A-8P THU 6A-8P FRI 6A-8P SAT 6A-8P SUN 8A-8P

| RENTAL DURATION | DUE BACK | FOR ASSISTANCE CALL |
|---|---|---|
| 4 Hours | Jul. 17 @ 3:33pm | (210)871-7602 |

Deposit Trans:    Register # 90    Transaction # 28903    Date: 07/17/21    eDeposit #: 05802107170733341288021S1

| Agent Name: | DARIN MATHEWS | Date out: 07/17/2021 - 11:33 AM | Contract Created By: | rbp6r1m |
|---|---|---|---|---|
| | | Date Due: 07/17/2021 - 3:33 PM | Checked in By: | |
| | | Date in:- | | |

| Part Number | Item Description | 4 Hours | 1 Day | 2 Days | 1 Week | 4 Weeks | Contract Amt. |
|---|---|---|---|---|---|---|---|
| **0446300945** | **Drain Camera** | $139 | $199 | $398 | $796 | $2,388 | **$139** |
| | (1) Locator For Camera (XT-512) | - | - | | - | - | - |

| | | |
|---|---|---|
| | Rental Subtotal | **$139.00** |
| | Damage Protection | **$20.85** |
| | Estimated Tax | **$13.19** |
| | **Estimated Total** | **$173.04** |
| | Deposit - PAID | **$ (500.00)** |
| | (THE HOME DEPOT ending 8970) | |

**TERMS & CONDITIONS**

**I agree that no representative of The Home Depot is authorized to make any promise, warranty, or representation to me other than those reflected in writing in the Agreement. I agree to the Terms & Conditions and understand that the Agreement cannot be modified or changed except in writing signed by both parties. With respect to equipment I am renting, I have received the equipment referenced in the Agreement. In the event that I am returning equipment, I acknowledge and agree that I am returning the listed rental equipment, the total charges are correct, and additional charges may apply if the equipment is returned damaged.**

1. **If I do not return this equipment by the scheduled end date, I agree to a weekly recurring charge of $796.00, until all tools have been returned, or a maximum rental charge of $9,233.85 plus applicable taxes have been recovered. In addition, I understand that misrepresentation or failure to return equipment can lead to prosecution.**
2. **I have been offered operating manuals on the rental equipment.**
3. **A cleaning fee of up to $100.00 will be assessed if equipment is not returned clean.**

Signature

07/17/2021

Date

## EQUIPMENT RENTAL AGREEMENT TERMS AND CONDITIONS ("AGREEMENT")

**1.**     **GENERAL.** This Agreement is between Home Depot U.S.A., Inc. ("**The Home Depot**") and the customer identified on **Page 1** ("**Renter**"). The Home Depot will provide Renter the tools, vehicles or large equipment (collectively, "**Equipment**") described on **Page 1** and in accordance with the terms set forth in this Agreement. The Home Depot will provide the Equipment "as is" and in good working condition during the rental period (the "**Rental Period**") and according to the rental subtotal price identified on **Page 1** ("**Rental Price**"). Renter agrees to return the Equipment prior to the expiration of the Rental Period, or to pay the additional rental fees described in **Section 10**. To the extent Renter has entered in to a Master Rental Agreement ("**MRA**") with Home Depot and the terms of the MRA and this Agreement conflict, then the terms of the MRA will govern.

**2.**     **PAYMENT.** Renter is responsible for all charges due in full at the commencement of the Rental Period or upon The Home Depot's request, using a payment card approved by The Home Depot ("**Renter Card**"), including deposits ("**Deposits**"). Renter consents to the reservation of credit for estimated charges due, and authorizes The Home Depot to process all amounts due, on Renter Card (including vehicle rental, traffic law violations and parking citations, and any applicable administrative charge. In the event Renter cancels delivery of large equipment within 12 hours of the scheduled delivery time, a cancellation fee of $_____ will be charged to the credit card on file. All charges are subject to audit, and either party will promptly pay to or credit the other party for any necessary adjustments or corrections to charges as a result the audit. Renter must notify The Home Depot in writing of any disputed amounts, including credit card charges, within twenty-five (25) days after the receipt of The Home Depot rental contract/invoice, or Renter will be deemed to have irrevocably waived its right to dispute such amounts. Renter will also pay all direct costs of collection, including attorney fees, and interest at the highest rate permitted by law on any past-due amounts.

**3.**     **PERMITTED USE/RESTRICTIONS/MAINTENANCE.** Renter agrees that Home Depot has no control over the manner in which the Equipment is operated during the Rental Period. Renter warrants that:

**(a)**     Renter will inspect the Equipment to confirm that it is in good condition, without defects and is suitable for Renter's intended use;

**(b)**     Renter has received all information requested regarding the operation of the Equipment;

**(c)**     Home Depot is not responsible for providing operator or other training unless requested by Renter;

**(d)**     Renter will use the Equipment for its customary purpose, in compliance with all operating and safety instructions and immediately discontinue use of the Equipment if it becomes unsafe or in a state of disrepair;

**(e)**     The Equipment will be kept in a secure location;

**(f)**     Renter will maintain possession of the Equipment and will not sublease or sell the Equipment or assign this Agreement;

**(g)**     Renter will keep the Equipment free and clear of all liens, charges and encumbrances;

**(h)**     Renter will use the Equipment in compliance with all applicable laws and regulations;

**(i)**     Renter will not alter or cover up any decal or insignia on the Equipment or remove any operational or safety instructions;

**(j)**     Renter will not aid in the vandalism or theft of the Equipment;

**(k)**     Renter will not rent the Equipment upon the basis of false or misleading information;

**(l)**     Renter will not operate the Equipment while intoxicated or under the influence of any substance that impairs Renter's ability;

**(m)**     Renter will not use the Equipment in a negligent, illegal, unauthorized or abusive manner, or in any publication; and

**(n)**     Renter will not remove, operate, or utilize the Equipment outside of the United States, Canada or Guam.

**I.     For Tool and Large Equipment Rentals Only.** Renter is required to do the following:

•     Renter will maintain proper fuel, oil or lubrication levels in the tool and large equipment; and

•     Renter further agrees to perform routine inspections on the tool and large equipment, including inspections on leaks, cooling systems, water batteries, cutting edges, and cleaning in accordance with the manufacturer's specifications.

**II. For Vehicle Rentals Only.** The rented vehicle includes tires, two loading ramps, if applicable, a trailer, customary vehicle accessories, and documents ("**Vehicle**"). For the purposes of this Agreement, "**Authorized Driver**" means, the following people to the extent they are at least 21 years old, have a valid driver's license for the class of Vehicle being rented, and have Renter's express permission to operate the Vehicle: (**i**) Renter's spouse; and (**ii**) additional drivers named on the front of this Agreement.

**(a)**     Use Restrictions.  The following restrictions apply to the use of the Vehicle:

•     The Vehicle will not be operated by anyone who is not an Authorized Driver;

•     All occupants in the Vehicle must comply with seat-belt and child-restraint laws;

•     The number of passengers in the Vehicle will not exceed the number of seat-belts and child-restraints;

•     Renter will only operate the Vehicle on regularly maintained roadways;

•     Renter will ensure that keys are not left in the Vehicle and will close and lock all doors and windows upon exiting the Vehicle;

•     Renter will not (**i**) transport people or property for hire; (**ii**) tow anything (with the exception of an attached trailer if rented pursuant to this Agreement); (**iii**) carry or transport hazardous or explosive substances; (**iv**) engage in a speed contest; or (**v**) load the Vehicle or transport weight exceeding the Vehicle's maximum capacity;

•     Renter will not engage in reckless misconduct which causes the Vehicle damages or causes personal injury or property damage; and

•     Renter will not use the Vehicle for the commission of a felony or for the transportation of illegal drugs or contraband.

**(b)**     Fuel.  Renter will return the Vehicle with the same level of fuel that the Vehicle contained when rented ("**Original Fuel Level**"). Vehicles returned with less than the Original Fuel Level are subject to a fuel replacement charge.

**(c)**     Repossession of Vehicle.  The Vehicle may be repossessed, without notice and at Renter's expense, if the Vehicle (**i**) is not returned to The Home Depot at the expiration of the Rental Period; (**ii**) is illegally parked; (**iii**) is used in violation of law or this Agreement; (**iv**) is sold or transferred in violation of this Agreement; or (**v**) appears to be abandoned.

**(d)**     Property Placed, Transported or Left in Vehicle or at The Home Depot. Renter is solely responsible for all loss of and damage to any property placed, transported or left in the Vehicle, or at a Home Depot facility. Renter will pay all costs associated with the disposal of any such property.

**(e)**     Parking Citations. Renter will pay all fines for parking citations issued during the Rental Period. In the event The Home Depot is required to respond to authorities concerning any citations, then Renter will be charged an administrative fee of $20. The Home Depot may provide information about this Agreement to those authorities.

1

**III. Equipment Return.**

**(a)**    On or before on the date and at the time specified in the Agreement, Renter will return the Equipment to The Home Depot location where the Equipment was rented in the same condition as when rented. Moreover, if the Equipment is not returned as specified in this **Section 3**, a cleaning charge, a drop charge or a rate change may apply (in addition to any remedies set forth in **Section 8** below). If the Equipment is not returned at the expiration of the Rental Period or if The Home Depot determines that the Equipment is no longer in Renter's possession, Renter will be deemed unlawfully in possession of the Equipment, and The Home Depot may, among other remedies, seek the issuance of a warrant for the arrest of Renter or any other person in possession of the Equipment.

**(b)**    Additional Failure to Return Provisions:

| STATE | SPECIAL NOTICES |
|-------|-----------------|
| Arizona | Unlawful failure to return the Equipment within 72 hours of expiration of Rental Period is a class 1 misdemeanor. |
| Florida | Failure to return the Equipment upon expiration of the Rental Period and failure to pay all amounts due (including costs for damage to the property or equipment) are evidence of abandonment or refusal to redeliver the Equipment, punishable in accordance with section 812.155, Florida Statutes. |

**IV. Telematics.** The Equipment may be equipped with a telematics device that enables The Home Depot or its fleet management provider to monitor the use and location of the Equipment. The telematics device is used to collect the Equipment's location (determined by GPS systems), fuel consumption, mileage, and systems status information. The Home Depot may use the information for various purposes, including, but not limited to: **(i)** locating lost or stolen Equipment; **(ii)** analyzing and improving The Home Depot's rental program; **(iii)** enforcing the terms of this Agreement; or **(iv)** providing Renter with support, assistance, or services. The Home Depot may share information collected with companies performing services for The Home Depot, and as deemed necessary by The Home Depot, **(A)** to comply with legal process or a request from a governmental entity, and **(B)** to protect The Home Depot's rights and property.

**V. Investigations.** All Renters will promptly complete incident reports, deliver to The Home Depot a copy of all related documents, and fully cooperate with The Home Depot's investigation of any vandalism, theft, accident, claim or lawsuit involving the Equipment. This obligation to cooperate does not create a duty of defense by The Home Depot.

**VI. California Proposition 65 Warning Notification Requirement.** Renter acknowledges that Equipment can expose Renter to chemicals including toluene, which are known to the State of California to cause birth defects or other reproductive harm. For more information go to www.P65Warnings.ca.gov.

**4.    EQUIPMENT DAMAGE / REPAIRS / PROTECTION.**

**I. For Tool and Large Equipment Rentals Only.**

**(a)**    Equipment Damage. Regardless of fault, Renter is responsible for all loss of and damage to tools and large equipment (including loss or damage due to normal use, caused by theft, abuse, misuse, neglect, or intentional acts). Renter is responsible for The Home Depot's loss of use and an administrative charge for expenses associated with processing the loss and damage claim (collectively, "**Administrative Charges**").

**(b)**    Damage Protection. Damage protection is an optional service offered by The Home Depot that, if selected, modifies this Agreement to relieve Renter of repair charges, replacement charges a n d Administrative Charges if the Equipment is damaged during normal use during the Rental Period ("**Damage Protection**"). In the event Renter elects Damage Protection services, the charge for Damage Protection is 15% of the Rental Price and will appear as a separate line-item on the Agreement and on the invoice. Renter must accept or decline the Damage Protection. Damage Protection is not insurance and The Home Depot may make a profit on its Damage Protection. Damage Protection does not cover loss of or damage to the tools and large equipment caused by theft, abuse, or intentional acts. Renter expressly acknowledges and agrees that Renter will be responsible for all loss or damage.

**(c)**    Repairs. In the event Renter does not elect to purchase Damage Protection, Renter agrees that an estimated "**Repair Cost**" will be charged for tools and large equipment that is returned with damage due to abuse, misuse, neglect, or intentional acts. The Repair Cost will not exceed the fair market value of the tool or large equipment and applicable fees. Renter acknowledges and agrees to pay the Repair Cost and authorizes The Home Depot to charge the Repair Cost to the Renter Card. All maintenance or repairs must be performed by The Home Depot.

**II. For Vehicle Rentals Only.**

**(a)**    Equipment Damage. Regardless of fault, Renter is responsible for all loss of and damage to the Vehicle (including loss or damage to the spare tire, jack, trailer (when applicable), and loading ramps), plus actual towing, storage, impound and other related expenses. Renter is responsible for The Home Depot's loss of use and an Administrative Charges.

**(b)**    Repairs. In the event Renter does not elect to purchase Damage Protection, Renter will not repair or replace any part of the Vehicle or otherwise alter the Vehicle without the prior written consent of The Home Depot. In the event consent is not obtained, Renter will pay for all unauthorized repairs, replacement parts, and the cost of restoring any unauthorized alterations.

**(c)**    Damage Protection. **Damage protection is an optional service offered by The Home Depot that may be declined. If selected, this optional service modifies this Agreement to relieve Renter of repair charges, replacement charges, or Administrative Charges, if the Vehicle is damaged during normal use during the Rental Period ("Damage Protection"). The charge for Damage Protection is will be determined by each market and will appear as a separate line-item on the Agreement and on the invoice. Renter must accept or decline the Damage Protection service. Damage Protection is not insurance and The Home Depot may make a profit on its Damage Protection Program. Damage Protection does not cover loss of or damage to the Equipment caused by theft, abuse, misuse, or intentional acts. All restrictions, conditions, and provisions of Damage Protection are in this paragraph 4.II. RENTER EXPRESSLY ACKNOWLEDGES AND AGREES THAT RENTER WILL BE RESPONSIBLE FOR ALL LOSS OR DAMAGE AND ACKNOWLEDGES THIS DISCLOSURE. In addition to the requirements stated in this paragraph 4.II, the following provisions are applicable within the noted State or Territory:**

| STATE | REQUIRED NOTICES |
|-------|------------------|
| | |

| Connecticut, Hawaii Iowa Kansas, Maryland Missouri Nevada, New Mexico, Texas Virginia | ✓ THIS CONTRACT OFFERS, FOR AN ADDITIONAL CHARGE, A COLLISION DAMAGE WAIVER TO COVER YOUR RESPONSIBILITY FOR DAMAGE TO THE VEHICLE. YOU ARE ADVISED TO CAREFULLY CONSIDER WHETHER TO PURCHASE THIS PROTECTION IF YOU HAVE RENTAL VEHICLE COLLISION COVERAGE PROVIDED BY YOUR CREDIT CARD OR AUTOMOBILE INSURANCE POLICY. BEFORE DECIDING WHETHER TO PURCHASE OPTIONAL VEHICLE PROTECTION, YOU MAY WISH TO DETERMINE WHETHER YOUR OWN INSURANCE POLICY OR CREDIT CARD COVERS: (i) DAMAGE, LOSS, OR LOSS OF USE TO A RENTED VEHICLE; FIRE AND THEFT DAMAGE AND PERSONAL INJURY INCURRED WHILE USING A MOTOR VEHICLE; AND (ii) THE AMOUNT OF THE DEDUCTIBLE.<br>✓ IF COVERAGE IS CONFIRMED, RENTER MAY REQUIRE THAT THE HOME DEPOT SUBMIT ANY CLAIMS TO THE RENTER'S PERSONAL INSURANCE CARRIER. THE PURCHASE OF THIS DAMAGE WAIVER IS NOT MANDATORY AND MAY BE WAIVED.<br>✓ Maryland law requires that all Maryland residents' insurance policies with collision coverage automatically extend that collision coverage to passenger cars rented or motor vehicles shared by the insureds named in the policy for a period of 30 days or less. |
| Illinois | NOTICE: This contract offers, for an additional charge, a collision damage waiver to cover your financial responsibility for damage to the rental vehicle. The purchase of a collision damage waiver is optional and may be declined. You are advised to carefully consider whether to sign this waiver if you have rental vehicle collision coverage provided by your credit card or collision insurance on your own vehicle. Before deciding whether to purchase the collision damage waiver, you may wish to determine whether your own vehicle insurance affords you coverage for damage to the rental vehicle and the amount of deductible under your own vehicle insurance coverage. |
| Minnesota | UNDER MINNESOTA LAW, A PERSONAL AUTOMOBILE INSURANCE POLICY MUST: (1) COVER THE RENTAL OF THIS MOTOR VEHICLE AGAINST DAMAGE TO THE VEHICLE AND AGAINST LOSS OF USE OF THE VEHICLE; AND (2) EXTEND THE POLICY'S BASIC ECONOMIC LOSS BENEFITS, RESIDUAL LIABILITY INSURANCE, AND UNINSURED AND UNDERINSURED MOTORIST COVERAGES TO THE OPERATION OR USE OF A RENTED MOTOR VEHICLE. THEREFORE, PURCHASE OF ANY COLLISION DAMAGE WAIVER OR SIMILAR INSURANCE AFFECTED IN THIS RENTAL CONTRACT IS NOT NECESSARY. IN ADDITION, PURCHASE OF ANY ADDITIONAL LIABILITY INSURANCE IS NOT NECESSARY IF YOUR POLICY WAS ISSUED IN MINNESOTA UNLESS YOU WISH TO HAVE COVERAGE FOR LIABILITY THAT EXCEEDS THE AMOUNT SPECIFIED IN YOUR PERSONAL AUTOMOBILE INSURANCE POLICY. |
| New York | NOTICE: This contract offers, for an additional charge, optional vehicle protection to cover your financial responsibility for damage or loss to the rental vehicle. The purchase of optional vehicle protection is optional and may be declined. You are advised to carefully consider whether to purchase this protection if you have rental vehicle collision coverage provided by your credit card or automobile insurance policy. Before deciding whether to purchase optional vehicle protection, you may wish to determine whether your credit card or your vehicle insurance affords you coverage for damage to the rental vehicle and the amount of deductible under such coverage. |
| Rhode Island | The State of Rhode Island requires us to provide the following additional information about your liability for damage to the rental car and the purchase of a damage waiver. If Renter purchases a Damage Protection, The Home Depot will waive our right to hold you or any authorized driver liable for damage. Even if you buy the Damage Protection, you and any Authorized Driver will remain liable for damage or loss if: (1) caused intentionally, willfully or wantonly; (2) occurred while operating the rental vehicle while legally intoxicated or under the influence of any illegal drug or chemical as defined or determined under the law of the state in which the damage occurred; (3) caused while engaging in any speed contest; (4) caused while using the vehicle to push or tow anything or using the vehicle to carry persons or property for hire, unless expressly authorized in the rental agreement; (5) incurred while driving outside the United States or Canada, or, if state restrictions are imposed by the rental agreement if such damage or loss is incurred outside of those states where operation of the vehicle is expressly authorized in the rental agreement; (6) incurred while the vehicle is driven, with the Renter's permission or accession, by anyone other than an Authorized Driver; (7) incurred after the private passenger automobile was rented or an Authorized Driver was approved as a result of fraudulent information provided to the rental company; (8) incurred as a result of commission of a felony; and (9) incurred if the vehicle is stolen and Renter or Authorized Driver fails to return the original ignition key, fails to file a police report within seventy-two (72) hours of discovering the theft, or fails to cooperate with the Home Depot, police or other authorities in all matters connected with the investigation. |

## 5.  LIMITATION OF LIABILITY.

**I. For Tool and Large Equipment Rentals Only.** DURING THE RENTAL PERIOD, RENTER ASSUMES ALL RISKS ASSOCIATED WITH AND FULL RESPONSIBILITY FOR THE POSSESSION, CUSTODY AND OPERATION OF THE TOOLS AND LARGE EQUIPMENT, INCLUDING, BUT NOT LIMITED TO, RENTAL CHARGES, RENTER TRANSPORT, LOADING AND UNLOADING, PROPERTY DAMAGES AND DESTRUCTION, LOSSES, PERSONAL INJURY, AND DEATH. RENTER EXPRESSLY ASSUMES ALL RISK OF DAMAGE TO THE TOOLS AND LARGE EQUIPMENT UNLESS RENTER PURCHASED DAMAGE PROTECTION, WHICH ALLEVIATES CERTAIN COSTS AND RESPONSIBILITIES, AS PROVIDED IN **SECTION 4**. FAILURE TO RETURN THE TOOLS AND LARGE EQUIPMENT COULD LEAD TO RENTER BEING PROSECUTED FOR A CRIME.

**II. For Vehicle Rentals Only. (a)**     RENTER IS RESPONSIBLE FOR BODILY INJURY (INCLUDING DEATH) AND PROPERTY DAMAGE TO OTHERS RESULTING FROM USE OR OPERATION OF THE VEHICLE (**"LIABILITY"**). **(b)** Except for **California**, The Home Depot may provide Renter with liability insurance, as set forth in the table below:

| STATE | LIABILITY REQUIREMENTS/SPECIAL NOTICES |
|---|---|
| Canada, Maryland, Massachusetts, Michigan, Mississippi, | If there is no violation of a Use Restriction (as defined in **Section 3**) and to the extent required or permitted by applicable law, The Home Depot provides **primary** liability protection that will not exceed the Minimum Financial Responsibility Limits |

| | |
|---|---|
| New York, South Carolina, South Dakota, and Utah | (defined below) or minimum no-fault benefits. For purposes of the Agreement, the term "**Minimum Financial Responsibility Limits**" refers to the minimum amount of protection that is required to establish financial responsibility under applicable law. |
| District of Columbia, and all other states (except California) | If there is no violation of a Use Restriction (as defined in **Section 3**) and to the extent required or permitted by applicable law, The Home Depot provides <u>secondary</u> liability protection that will not exceed the Minimum Financial Responsibility Limits or minimum no-fault benefits. |
| | The Home Depot's secondary liability protection DOES NOT APPLY until after exhaustion of all insurance or other protection available to the driver of the Vehicle or any injured passenger in the Vehicle (automobile liability insurance, no-fault insurance, personal injury protection, employer's insurance, or any other protection or indemnification, whether primary, excess or contingent), and then such protection applies only to the extent it is needed to meet, on a cumulative basis with all such protection available to the driver or injured passengers, the minimum financial insurance or other responsibility limits or minimum <u>no-fault benefits required by</u> applicable law. |
| Arizona | The Home Depot does not extend any of its motor vehicle financial responsibility or provide public liability insurance coverage to Renter, Authorized Drivers or any other driver. |
| Florida | The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by FL Statutes 324.021(7) and 627.736,. |
| Michigan | THE MICHIGAN MINIMUM FINANCIAL RESPONSIBILITY LIMITS FOR BODILY INJURY ARE $20,000 BECAUSE OF BODILY INJURY TO, OR DEATH OF, ONE PERSON IN ANY ONE ACCIDENT. THE HOME DEPOT'S PROTECTION AS DESCRIBED ABOVE APPLIES ONLY IF THE INJURY IS CAUSED BY AN AUTHORIZED DRIVER OR BY RENTER'S FATHER, MOTHER, BROTHER, SISTER, SON, DAUGHTER, OR OTHER IMMEDIATE FAMILY MEMBER. RENTER IS LIABLE TO THE HOME DEPOT FOR CLAIMS OF AUTOMOBILE LIABILITY PROTECTION, WHICH EXCEED THE PROTECTION AS DESCRIBED ABOVE. RENTER IS ALSO LIABLE TO INJURED PERSONS FOR AMOUNTS AWARDED IN EXCESS OF THE PROTECTION AS DESCRIBED IN **SECTION 5.II(a)**. |

(c)    Subject to applicable law, drivers are excluded from any insurance policy that may be available to The Home Depot, and The Home Depot's liability protection does not apply to:

•    bodily injury (including death) or property damage to the Vehicle driver or the driver's family members related by blood, marriage, adoption who resides with the driver. SPECIFIC REJECTION OF PERSONAL INJURY PROTECTION FOR VEHICLES RENTED IN **MARYLAND**: RENTER SPECIFICALLY AGREES TO WAIVE ANY PERSONAL INJURY PROTECTION COVERAGE WHICH WOULD PROVIDE CERTAIN MEDICAL AND DISABILITY BENEFITS TO AUTHORIZED DRIVERS AND ANY INJURED PASSENGER IN THE VEHICLE; or

•    uninsured or underinsured motorist or motor vehicle insurance, supplemental or can be waived or rejected. SPECIFIC REJECTION OF UNINSURED AND UNDERINSURED MOTORIST PROTECTION FOR VEHICLES RENTED IN no-fault insurance, or any other insurance that is optional **PENNSYLVANIA**: RENTER IS REJECTING UNINSURED AND UNDERINSURED MOTORIST COVERAGE UNDER THIS RENTAL OR LEASE AGREEMENT, AND ANY POLICY OF INSURANCE OR SELF- INSURANCE ISSUED UNDER THIS AGREEMENT, FOR RENTER AND ALL OTHER PASSENGERS OF THE VEHICLE. UNINSURED COVERAGE PROTECTS RENTER AND OTHER PASSENGERS IN THE VEHICLE FOR LOSSES AND DAMAGES SUFFERED IF INJURY IS CAUSED BY THE NEGLIGENCE OF A DRIVER WHO DOES NOT HAVE ANY INSURANCE TO PAY FOR LOSSES AND DAMAGES. UNDERINSURED COVERAGE PROTECTS RENTER AND OTHER PASSENGERS IN THE VEHICLE FOR LOSSES AND DAMAGES SUFFERED IF INJURY IS CAUSED BY THE NEGLIGENCE OF A DRIVER WHO DOES NOT HAVE ENOUGH INSURANCE TO PAY FOR ALL LOSSES AND DAMAGES.

If there is a violation of a Use Restriction but applicable law requires that The Home Depot provide all or part of the liability protection described above, the same limitations apply.

6.    **NO WARRANTIES.** The Home Depot does not design or manufacture the Equipment and is not the agent of the manufacturer or any other supplier of the Equipment. THE HOME DEPOT DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT, ITS DURABILITY, CONDITION, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE. Renter acknowledges acceptance of the Equipment "as is" and on a "where is" basis, with "all faults" and without any recourse whatsoever against The Home Depot.

7.    **INDEMNIFICATION.**

(a)    EXCEPT AS OTHERWISE PROVIDED FOR IN THIS AGREEMENT, TO THE FULLEST EXTENT PERMITTED BY LAW, RENTER HEREBY INDEMNIFIES, RELEASES, AND HOLDS THE HOME DEPOT HARMLESS FROM AND AGAINST ALL CLAIMS LOSSES, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES AND EXPENSES), LIABILITIES AND DAMAGES (INCLUDING PERSONAL INJURY, DEATH, PROPERTY DAMAGE, LOST PROFITS, AND SPECIAL, INCIDENTAL AND CONSEQUENTIAL DAMAGES) ARISING OUT OF: **(I)** ALL CLAIMS WHICH ARE EXCLUDED FROM OR IN EXCESS OF THE LIABILITY PROTECTION PROVIDED BY THE HOME DEPOT; **(II)** ALL CLAIMS BY OR AGAINST THE HOME DEPOT ARISING OUT OF RENTER'S OPERATION OF THE EQUIPMENT; AND **(III)** ALL CLAIMS BY OR AGAINST THE HOME DEPOT ARISING OUT OF RENTER'S FAILURE TO COMPLY WITH ALL TERMS OF THIS AGREEMENT. RENTER'S INDEMNITY OBLIGATION WILL SURVIVE THE EXPIRATION OR TERMINATION OF THIS AGREEMENT. IF ANY PART OF THIS SECTION IS DETERMINED INVALID BY A COURT OF COMPETENT JURISDICTION, RENTER AGREES THAT THIS CLAUSE WILL BE ENFORCEABLE TO THE FULLEST EXTENT PERMITTED BY LAW. TO THE EXTENT THAT RENTER'S STATE DOES NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SUCH LIMITATIONS MAY NOT APPLY.

(b)    NOTWITHSTANDING ANY OTHER PROVISION IN THE AGREEMENT TO THE CONTRARY, THE HOME DEPOT WILL NOT BE LIABLE TO RENTER, AND RENTER WAIVES ANY CLAIM AGAINST THE HOME DEPOT FOR LOST USE, LOST PROFIT, LOST REVENUE, LOST SAVINGS, LOST REPUTATION, LOSS OF PRODUCTIVITY, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR

CONSEQUENTIAL DAMAGES RELATED TO THE RENTAL, EVEN IF SUCH DAMAGES WERE FORESEEABLE OR RESULT FROM A BREACH OF THIS AGREEMENT.

**8.      DEFAULT AND REMEDIES.**

**(a)**      Failure to Extend Rental Period:  To extend the Rental Period, Renter must obtain The Home Depot's written approval prior to the expiration of such Rental Period.  Should Renter fail to return the Equipment prior to the expiration of the Rental Period or fail to return the Equipment in as good order and condition as when received, Renter will be in default of this Agreement.  In addition to remedies set forth in **Section 3 (III)**, if the Equipment is not returned prior to expiration of the Rental Period, Renter will be charged an additional rental fee in the amount identified on **Page 1** on a daily recurring basis ("**Additional Rental Fees**") until the first to occur of the following:  **(i)** the Equipment is returned; **(ii)** The Home Depot has received funds in the amount of the value of the Equipment based upon the condition of the Equipment at the beginning of the Rental Period ("**Present Value**"); or **(iii)** the 30th day after the Rental Period expires.

**(b)**      Breach of Terms and Conditions.  In the event that The Home Depot determines Renter has violated any term or condition of this Agreement, The Home Depot may take all action necessary to secure either:  **(i)** the return of the Equipment; or **(ii)** funds equal to the Present Value.  In the event The Home Depot must take actions pursuant to this **Section 8(b)** or **Section 3(III)**, Renter will reimburse The Home Depot for all costs incurred including, without limitation, reasonable attorney's fees.  Renter expressly agrees and hereby authorizes The Home Depot to charge to the Renter Card, all amounts shown on **Page 1**, and all charges subsequently incurred by Renter under or related to this Agreement, including but not limited to: **(A)** extension of the Rental Period; **(B)** any charges incurred in connection with the recovery of the Equipment; **(C)** any charges incurred for failure to return the Equipment, INCLUDING, WITHOUT LIMITATION, ADDITIONAL RENTAL FEES OR EQUIPMENT REPLACEMENT FEES (less any paid additional rental fees).  To the extent required by applicable payment card network rules, The Home Depot will obtain Renter's additional authorization to charge Renter Card, if applicable, for any insurance costs related to Equipment loss, theft, or damage during the Rental Period.

**(c)**      Payments.  Renter can withdraw authorization to pay the Additional Rental Fees on a weekly recurring payment at any time, and make alternative arrangements to pay the Additional Rental Fees.  The Home Depot is authorized to obtain updated card account information from the card issuer.  Renter agrees that a service charge of 1.5% per month, or the maximum rate permitted by law, will be assessed on all delinquent accounts, until paid in full.  Deposits will be returned only after all amounts payable to The Home Depot are paid in full.  Renter is prohibited to use any The Home Depot credit line to pay for delinquent or past due accounts and any future rentals will be postponed until Renter's account is paid in full. If Renter's payment towards the account is returned, denied, or otherwise unable to be processed, the balance due may be sent to a 3rd party collection agency on the 31st day after the expiration of the Rental Period.

**(d)**      No Notice. RENTER HEREBY AGREES THAT RENTER IS NOT ENTITLED TO NOTICE OF DEFAULT OR NOTICE OF ANY ACTION OF ENFORCEMENT BY THE HOME DEPOT OTHER THAN WHAT IS EXPRESSLY PROVIDED FOR UNDER THIS AGREEMENT. Should The Home Depot fail to meet any of its obligations under this Agreement, Renter's only remedy is repair or replacement of the Equipment or a rental charge adjustment at The Home Depot's sole discretion.

**9.      CONSENT TO COMMUNICATION VIA TEXTING** If Renter has consented to receive updates about Equipment via text message, Renter understands and agrees that by providing this consent, Renter may receive up to **5** autodialed informational messages at the mobile phone number Renter provided between the hours of **9am** and **6pm**. Renter understands and agrees that this consent is not required or a condition of purchasing any products and services and that Renter can opt out at any time by texting text STOP to 97710 to stop (Renter will be sent a confirmation message) or call 1-877-467-2581 or 1-800-466-3337.  Standard message and data rates apply. Not all carriers are covered. For questions, contact 1-800-HOMEDEPOT. Privacy and terms information available at www.homedepot.com.

**10.      NOTICES.**  The Home Depot may elect to send any notices to Renter by any means determined by the Home Depot.  In particular, if Renter has provided The Home Depot with an email address, The Home Depot may send notices to Renter by email and such email notice by The Home Depot will be valid notices for purposes of this Agreement.

**11.      RENTER'S INDEPENDENT STATUS.**  The relationship between the Parties under the Agreement is that of independent contractors. Renter is not the agent or authorized representative of The Home Depot for any purpose.

**12.      GOVERNING LAW.**  This Agreement will be construed in accordance with the laws of the State of Georgia.

**13.      SEVERABILITY**.  If any provision of the Agreement is held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable.  If any court finds that any provision of this Agreement is invalid or unenforceable, but by limiting such provision it would be valid and enforceable, then such provision will be deemed to be written, construed, and enforce as so limited.

**14.      ENTIRE AGREEMENT.**  This Agreement represents the entire agreement between The Home Depot and Renter.  This Agreement may not be amended or modified except in writing signed by both parties.  This Agreement supersedes any prior written or oral agreements between the parties.

# EXHIBIT B



# EXHIBIT C



# EXHIBIT D

# Tool Rental FAQ

## How do I order a new or additional tool?

Please utilize the Tool Request Form at myApron>myDepartments>D78 Rental & Repair>Rental Procedures>Merch Execution>Tool Request Form to request tools. Use the tool to request approved tools that are not currently present in the TRC or existing tools where demand has increased. Ensure lost, stolen or damaged tools are written off so that they can be ordered via the Monthly Fleet Replenishment process. Requests are processed on a monthly basis and a Tool Request Tracking Form is published to report status of all requests.

## How do I get a tool rental center at my store?

We are currently working through the process of adding Tool Rental Centers to a small number of very high volume stores. We will continue to monitor these opportunities on an annual basis to determine where the ROI justifies a new TRC to be built. We are also working on several opportunities to expand the Tool Rental business without additional footprint growth through expansion of the Penske and Compact Power programs into additional non-TRCs and the addition of Trailers and other easy to maintain product at select non-TRCs. There are also plans to complete a larger pilot of the TRC Lite model and we hope to expand that over the coming years.

## What does the Damage Waiver cover?

Damage Waiver covers repairs due to normal wear and tear on equipment. It does not cover damage due to customer abuse or theft.



# EXHIBIT E



**STORE 0580 Windsor Park**
**4909 Windsor Hill**
**San Antonio, TX 78239**
**(210)871-7602**

Rental Center Hours

CONTRACT #: **288021**
**Status: CLOSED**

DARIN MATHEWS
637 ROCKLYN DR.
WINDCREST, TX 78239
(210) 556-9480

MON 6A-8P **TUE** 6A-8P **WED** 6A-8P **THU** 6A-8P **FRI** 6A-8P **SAT** 6A-8P **SUN** 8A-8P

| ACTUAL DURATION | BALANCE RETURNED TODAY |
|---|---|
| **1 Month, 1 Day, 14 Hours, 35 Minutes** | **$0.00** |

Deposit Trans:  Register #: 90    Transaction #: 28903      Date: 07/17/21    eDeposit #: 058021071707333412880215

| Agent Name | | Date out: | 07/17/2021 - 11:33 AM | Contract Created By: | rbp6r1m |
|---|---|---|---|---|---|
| | DARIN MATHEWS | Date Due: | 07/17/2021 - 3:33 PM | Checked In By: | RRSystem |
| | | Date In: | 08/19/2021 - 2:09 AM | | |

| Tool Description | Charges | Amount |
|---|---|---|
| Drain Camera | Tool Rental Fee | $796.00 |
| (04-463-00945) | Repair Charge | $2,467.01 |
| (1) Locator For Camera (XT-512) | Price Adjustment | - $490.00 |
| | SubTotal | $2,773.01 |

| | |
|---|---|
| Rental Subtotal | $2,773.01 |
| Damage Protection* | $45.90 |
| Sales Tax | $232.56 |
| **Contract Total** | **$3,051.47** |
| Deposit - PAID 07/17/21 | -$500.00 |
| (THE HOME DEPOT ending 8970) | |
| Revenue Recovery Paid | -$2,551.47 |
| (THE HOME DEPOT ending 8970) | |
| Outstanding Balance | $0.00 |

\* 15% of Rental Subtotal if applicable.

**RENTAL FEE CALCULATOR DISCLAIMER**

Home Depot uses a Rental Calculator to insure our customers to get the lowest rates possible for the time they had the tool.

**TERMS & CONDITIONS**

I agree that no representative of The Home Depot is authorized to make any promise, warranty, or representation to me other than those reflected in writing in the Agreement. I agree to the Terms & Conditions and understand that the Agreement cannot be modified or changed except in writing signed by both parties. With respect to equipment I am renting, I have received the equipment referenced in the Agreement. In the event that I am returning equipment, I acknowledge and agree that I am returning the listed rental equipment, the total charges are correct, and additional charges may apply if the equipment is returned damaged.

Scanned with CamScanne

# EXHIBIT F

FREE IN-STORE PICKUP Over one million online items eligible.

You're shopping
**Midtown** ⌄
○ **OPEN** until 10 pm

Delivering to
**30308** ⌄

Search

**Cart** | 0 items 🛒

Home  /  Customer Support: FAQ  /  Frequently Asked Questions About Tool Rental

## Tool Rental Frequently Asked Questions

**MOST VIEWED**

Check Order Status

Store Finder and Store Hours

My Account Sign in

Check Order History

Order Cancellation

Shipping and Delivery FAQ

Pay Credit Card Bill

Feedback

About My Order

Shipping and Delivery

Product and Services

Pricing and Promos

Payments

My Account

Returns and Recalls

Policies and Legal

Corporate Information

Contact Us





GET THE FACTS

Find A Tool or Truck

## Tool Rental FAQs

**What happens if a tool breaks down while I'm using it?**

Damage protection is an optional service offered by The Home Depot that relieves Customer of repair or replacement charges if the Equipment is damaged during normal use during the Rental Period. The charge for Damage Protection is 15% of the Rental Price and will appear as a separate line item charge on the Agreement and on the invoice. Customer must accept or decline the Damage Protection service at the time of rental. Damage Protection is not insurance. Damage Protection does not cover loss of or damage to the Equipment caused by theft, abuse, misuse, neglect, intentional acts and/or failure to follow proper use and care instructions provided for the Equipment. Customer expressly acknowledges and agrees that Customer shall be responsible for all repair or replacement costs not covered by Damage Protection.

**What are your hours of operation?**

Our Tool Rental Centers' hours of operation match the store in which they are located and are also open 7 days a week. Please check your local store for actual hours of operation.

**What types of tools can I rent?**

We rent a variety of professional-quality tools ranging from smaller hand-tools to larger machinery, such as trenchers.

**How much does it cost to rent a tool?**

We offer competitive prices that vary based on the type of tool. Please check the website or contact your local store for details.

**Why should I rent from The Home Depot?**

We allow you to rent the tools, so you can own the project. We offer a large assortment of reliable tools, have over 1000 locations for your convenience, and save you from the cost and hassle of tool maintenance and storage

**How can I get a tool delivered to my house?**

Most of the tools will fit in your car or truck. We also offer trailers or Load N' Go trucks to rent for your convenience.

**How long can I rent a tool?**

You can rent on your terms. We offer 4-hour, daily, weekly, and monthly rentals.

**What happens if a tool does not work?**

Our associates will ensure the tool works properly before you leave the store. If you experience issues with the tool while completing your project, simply bring it back to the Tool Rental Center to get a replacement. If you purchase Damage Protection at the time of your rental, you are not responsible for repair costs for tools that break due to normal use.

**Can I make a reservation for a tool?**

Tool and equipment rentals are on a "first come, first serve" basis, so there are no advanced reservations available. Please call your local store or browse homedepot.com/rentals to check tool availability prior to visiting the store.

**What do I need to bring in order to rent a tool?**

You will need a government-issued photo ID such as a driver's license or passport, as well as a valid credit card for the deposit. No debit cards or gift cards will be accepted at the time of rental; however debit cards are accepted for the rental fees upon return of the tool

Feedback

---

### Explore More on homedepot.com

**Flooring**

⌄ **View More**

---

**How doers get more done** ™

Need Help? Please call us at: **1-800-HOME-DEPOT** (1-800-466-3337)

Customer Service          Resources          About Us



Special Financing Available everyday*

Check Order Status

Pay Your Credit Card

Order Cancellation

Returns

Shipping & Delivery

Product Recalls

Help & FAQs

Privacy & Security Center

Specials & Offers

Military Discount Benefit

DIY Projects & Ideas

Truck & Tool Rental

Installation & Services

Moving Supplies & Rentals

Protection Plans

Rebate Center

Gift Cards

Catalog

Subscriptions

Careers

Corporate Information

Digital Newsroom

Home Depot Foundation

Investor Relations

Government Customers

Suppliers & Providers

Affiliate Program

Eco Actions

Corporate Responsibility

Home Depot Licensing Information

Pay & Manage Your Card

Credit Offers

Get $5 off when you sign up for emails
with savings and tips.

| Enter Email Address | GO |

    

## Shop Our Brands

      

      

   

© 2000-2022 Home Depot. All Rights Reserved. Use of this site is subject to certain Terms Of Use.
Local store prices may vary from those displayed. Products shown as available are normally stocked but inventory levels cannot be guaranteed
For screen reader problems with this website, please call 1-800-430-3376 or text 38698 (standard carrier rates apply to texts)

Privacy & Security Statement    Cookie Usage    My Preference Center    California Privacy Rights & Report    Do Not Sell My Personal Information    California Supply Chain Act    Site Map    Store Directory    Mobile Site

# Exhibit G

# DAMAGE PROTECTION PLAN

 **RENTAL**



# The Damage Protection Policy for The Home Depot® Rental covers tools that are damaged while *in use*.

### What does this mean for customers?

The Damage Protection Plan is a plan offered to waive possible repair fees that may occur while using the tool during the rental period. While Damage Protection is optional, it is highly recommended to ensure maximum protection when you rent tools and equipment from The Home Depot. It could cover potential gaps in your insurance coverage. The customer is not responsible for the repair cost of damages incurred while the tool or equipment is being used.

For only 15% of the rental price, Damage Protection can protect you against unexpected expenses that could be incurred from damage while using tools and large equipment.

### How can I opt into the Damage Protection Plan?

Damage Protection can be added when renting any tool or piece of large equipment. For any questions, please call or reach out to your nearest The Home Depot Rental Center for more information.

---

**Example:** Kinked cable on a drain cleaner

|  | Without DP |  | With DP |
|---|---|---|---|
| Rental Fees | $100 | Rental Fees | $100 |
| Damage Protection | $0 | Damage Protection | $15 |
| Repair Cost | $240 | Repair Cost | $0 |
| Total | $340 | Total | $115 |

**Savings of $225**

# EXHIBIT H

# Account Statement

Send Notice of Billing Errors and Customer Service Inquiries to:
HOME DEPOT CREDIT SERVICES
PO Box 790328, St. Louis, MO 63179



The Home Depot
Consumer Credit Card

**Customer Service:**
homedepot.com/mycard
**Account Inquiries:**
1-800-677-0232 (TTY: 711)

Account Number: REDACTED 8970

## Summary of Account Activity

| | |
|---|---|
| Previous Balance | $2,275.03 |
| Payments | -$400.00 |
| Other Credits | -$10.59 |
| Purchases | +$2,551.47 |
| **Fees Charged** | **+$0.00** |
| **Interest Charged** | **+$31.03** |
| New Balance | $4,446.94 |
| Past Due Amount | $0.00 |

| | |
|---|---|
| Credit Limit | $5,000.00 |
| Available Credit | $553.00 |
| Amount Over Credit Limit | $0.00 |
| Statement Closing Date | 08/25/2021 |
| Next Statement Closing Date | 09/24/2021 |
| Days in Billing Cycle | 31 |

## Payment Information

| | |
|---|---|
| New Balance | $4,446.94 |
| Minimum Payment Due | $76.06 |
| Payment Due Date | September 21, 2021 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $40.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 18 years | $13,614 |
| $182 | 3 years | $6,548 (Savings=$7,066) |

If you would like information about credit counseling services, call 1-877-337-8187 (TTY: 711).

Your Minimum Payment Due is $76.06. If you paid your non-promotional (revolving) balances and any expiring promotional balances in full on your last statement, you can avoid interest charges on any new non-promotional (revolving) balances and any expiring promotional balances if you pay $1,256.57 by 09/21/21. Otherwise, interest will accrue from your statement closing date until we receive your payment. The "How to Avoid Paying Interest on Purchases" section on page 2 has more information.



You must pay your promotional balance of **$500.00** in full by **01/21/22** to avoid paying deferred interest charges.

You must pay your promotional balance of **$796.00** in full by **02/21/22** to avoid paying deferred interest charges.

You must pay your promotional balance of **$796.00** in full by **02/21/22** to avoid paying deferred interest charges.

You must pay your promotional balance of **$796.00** in full by **02/21/22** to avoid paying deferred interest charges.

You must pay your promotional balance of **$305.43** in full by **07/21/22** to avoid paying deferred interest charges.

Please update your phone number, including cell phone number on the back of the payment coupon.

Marketing offers included in this statement are intended for residents of the United States and its Territories.



SHOP BACK TO CLASS ESSENTIALS. How doers get more done. Shop homedepot.com/backtoclass

---

PLEASE SEE IMPORTANT INFORMATION ON PAGE 2.          Page 1 of 6          This Account is Issued by Citibank, N.A.

Please detach and return lower portion with your payment to ensure proper credit. Retain upper portion for your records.

Account: **** **** **** 8970

## TRANSACTIONS

| Trans Date | Description | | Amount |
|---|---|---|---|
| 07/25 | THE HOME DEPOT SAN ANTONIO  TX | $ | 10.58- |
| | PLUMBING | | |
| 07/25 | *INTEREST* PREV CYCLE PURCHASES | $ | 0.01- |
| 07/26 | THE HOME DEPOT SAN ANTONIO  TX | $ | 796.00 |
| | GENERAL SALES | | |
| | PROMOTIONAL PURCHASE:  To avoid interest charges, please pay the above in full by 02/21/2022.  Monthly payments required. | | |
| 08/03 | THE HOME DEPOT SAN ANTONIO  TX | $ | 796.00 |
| | GENERAL SALES | | |
| | PROMOTIONAL PURCHASE:  To avoid interest charges, please pay the above in full by 02/21/2022.  Monthly payments required. | | |
| 08/11 | THE HOME DEPOT SAN ANTONIO  TX | $ | 796.00 |
| | GENERAL SALES | | |
| | PROMOTIONAL PURCHASE:  To avoid interest charges, please pay the above in full by 02/21/2022.  Monthly payments required. | | |
| 08/18 | DEBIT CARD PAYMENT-THANK YOU          TN | $ | 400.00- |
| 08/19 | THE HOME DEPOT SAN ANTONIO  TX | $ | 163.47 |
| | GENERAL SALES | | |

## FEES

| | TOTAL FEES FOR THIS PERIOD | $ | 0.00 |
|---|---|---|---|

## INTEREST CHARGED

| 08/25 | INTEREST CHARGE ON PURCHASES | $ | 31.03 |
|---|---|---|---|
| | TOTAL INTEREST FOR THIS PERIOD | $ | 31.03 |

| **2021 Totals Year-to-Date** | |
|---|---|
| Total Fees Charged in 2021 | $0.00 |
| Total Interest Charged in 2021 | $60.87 |

## ACTIVITY AND PROMOTIONS DETAIL

| | Original Promotion Trans Amount | Promotion Trans Date | Previous Balance | Payments & Other Credits | Purchases, Fees & Other Debits | Interest Charged | New Balance | Promotion Minimum Payment Due | Deferred Interest Charges | Promotion Expiration Date |
|---|---|---|---|---|---|---|---|---|---|---|
| PURCHASES | | | | | | | | | | |
| Revolving Balance | | | | | | | | | | |
| | - | - | $1,466.51 | $407.50- | $163.47 | $31.03 | $1,253.51 | - | - | - |
| NO INT FOR 6MOS-PMT REQ | | | | | | | | | | |
| | $500.00 | 07/17/21 | $500.00 | - | - | - | $500.00 | - | $14.44 | 01/21/22 |
| NO INT FOR 6MOS-PMT REQ | | | | | | | | | | |
| | $796.00 | 07/26/21 | - | - | $796.00 | - | $796.00 | - | $17.76 | 02/21/22 |
| NO INT FOR 6MOS-PMT REQ | | | | | | | | | | |
| | $796.00 | 08/03/21 | - | - | $796.00 | - | $796.00 | - | $13.14 | 02/21/22 |
| NO INT FOR 6MOS-PMT REQ | | | | | | | | | | |
| | $796.00 | 08/11/21 | - | - | $796.00 | - | $796.00 | - | $8.54 | 02/21/22 |
| -NO INT 12 MOS - PMT REQ | | | | | | | | | | |
| | $308.52 | 06/25/21 | $308.52 | $3.09- | - | - | $305.43 | $3.06 | $13.89 | 07/21/22 |
| TOTAL | | | $2,275.03 | $410.59- | $2,551.47 | $31.03 | $4,446.94 | $3.06 | $67.77 | |

## INTEREST CHARGE CALCULATION

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|---|---|---|---|
| PURCHASES | | | |
| Revolving Balance | 25.99% (M) | $1,405.87 | $31.03 |
| NO INT FOR 6MOS-PMT REQ | 25.99% (M) | - | - |
| NO INT FOR 6MOS-PMT REQ | 25.99% (M) | - | - |
| NO INT FOR 6MOS-PMT REQ | 25.99% (M) | - | - |
| NO INT FOR 6MOS-PMT REQ | 25.99% (M) | - | - |
| -NO INT 12 MOS - PMT REQ | 25.99% (M) | - | - |

# EXHIBIT I



STORE #: 4122    CONTRACT #: 253527

1336 Bristol Pike
Bensalem, PA 19020
(215)633-8291

ABOVE ALL GARAGE DOOR
1839 TOMLINSON RD
PHILADELPHIA, PA 19116
(267) 230-0502

**Rental Center Hours**

**MON** 6A-8P **TUE** 6A-8P **WED** 6A-8P **THU** 6A-8P **FRI** 6A-8P **SAT** 6A-8P **SUN** 7A-8P

| RENTAL DURATION | DUE BACK | FOR ASSISTANCE CALL |
|---|---|---|
| 1 Day | Aug. 08 @ 11:46am | (215)633-8291 |

Register #: 90    Transaction #: 38878    Date: 08/07/21    eDeposit #: 4103210807073464725352717

| RONALD REEVES | Date out:  08/07/2021 - 11:46 AM | Contract Created By: | rm20ml |
|---|---|---|---|
| | Date Due:  08/08/2021 - 11:46 AM | Checked in By: | |
| | Date In: | | |

| Part Number | Item Description | 4 Hours | 1 Day | 2 Days | 1 Week | 4 Weeks | Contract Amt. |
|---|---|---|---|---|---|---|---|
| 0220100553 | **PRO Small Breaker** | $83 | $119 | $238 | $476 | $1,428 | **$119** |
| | To learn how to safely operate your rental equipment, visit: https://smrtacs.co/2RshRkQ | | | | | | |
| | (1) Ext Cord 10guage 50' (Order QTYs X2 | $0 | $0 | $0 | $0 | $0 | **$0** |

| | | |
|---|---|---|
| | Rental Subtotal | **$119.00** |
| | Damage Protection | **Declined** |
| | Estimated Tax | **$7.14** |
| | **Estimated Total** | **$126.14** |
| | Deposit - PAID | **$ (350.00)** |
| | (DISCOVER ending REDACTED) | |

**TERMS & CONDITIONS**

I agree that no representative of The Home Depot is authorized to make any promise, warranty, or representation to me other than those reflected in writing in the Agreement. I agree to the Terms & Conditions and understand that the Agreement cannot be modified or changed except in writing signed by both parties. With respect to equipment I am renting, I have received the equipment referenced in the Agreement. In the event that I am returning equipment, I acknowledge and agree that I am returning the listed rental equipment, the total charges are correct, and additional charges may apply if the equipment is returned damaged.

1. If I do not return this equipment by the scheduled end date, I agree to a weekly recurring charge of $476.00, until all tools have been returned, or a maximum rental charge of $3,752.81 plus applicable taxes have been recovered. In addition, I understand that misrepresentation or failure to return equipment can lead to prosecution.
2. I have been offered operating manuals on the rental equipment.
3. A cleaning fee of up to $25.00 will be assessed if equipment is not returned clean.

_____    08/07/2021

Signature    Date

# EXHIBIT J



STORE 3303 Bensalem
1336 Bristol Pike
Bensalem, PA 19020
(215)633-8291

**Status: CLOSED**

ABOVE ALL GARAGE DOOR
1839 TOMLINSON RD
PHILADELPHIA, PA 19116
(267) 230-0502

**Rental Center Hours**

**MON** 6A-8P **TUE** 6A-8P **WED** 6A-8P **THU** 6A-8P **FRI** 6A-8P **SAT** 6A-8P **SUN** 7A-8P

| ACTUAL DURATION | CONTRACT TOTAL |
|---|---|
| 1 Week, 5 Days, 4 Hours, 34 Minutes | $1,009.12 |

| | | | | |
|---|---|---|---|---|
| Tenant Name: | Register #: 90 | Transaction #: 38878 | Date: 08/07/21 | eDeposit #: 41032108070703464725352717 |
| Charge Name: | Register #: 90 | Transaction #: 51715 | Date: 08/19/21 | eDeposit #: 41032108070703464725352717 |

| | | | |
|---|---|---|---|
| Acct Name: | RONALD REEVES | Date out: 08/07/2021 - 11:46 AM | Contract Created By: rm20ml |
| | | Date Due: 08/08/2021 - 11:46 AM | Checked In By: rld381 |
| | | Date In: 08/19/2021 - 4:20 PM | |

| Tool Description | Charges | Amount |
|---|---|---|
| PRO Small Breaker<br>(02-201-00553)<br>(1) Ext Cord 10guage 50' (Order QTYs X2) | Tool Rental Fee | $952.00 |
| | SubTotal | $952.00 |

| | |
|---|---|
| Rental Subtotal | $952.00 |
| Sales Tax | $57.12 |
| **Contract Total** | **$1,009.12** |
| Deposit - PAID 08/07/21<br>(DISCOVER ending REDACTED) | -$350.00 |
| Revenue Recovery Paid<br>(DISCOVER ending REDACTED) | -$476.00 |
| **Balance Charged**<br>(DISCOVER ending REDACTED) | **$183.12** |
| Outstanding Balance | $0.00 |

**RENTAL FEE CALCULATOR DISCLAIMER**

Home Depot uses a Rental Calculator to insure our customers to get the lowest rates possible for the time they had the tool.

**TERMS & CONDITIONS**

I agree that no representative of The Home Depot is authorized to make any promise, warranty, or representation to me other than those reflected in writing in the Agreement. I agree to the Terms & Conditions and understand that the Agreement cannot be modified or changed except in writing signed by both parties. With respect to equipment I am renting, I have received the equipment referenced in the Agreement. In the event that I am returning equipment, I acknowledge and agree that I am returning the listed rental equipment, the total charges are correct, and additional charges may apply if the equipment is returned damaged.

# EXHIBIT K

LOWE'S TOOL RENTAL AGREEMENT – TERMS AND CONDITIONS

1. TERMS. The Lowe's Tool Rental Agreement ("Agreement" or "Contract") is a binding contract between Lowe's Companies, Inc. ("Lowe's") and the customer identified on Page I, including any of its representatives, agents, officers, employees ("Customer"), or anyone signing this Agreement on Customer's behalf. Lowe's will provide Customer the products, tools, vehicles or large equipment and any accessories or attachments ("Equipment") identified on Page 1 in accordance with the terms of this Agreement. Lowe's will provide the Equipment "as is" and in good working condition during the period of time between the "From" date and "To" date set forth in the Reservation Details (the "Rental Period") and for the rental subtotal price identified on Page 1 ("Rental Price"). Customer agrees to return the Equipment prior to the expiration of the Rental Period, or to pay the additional rental fees described in Section 9. Customer's execution of this Agreement or taking possession of the Equipment shall be deemed acceptance of these terms. Any reference in Customer's purchase order or other Customer document to other terms that purport to control this transaction are void. Customer rents the Equipment from Lowe's pursuant to this Agreement. The Equipment (a) is and shall remain the personal property of Lowe's and (b) shall not be affixed to any other property.

2. PAYMENT. At the commencement of the Rental Period, Customer is responsible for a prepayment ("Prepayment") which will be applied towards the total amount owed at the end of the Rental Period. The Prepayment amount will vary depending on Equipment type as well as other factors, as determined by Lowe's. If the Prepayment amount

1. TÉRMINOS. El acuerdo de Lowe's Tool Rental (Alquiler de herramientas de Lowe's) (el "Acuerdo" o "Contrato") es un contrato vinculante entre Lowe's Companies, Inc. ("Lowe's") y el cliente identificado en la Página 1, incluidos cualquiera de sus representantes, agentes, funcionarios, empleados (el "Cliente"), o cualquiera que firme este Acuerdo en representación del Cliente. Lowe's suministrará al Cliente los productos, herramientas, vehículos, equipos grandes y cualquier accesorio (el "Equipo") identificado en la Página 1 de acuerdo con los términos de este Acuerdo. Lowe's proporcionará el Equipo "como está" y en buenas condiciones de funcionamiento durante el período de tiempo comprendido entre la fecha "Inicial" y la fecha "Final" que se establece en los Detalles de la reserva (el "Período de alquiler") y por el precio subtotal de alquiler identificado en la Página 1 (el "Precio de alquiler"). El Cliente se compromete a devolver el Equipo antes de que termine el Período de alquiler, o deberá pagar las tarifas de alquiler adicionales descritas en la Sección 9. La suscripción de este Acuerdo por parte del Cliente o la toma de posesión del Equipo se considerará como la aceptación de estos términos. Cualquier referencia en la orden de compra o en otro documento del Cliente a otros términos que pretendan regir esta transacción son nulos. El Cliente alquila el Equipo de Lowe's de conformidad con este Acuerdo. El Equipo: (a) es y seguirá siendo propiedad privada de Lowe's y (b) no será incorporado a ninguna otra propiedad.

2. PAGO. Al iniciar el Período de alquiler, el Cliente deberá hacer un pago anticipado (el "Anticipo") que se descontará de la cantidad total adeudada al final del Período de alquiler. El valor del Anticipo dependerá del tipo de Equipo así como de otros factores, según lo determine Lowe's. Si el valor del Anticipo excede la cantidad final adeudada,

exceeds the final amount due, including but not limited to Repair Costs, taxes, and other fees (as applicable), Customers will be refunded the difference. The Prepayment will be made by using a payment card approved by Lowe's ("Renter Card"). Customer authorizes Lowe's to process all amounts due on Renter Card (including, but not limited to, vehicle rental, traffic law violations, road toll fees, and parking citations, and any applicable administrative charge). Customer authorizes Lowe's to charge the Renter Card all amounts shown on this Contract and charges subsequently incurred by Customer, including but not limited to, loss of or damage to the Equipment and extension of the Rental Period. Customer must notify Lowe's in writing of any disputed amounts, including credit card charges, within twenty-five (25) days after the receipt of Lowe's rental contract/invoice, or Customer will be deemed to have irrevocably waived its right to dispute such amounts. Customer will also pay all direct costs of collection, including attorney fees, and interest at the highest rate permitted by law on any past-due amounts.

incluidos, pero sin limitación, los costos de reparación, impuestos y otros cargos (según corresponda), la diferencia se reembolsará al Cliente. El pago del Anticipo se efectuará con una tarjeta de pago aprobada por Lowe's ("Tarjeta del arrendatario"). El Cliente autoriza a Lowe's a cargar todos los montos adeudados a la Tarjeta del arrendatario (incluidos, pero sin limitación: alquiler de vehículos, infracciones de las leyes de tránsito, tarifas de peaje y citaciones por estacionamiento ilegal, y cualquier cargo administrativo que corresponda). El Cliente autoriza a Lowe's a cargar a la Tarjeta del arrendatario todas las cantidades descritas en este Acuerdo y los cargos subsecuentemente incurridos por el Cliente, incluidos, pero sin limitación: pérdidas o daños del Equipo y prórrogas del Periodo de alquiler. El Cliente deberá notificar por escrito a Lowe's cualquier cantidad en disputa, incluidos los cargos a la tarjeta de crédito, a más tardar veinticinco (25) días después de recibir el Acuerdo de alquiler o la factura de Lowe's, de lo contrario se considerará que el Cliente ha renunciado irrevocablemente a su derecho de disputar dichas cantidades. El Cliente también pagará todos los costos directos de cobranza, incluidos los honorarios de los abogados, y los intereses a la tasa más alta permitida por la ley sobre cualquier cantidad vencida.

3. <u>PERMITTED USE.</u> Customer agrees that Lowe's has no control over the manner in which the Equipment is operated during the Rental Period. Customer warrants that:

    (a)    Customer will inspect the Equipment to confirm that it is in good condition, without defects and is suitable for Customer's intended use;

    (b)    Customer has received all information requested regarding the operation of the Equipment;

    (c)    Lowe's is not responsible for providing operator or other training unless requested by Customer;

    (d)    Customer will use the Equipment for its customary purpose, in compliance with all operating and safety instructions and immediately discontinue use of the Equipment if it becomes unsafe or in a state of disrepair;

    (e)    The Equipment will be kept in a secure location;

3. <u>USO PERMITIDO.</u> El Cliente acepta que Lowe's no tiene control sobre la forma como se opera el Equipo durante el Período de alquiler. El Cliente garantiza que:

    (a)    Inspeccionará el Equipo para confirmar que está en buenas condiciones, sin defectos y que es adecuado para el uso previsto por el Cliente;

    (b)    Ha recibido toda la información solicitada sobre el funcionamiento del Equipo;

    (c)    Lowe's no es responsable de proveer entrenamiento de operador ni otro tipo de instrucción, a menos que el Cliente lo solicite;

    (d)    El Cliente utilizará el Equipo para su propósito normal, cumpliendo con todas las instrucciones de funcionamiento y seguridad, y suspenderá inmediatamente el uso del Equipo si éste se vuelve inseguro o se avería;

    (e)    El Equipo se mantendrá en un lugar seguro;

(f)     Customer will maintain possession of the Equipment and will not sublease or sell the Equipment or assign this Agreement;

(g)     Customer will keep the Equipment free and clear of all liens, charges and encumbrances;

(h)     Customer will use the Equipment in compliance with all applicable laws and regulations;

(i)     Customer will not alter or cover up any decal or insignia on the Equipment or remove any operational or safety instructions;

(j)     Customer will not aid in the vandalism or theft of the Equipment;

(k)     Customer will not rent the Equipment upon the basis of false or misleading information;

(l)     Customer will not operate the Equipment while intoxicated or under the influence of any substance that impairs Customer's ability;

(m)    Customer will not use the Equipment in a negligent, illegal, unauthorized or abusive manner, or in any publication (including digital);

(n)     Customer will only allow the use of the Equipment by authorized individuals that Customer directly or indirectly allows to use the Equipment, who are properly trained to use the Equipment and are not under the influence of any drugs, alcohol, substances or otherwise impaired;

(o)     Customer will not remove, operate, or utilize the Equipment outside of the United States;

(p)     For tools and large equipment, Customer will maintain proper fuel, oil, or lubrication levels and will perform routine maintenance and inspections on the tool and large equipment, including inspections on leaks, tires or tracks, cooling systems, water batteries, cutting edges, and cleaning in accordance with the manufacturer's specifications.

(q)     Customer agrees to inspect all hitches, bolts, safety chains, hauling tongues and other devices and materials used to connect the Equipment to any towing vehicle.    Customer acknowledges Lowe's is not responsible for any damage to any towing vehicle caused by detachable hitches or mirrors.

(f)     El Cliente mantendrá el Equipo en su posesión y no subarrendará o venderá el Equipo ni cederá este Acuerdo;

(g)     El Cliente mantendrá el Equipo sin cargas, gravámenes o limitaciones;

(h)     El Cliente usará el Equipo en cumplimiento de todas las leyes y reglamentos correspondientes;

(i)     El Cliente no alterará ni cubrirá ninguna etiqueta o insignia del Equipo, ni quitará ninguna instrucción operativa o de seguridad;

(j)     El Cliente no será cómplice de vandalismo o robo del Equipo;

(k)     El Cliente no alquilará el Equipo suministrando información falsa o engañosa;

(l)     El Cliente no operará el Equipo en estado de embriaguez o bajo la influencia de cualquier sustancia que afecte su capacidad;

(m)    El Cliente no utilizará el Equipo de forma negligente, ilegal, no autorizada o abusiva, ni para publicación alguna (incluidas publicaciones digitales);

(n)     El Cliente solo permitirá el uso del Equipo por parte de personas autorizadas que el Cliente autorice directa o indirectamente a utilizar el Equipo, que estén debidamente capacitadas para utilizarlo y que no estén bajo la influencia de drogas, alcohol, sustancias o cualquier otro tipo de impedimento;

(o)     El Cliente no retirará, operará ni utilizará el Equipo fuera de los Estados Unidos;

(p)     En el caso de herramientas y equipos grandes, el Cliente mantendrá los niveles adecuados de combustible, aceite o lubricantes y realizará el mantenimiento y las inspecciones de rutina de la herramienta y el equipo grande, incluidas las inspecciones de fugas, neumáticos, orugas, sistemas de refrigeración, baterías de agua, bordes de corte y limpieza de acuerdo con las especificaciones del fabricante.

(q)     El Cliente se compromete a inspeccionar todos los enganches, pernos, cadenas de seguridad, lengüetas de arrastre y otros dispositivos y materiales utilizados para conectar el Equipo a un vehículo de remolque.    El Cliente reconoce que Lowe's no es responsable de ningún daño a un vehículo de remolque causado por los enganches desmontables o espejos.

(r)   IN CALIFORNIA ONLY: If any of the Equipment is power operated or power-driven excavating or boring equipment, it is the sole responsibility of Customer to follow the requirements of the regional notification center law pursuant to Article 2 (commencing with Section 4216) of Chapter 3.1 of Division 5 of Title 1 of the Government Code. By agreeing to this Rental Agreement, Customer accepts all liabilities and responsibilities contained in the California regional notification center law.

(r)   SOLO EN CALIFORNIA: Si alguno de los Equipos es un equipo de excavación o perforación motorizado o de accionamiento eléctrico, es responsabilidad exclusiva del Cliente seguir los requisitos de la ley del Centro de Notificación Regional de conformidad con el Artículo 2 (comenzando con la Sección 4216) del Capítulo 3.1 de la División 5 del Título 1 del Código de Gobierno. Al aceptar este Contrato de alquiler, el Cliente acepta todas las responsabilidades y obligaciones contenidas en la ley del Centro de Notificación Regional de California.

4.   EQUIPMENT RETURN.   On or before the return date specified in the Agreement and during normal business hours, Customer will return the Equipment to the Lowe's location where the Equipment was rented in the same condition as when rented. Moreover, if the Equipment is not returned as specified in this Section, including a return to a different Lowe's location, a cleaning charge or a rate change may apply (in addition to any remedies set forth in Section 9 below). If the Equipment is not returned at the expiration of the Rental Period or if Lowe's determines that the Equipment is no longer in Customer's possession, Customer will be deemed unlawfully in possession of the Equipment, and Lowe's may, among other remedies, seek the issuance of a warrant for the arrest of Customer or any other person in possession of the Equipment.

4.   DEVOLUCIÓN DEL EQUIPO.   En la fecha de devolución especificada en el Acuerdo, o antes, y durante el horas laborales normales, el Cliente devolverá el Equipo en las instalaciones de Lowe's donde fue alquilado y en las mismas condiciones que cuando lo alquiló. Además, si el Equipo no se devuelve como se especifica en esta Sección, incluido devolverlo a un lugar diferente de Lowe's, se podrá aplicar un cargo por limpieza o un cambio de tarifa (además de las reparaciones establecidas en la Sección 9 a continuación). Si el Equipo no es devuelto al término del Periodo de alquiler, o si Lowe's determina que el Equipo ya no está en posesión del Cliente, se considerará que el Cliente tiene posesión ilegal del Equipo, y Lowe's puede, entre otras reparaciones, buscar la emisión de una orden de arresto del Cliente o de cualquier otra persona que tenga posesión del Equipo.

(a)   Additional Failure to Return Provisions:

(a)   Disposiciones adicionales por la omisión de devolver el equipo:

| STATE | SPECIAL NOTICES |
|---|---|
| Arizona | Unlawful failure to return the Equipment within 72 hours of expiration of Rental Period is a class I misdemeanor. |
| Florida | Failure to return the Equipment upon expiration of the Rental Period and failure to pay all amounts due (including costs for damage to the property or equipment) are evidence of abandonment or refusal to redeliver the Equipment, punishable in accordance with section 812.155, Florida Statutes. |

| ESTADO | AVISOS ESPECIALES |
|---|---|
| Arizona | No devolver el Equipo dentro de las 72 horas del vencimiento del Período de alquiler es un delito menor de clase I. |
| Florida | No devolver el Equipo al término del Período de alquiler y no pagar todas las sumas adeudadas (incluidos los gastos por daños a la propiedad o al Equipo) es prueba de abandono o negativa a devolver el Equipo, lo que se castiga de conformidad con el artículo 812.155 de los Estatutos de la Florida. |

**Telematics.**  The Equipment may be equipped with a telematics device that enables Lowe's or its fleet management provider to monitor the use and location of the Equipment.  The telematics device is used to collect the Equipment's location (determined by GPS systems), fuel consumption, mileage, and systems status information. Lowe's may use the information for various purposes, including, but not limited to: (i) locating lost or stolen Equipment; (ii) analyzing and improving Lowe's rental program; (iii) enforcing the terms of this Agreement; or (iv) providing Customer with support, assistance, or services.  Lowe's may share information collected with companies performing services for Lowe's, and as deemed necessary Lowe's to comply with legal process or a request from a governmental entity, and to protect Lowe's rights and property.

**Investigations.**  All Customers will promptly complete incident reports, deliver to Lowe's a copy of all related documents, and fully cooperate with Lowe's investigation of any vandalism, theft, accident, claim or lawsuit involving the Equipment. This obligation to cooperate does not create a duty of defense by Lowe's.

**Fuel.**  On select equipment, Customer will be required to return the Equipment with the same level of fuel that the Equipment contained when rented ("Original Fuel Level").  Equipment returned with less than the Original Fuel Level will be subject to a Refueling Service Charge of $15.  Customer acknowledges that the Refueling Service Charge is not a retail sale of fuel. Customer may avoid the Refueling Service Charge if Customer returns the Equipment with a full tank of fuel. The first page of this Agreement will indicate whether the Equipment is subject to the Refueling Service Charge.

**Telemática.**  El Equipo puede estar equipado con un dispositivo telemático que permite a Lowe's o a su proveedor de administración de flotas monitorear el uso y la ubicación del Equipo. El dispositivo telemático se utiliza para recopilar la información de la ubicación del Equipo (determinada por sistemas GPS), el consumo de combustible, el kilometraje y la información sobre el estado de los sistemas. Lowe's puede utilizar la información para varios propósitos, lo que incluye, pero sin limitación: (i) localizar el Equipo perdido o robado; (ii) analizar y mejorar el programa de alquiler de Lowe's; (iii) hacer cumplir los términos de este Acuerdo; o (iv) proporcionar al Cliente apoyo, asistencia o servicios.  Lowe's puede compartir la información recolectada con compañías que prestan servicios a Lowe's, y como lo considere necesario Lowe's para cumplir con un proceso legal o una solicitud de una entidad gubernamental, y para proteger los derechos y la propiedad de Lowe's.

**Investigaciones.**  Todos los Clientes completarán oportunamente los reportes de incidentes, entregarán a Lowe's una copia de todos los documentos relacionados y cooperarán completamente con las investigaciones de Lowe's de cualquier vandalismo, robo, accidente, reclamo o demanda que involucre al Equipo. Esta obligación de cooperar no crea el deber de defensa por parte de Lowe's.

**Combustible.**  Para determinados equipos, el Cliente deberá devolverlos con el mismo nivel de combustible que contenía el Equipo cuando lo alquiló ("Nivel de combustible original"). El Equipo devuelto con menos del Nivel de combustible original estará sujeto a un cargo por Servicio de reabastecimiento de combustible de $15 dólares.  El Cliente reconoce que el cargo por Servicio de reabastecimiento de combustible no es una venta al por menor de combustible.  El Cliente puede evitar el Servicio de reabastecimiento de combustible si el Cliente devuelve el Equipo con el depósito lleno de combustible.  En la primera página de este Acuerdo se indicará si el Equipo está sujeto al cargo por Servicio de reabastecimiento de combustible.

**Fuel – Large Equipment.** Large Equipment (as defined by Lowe's) returned with less than the Original Fuel Level will be subject to a Large Equipment Refueling Service Charge, calculated based on 1/8 intervals and this charge will vary based on the individual equipment's fuel tank capacity. For Equipment with a 10-gallon tank or larger, there will be a $20 charge per 1/8 interval of fuel consumption. For equipment with less than 10-gallons of fuel tank capacity, there will be a $10 charge per 1/8 interval of fuel consumption. Customer will not receive a credit or refund if the Large Equipment is returned with more fuel than when rented.

**Combustible – Equipos grandes.** El equipo grande (como lo define Lowe's) que sea devuelto con menos combustible que al momento del préstamo estará sujeto a un cargo por servicio de reabastecimiento de combustible para equipo grande, calculado en intervalos de 1/8 del tanque y este cargo variará según la capacidad del tanque de combustible del equipo. Para Equipos con un tanque de 10 galones o más grande, habrá un cargo de $20 por intervalo de 1/8 del consumo de combustible. Para equipos con menos de 10 galones de capacidad de tanque de combustible, habrá un cargo de $10 por intervalo de 1/8 del consumo de combustible. El Cliente no recibirá un crédito o reembolso si el Equipo grande se devuelve con más combustible que cuando se alquiló.

5. <u>EQUIPMENT DAMAGE.</u>

(a) <u>Equipment Damage.</u>   Regardless of fault, Customer is responsible for all loss of and damage to Equipment beyond reasonable wear and tear (including loss or damage resulting from normal use, or caused by theft, abuse, misuse, neglect, or intentional acts).   Customer is responsible for Lowe's loss of use and an administrative charge for expenses associated with processing the loss and damage claim (collectively, "Administrative Charges").

(b) <u>Reasonable Wear and Tear.</u>   Reasonable wear and tear of the Equipment shall mean only the normal deterioration of the Equipment caused by ordinary and reasonable use. The following shall not be deemed reasonable wear and tear: (i) damage to wheels, tires, or drive tracks; damage from drops or falls during transport or use equipment; (ii) damage resulting from lack of lubrication, insertion of improper fuel, or maintenance of necessary oil, water and air pressure levels; (iii) except where Lowe's expressly assumes the obligation to service or maintain the Equipment, any damage resulting from lack of servicing or preventative maintenance suggested in the manufacturer's operation and maintenance manual; (iv) damage resulting from any collision, overturning, or improper operation, including overloading or exceeding the rated capacity of the Equipment; (v) damage in the nature of dents, bending, tearing, staining, corrosion or misalignment to or of the Equipment or any part

5. <u>DAÑOS AL EQUIPO.</u>

(a) <u>Daños al equipo.</u>   Independientemente de la culpabilidad, el Cliente es responsable de todas las pérdidas y daños del Equipo más allá del desgaste razonable (incluidas las pérdidas o daños resultantes del uso normal, o causadas por robo, abuso, uso indebido, negligencia o actos intencionales). El Cliente es responsable de la pérdida de uso de Lowe's y de un cargo administrativo por los gastos asociados con el procesamiento de la reclamación por pérdidas y perjuicios (en conjunto, los "Cargos administrativos").

(b) <u>Desgaste razonable.</u>   Por desgaste razonable del Equipo se entenderá únicamente el deterioro normal del Equipo causado por el uso normal y razonable. Lo siguiente no se considerará desgaste razonable: (i) daños a las ruedas, llantas u orugas; daños por caídas durante el transporte o el uso del Equipo; (ii) daños resultantes de la falta de lubricación, la introducción de combustible inadecuado o la falta de conservación de los niveles necesarios de aceite, agua y presión de aire; (iii) excepto en los casos en que Lowe's asuma expresamente la obligación de dar servicio o mantenimiento al Equipo, todos los daños resultantes de la falta de servicio o mantenimiento preventivo sugerido en el manual de operación y mantenimiento del fabricante; (iv) los daños resultantes de cualquier colisión, volcamiento u operación inadecuada, incluida la sobrecarga o sobrepasar la capacidad nominal del Equipo; (v) los daños como abolladuras, doblamientos, desgarros, manchas, corrosión o la desalineación del

thereof; (vi) and any other damage to the Equipment which is not considered ordinary and reasonable in the equipment rental industry.

(c) <u>Damage Protection</u>. Lowe's Damage Protection is a **nonrefundable,** optional service offered by Lowe's that, if and only if selected in advance of the rental, modifies this Agreement to relieve Customer of repair charges, replacement charges, and Administrative Charges if the Equipment is damaged during normal use during the Rental Period ("Damage Protection"). Lowe's Damage Protection is unavailable once Customer leaves Lowe's premises with the rented Equipment. The charge for Damage Protection is 15% of the Rental Price and will appear as a separate line-item on the Agreement and on the invoice. If the Rental Period is extended, 10% will also be applied to the extended portion of the Rental Period at final settlement. Customer must accept or decline the Damage Protection. <u>Damage Protection is not insurance and Lowe's may make a profit on its Damage Protection</u>. The Damage Protection does not protect Customer from liability to Lowe's or others for damage to persons or property other than Equipment damage specifically set forth in this Section. In order for the Damage Protection to apply, the following conditions must be present: (i) Customer must pay 15% of the gross rental charges as the fee for the *Damage Protection* (plus applicable taxes); (ii) Customer must fully comply with the terms of this Agreement; (iii) Customer's account must be current; and (iv) none of the Exclusions apply. Exclusions are Equipment damage or loss resulting from:

(i) floods, wind, storms, earthquakes, Acts of God;

(ii) mysterious disappearance;

(iii) sinking of the Equipment into mud or water;

(iv) submersion of the Equipment in mud or water above the tracks (in the case of track machines) or above the tires (in the case of tire machines);

(v) use of the Equipment in demolition activities;

(vi) tire or track damage;

(vii) any exposure to radioactive, contaminated or other hazardous materials;

(viii) boom damage from overloading of a boom or from a collision when a boom is in motion;

(x) the Equipment's rollover, upset, or drops and falls;

(xi) use or operation of the Equipment by a person

(c) <u>Protección contra daños</u>. La Protección contra daños de Lowe's es un servicio opcional **no reembolsable** ofrecido por Lowe's que, únicamente si es seleccionado antes del alquiler, modifica este Acuerdo para exonerar al Cliente de los cargos por reparación, reemplazo y administrativos si el Equipo se daña durante el uso normal durante el Período de alquiler (la "Protección contra daños"). La Protección contra daños de Lowe's no estará disponible una vez que el Cliente haya salido de las instalaciones de Lowe's con el Equipo alquilado. El cargo por Protección contra daños es el 15% del precio del alquiler y se mostrará como un ítem individual en el Acuerdo y en la factura. Si se prorroga el Período de alquiler, también se aplicará el 10% a la parte prorrogada del Período de alquiler en la liquidación final. El Cliente debe aceptar o rechazar la Protección contra daños. <u>La Protección contra daños no es un seguro y Lowe's puede obtener beneficios de su Protección contra daños</u>. La Protección contra daños no protege al Cliente de responsabilidad hacia Lowe's o terceros por perjuicios a personas o propiedades que no sean daños al Equipo específicamente establecidos en esta sección. Para que se aplique la Protección contra daños, deben darse las siguientes condiciones: (i) El Cliente deberá pagar el 15% de los cargos brutos de alquiler como tarifa de la Protección contra daños (más los impuestos aplicables); (ii) el Cliente debe cumplir plenamente con los términos de este Acuerdo; (iii) la cuenta del Cliente debe estar al día; y (iv) no se aplica ninguna de las exclusiones. Las exclusiones son los daños o pérdidas de Equipo resultantes de:

(i) inundaciones, vientos, tormentas, terremotos, actos de Dios;

(ii) desaparición misteriosa;

(iii) hundimiento del Equipo en barro o agua;

(iv) la inmersión del Equipo en barro o agua por encima de las orugas (en el caso de las máquinas con orugas) o por encima de los neumáticos (en el caso de las máquinas con neumáticos);

(v) utilización del Equipo en actividades de demolición;

(vi) daños en los neumáticos o en las orugas;

(vii) todas las exposiciones a materiales radiactivos,

other than Customer or a qualified employee of Customer, including damages to or loss of equipment loaned to a third party;

(xii) use or operation of the Equipment in violation of any law or ordinance;

(xiii) the failure of Customer to perform the basic maintenance required under the terms of this Agreement;

(xiv) any other failure of Customer to comply with the terms and conditions of this Agreement;

(xv) overloading the rated capacity of equipment;

(xvi) loss or damage caused by failure to keep the equipment in a secure area after the unit is called off rent;

(xvii) the transportation of the equipment;

(xviii) leaving keys in the Equipment while that Equipment is not locked or otherwise secured; or

(xix) loss of or damage to the Equipment caused by theft, abuse, or intentional acts.

Further, Lowe's Damage Protection does not cover damage to retail merchandise purchased separately by Customer, nor does it apply to other fees incurred by Customer.

(d) Repairs.  In the event Customer does not elect to purchase Damage Protection, Customer agrees to pay an estimated "Repair Cost" based on the reasonable cost of repair, inclusive of labor and parts, and the Customer will pay rental on the Equipment at the regular rental rate until all repairs have been completed. The Repair Cost will not exceed the fair market value of the tool or large equipment and applicable fees.  Customer acknowledges and agrees to pay the Repair Cost and authorizes Lowe's to charge the Repair Cost to the Renter Card. All maintenance or repairs must be performed or directed by Lowe's.  Lowe's shall have no obligation if Customer breaches this Contract to stop the Rental Period, commence repairs, or rent other equipment to Customer until Customer or its agent agree to pay for all repair-related charges.  If the Equipment is lost or destroyed, or if the Customer is unable or fails to return the Equipment to Lowe's for any reason whatsoever, Customer will pay Lowe's the then

contaminados o peligrosos de cualquier tipo;

(ix) daños en la pluma por sobrecarga de esta o por colisión cuando la pluma está en movimiento;

(x) volcamiento, alteración o caída del Equipo;

(xi) uso u operación del Equipo por una persona que no sea el Cliente o un empleado calificado del Cliente, incluidos los daños o las pérdidas del Equipo prestado a un tercero;

(xii) uso o funcionamiento del Equipo en violación de cualquier ley u ordenanza;

(xiii) la no realización por parte del Cliente del mantenimiento básico requerido en virtud de los términos de este Acuerdo;

(xiv) cualquier otro incumplimiento del Cliente de los términos y condiciones de este Acuerdo;

(xv) sobrecarga de la capacidad nominal del Equipo;

(xvi) pérdidas o daños causados por no mantener el Equipo en un área segura después de que se cancele el alquiler de la unidad;

(xvii) transporte del Equipo;

(xviii) dejar las llaves en el Equipo mientras no esté cerrado con llave o asegurado de otro modo;

(xix) pérdida o daño del Equipo causado por robo, abuso o actos intencionales.

Además, la Protección contra daños de Lowe's no cubre los daños a la mercancía vendida al detal, comprada por separado por el Cliente, ni aplica a otros cargos incurridos por el Cliente.

(d) Reparaciones.  En caso de que el Cliente elija no comprar la Protección contra daños, el Cliente se compromete a pagar un "Costo de reparación" estimado basado en el costo razonable de la reparación, lo que incluye la mano de obra y las piezas, y el Cliente pagará el alquiler del Equipo a la tarifa de alquiler normal hasta que se hayan completado todas las reparaciones. El costo de la reparación no excederá el valor justo de mercado de la herramienta o el equipo grande y las tarifas aplicables.  El Cliente reconoce y acepta pagar el costo de la reparación y autoriza a Lowe's a cargar el costo de la reparación a la Tarjeta del arrendatario. Todos los mantenimientos o reparaciones deben ser realizados u ordenados por Lowe's. Si el Cliente incumple este contrato, Lowe's no tendrá ninguna obligación de detener el Periodo de alquiler, comenzar las reparaciones o alquilar otro Equipo al Cliente hasta que el Cliente o su agente acepten pagar todos los cargos relacionados con la reparación. Si el Equipo se pierde o destruye, o si el

full replacement cost of the Equipment together with the full rental rate as specified until such Equipment is replaced.

(e) <u>Malfunctioning Equipment</u>.   Should the Equipment be involved in an accident or incident, become unsafe, malfunction or require repair, Customer shall immediately cease using the Equipment and immediately notify Lowe's.  If such condition is the result of normal operation, Lowe's will repair or replace the Equipment with reasonably-similar Equipment in working order, if such replacement Equipment is available.  Lowe's has no obligation to repair or replace Equipment damaged or rendered inoperable by misuse, abuse or neglect. Customer's sole remedy for any failure or defect in Equipment shall be the termination of any rental charges accruing after the time of failure. Customer must return the Equipment to the Store Location by the end of the Rental Period or within 24 hours from the time of defect (whichever comes first) in order to terminate rental charges.

6. <u>LIMITATION OF LIABILITY</u>.   DURING THE RENTAL PERIOD, CUSTOMER ASSUMES ALL RISKS ASSOCIATED WITH AND FULL RESPONSIBILITY FOR THE POSSESSION, CUSTODY AND OPERATION OF THE EQUIPMENT, INCLUDING, BUT NOT LIMITED TO, RENTAL CHARGES, CUSTOMER TRANSPORT, LOADING AND UNLOADING, PROPERTY DAMAGES AND DESTRUCTION, LOSSES, PERSONAL INJURY, AND DEATH. CUSTOMER EXPRESSLY ASSUMES ALL RISK OF DAMAGE TO THE EQUIPMENT UNLESS CUSTOMER PURCHASED DAMAGE PROTECTION, WHICH CONTRACTUALLY MODIFIES CUSTOMER'S LIABILITY, AS PROVIDED IN SECTION 5. IN CONSIDERATION OF THE RENTAL OF EQUIPMENT, CUSTOMER AGREES THAT LOWE'S LIABILITY UNDER THIS CONTRACT, INCLUDING ANY LIABILITY ARISING FROM LOWE'S, LOWE'S ENTITIES, OR ANY THIRD PARTY'S COMPARATIVE, CONCURRENT, CONTRIBUTORY, PASSIVE OR ACTIVE NEGLIGENCE OR THAT ARISES AS A RESULT OF ANY STRICT OR ABSOLUTE LIABILITY, SHALL

Cliente no puede o no logra devolver el Equipo a Lowe's por cualquier razón, el Cliente pagará a Lowe's el costo total de reemplazo del Equipo junto con la tarifa completa del alquiler especificado, hasta que dicho Equipo sea reemplazado.

(e) <u>Equipo en mal estado de funcionamiento</u>.  Si el Equipo se involucra en un accidente o incidente, se vuelve inseguro, falla o requiere reparación, el Cliente deberá detener inmediatamente el uso del Equipo y notificar a Lowe's. Si dicha condición es el resultado de la operación normal, Lowe's reparará o reemplazará el Equipo con un Equipo razonablemente similar en buen estado de funcionamiento, si dicho Equipo de reemplazo está disponible.  Lowe's no tiene la obligación de reparar o reemplazar el Equipo dañado o inutilizado por uso indebido, abuso o negligencia. El único recurso del Cliente ante cualquier avería o defecto del Equipo será la cancelación de los cargos de alquiler que se acumulen después del momento del fallo. El Cliente debe devolver el Equipo a la Tienda antes de que finalice el Periodo de alquiler o en un plazo de 24 horas a partir del momento en que se produzca el defecto (lo que ocurra primero) con el fin de cancelar los gastos de alquiler.

6. <u>LIMITACIÓN DE LA RESPONSABILIDAD</u>. DURANTE EL PERÍODO DE ALQUILER, EL CLIENTE ASUME TODOS LOS RIESGOS ASOCIADOS Y LA PLENA RESPONSABILIDAD POR LA POSESIÓN, LA CUSTODIA Y EL FUNCIONAMIENTO DEL EQUIPO, INCLUIDOS, ENTRE OTROS, LOS GASTOS DE ALQUILER, EL TRANSPORTE DEL CLIENTE, LA CARGA Y LA DESCARGA, LOS DAÑOS Y LA DESTRUCCIÓN DE LA PROPIEDAD, LAS PÉRDIDAS, LAS LESIONES PERSONALES Y LA MUERTE. EL CLIENTE ASUME EXPRESAMENTE TODOS LOS RIESGOS DE DAÑOS AL EQUIPO, A MENOS QUE HAYA ADQUIRIDO UNA PROTECCIÓN CONTRA DAÑOS, LO QUE MODIFICA CONTRACTUALMENTE LA RESPONSABILIDAD DEL CLIENTE, SEGÚN LO DISPUESTO EN LA SECCIÓN 5. EN CONSIDERACIÓN AL ALQUILER DEL EQUIPO, EL CLIENTE ACEPTA QUE LA RESPONSABILIDAD DE LOWE'S DE CONFORMIDAD CON ESTE CONTRATO, INCLUIDA CUALQUIER RESPONSABILIDAD QUE SURJA DE LOWE'S, ENTIDADES DE LOWE'S, O CUALQUIER NEGLIGENCIA COMPARATIVA, CONCURRENTE,

NOT EXCEED THE TOTAL RENTAL CHARGES PAID BY CUSTOMER UNDER THIS CONTRACT.

CONTRIBUTIVA, PASIVA O ACTIVA DE TERCEROS O QUE SURJA COMO RESULTADO DE CUALQUIER RESPONSABILIDAD ESTRICTA O ABSOLUTA, NO EXCEDERÁ EL TOTAL DE LOS CARGOS DE ALQUILER PAGADOS POR EL CLIENTE DE CONFORMIDAD CON ESTE CONTRATO.

7. NO WARRANTIES. LOWE'S DOES NOT DESIGN OR MANUFACTURE THE EQUIPMENT AND IS NOT THE AGENT OF THE MANUFACTURER OR ANY OTHER SUPPLIER OF THE EQUIPMENT. LOWE'S DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT, ITS DURABILITY, CONDITION, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE OR CUSTOMER'S INTENDED USE. CUSTOMER ACKNOWLEDGES ACCEPTANCE OF THE EQUIPMENT "AS IS" AND ON A "WHERE IS" BASIS, WITH "ALL FAULTS" AND WITHOUT ANY RECOURSE WHATSOEVER AGAINST LOWE'S.

7. SIN GARANTÍAS. LOWE'S NO DISEÑA NI FABRICA EL EQUIPO Y NO ES REPRESENTANTE DEL FABRICANTE NI DE NINGÚN OTRO PROVEEDOR DEL EQUIPO. LOWE'S DECLINA TODAS LAS DECLARACIONES Y GARANTÍAS, EXPRESAS O IMPLÍCITAS, CON RESPECTO AL EQUIPO, SU DURABILIDAD, CONDICIÓN, COMERCIABILIDAD O IDONEIDAD PARA CUALQUIER PROPÓSITO EN PARTICULAR O USO PREVISTO POR EL CLIENTE. EL CLIENTE RECONOCE LA ACEPTACIÓN DEL EQUIPO "COMO ESTÁ" Y SOBRE LA BASE DE "DÓNDE ESTÁ", CON "TODAS LAS FALLAS" Y SIN NINGÚN RECURSO EN CONTRA DE LOWE'S.

8. INDEMNIFICATION. TO THE FULLEST EXTENT PERMITTED BY LAW, CUSTOMER AGREES TO INDEMNIFY, DEFEND (WITH COUNSEL APPROVED BY LOWE'S), AND HOLD LOWE'S, AND ANY OF ITS RESPECTIVE OFFICERS, AGENTS, SERVANTS, OR EMPLOYEES, AND AFFILIATES, PARENTS AND SUBSIDIARIES ("INDEMNITEES"), HARMLESS FROM AND AGAINST ANY AND ALL LIABILITY, CLAIMS, LOSS, DAMAGE OR COSTS (INCLUDING, BUT NOT LIMITED TO, ATTORNEYS' FEES, LOSS OF PROFIT, LEGAL OR REGULATORY VIOLATIONS OR CITATIONS, BUSINESS INTERRUPTION OR OTHER SPECIAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES, DAMAGES RELATING TO PROPERTY DAMAGE OR CONTAMINATION, BODILY INJURY OR DAMAGES RELATING TO WRONGFUL DEATH) ARISING OUT OF OR RELATED TO THE OPERATION, USE, POSSESSION OR RENTAL OF THE EQUIPMENT, WHETHER OR NOT CAUSED IN PART BY THE ACTIVE OR PASSIVE NEGLIGENCE OR OTHER FAULT OF AN INDEMNITEE. THIS INDEMNITY PROVISION ALSO APPLIES TO ANY CLAIMS ASSERTED AGAINST LOWE'S BASED UPON STRICT OR PRODUCT LIABILITY CAUSES OF ACTION. CUSTOMER'S INDEMNITY OBLIGATIONS SHALL BE DIMINISHED BY ANY STATUTORY OR CONSTITUTIONAL LIMITATION OF LIABILITY OR IMMUNITY CUSTOMER

8. INDEMNIZACIÓN. HASTA EL MÁXIMO ALCANCE PERMITIDO POR LA LEY, EL CLIENTE ACUERDA INDEMNIZAR, DEFENDER (CON UN ABOGADO APROBADO POR LOWE'S) Y EXIMIR A LOWE'S, Y A CUALQUIERA DE SUS RESPECTIVOS FUNCIONARIOS, AGENTES, SERVIDORES O EMPLEADOS, Y AFILIADOS, MATRICES Y FILIALES ("INDEMNIZADOS"), DE TODA RESPONSABILIDAD, RECLAMO, PÉRDIDA, PERJUICIO O COSTO (INCLUIDOS, PERO SIN LIMITACIÓN, HONORARIOS DE ABOGADOS, PÉRDIDA DE GANANCIAS, VIOLACIONES O CITACIONES LEGALES O REGLAMENTARIAS, INTERRUPCIÓN DE LA ACTIVIDAD COMERCIAL U OTROS DAÑOS ESPECIALES, CONSECUENTES O PUNITIVOS, PERJUICIOS RELACIONADOS CON DAÑOS A LA PROPIEDAD O CONTAMINACIÓN, LESIONES CORPORALES O PERJUICIOS RELACIONADOS CON MUERTE POR NEGLIGENCIA) QUE SE DERIVEN O ESTÉN RELACIONADOS CON EL FUNCIONAMIENTO, EL USO, LA POSESIÓN O EL ALQUILER DEL EQUIPO, YA SEAN CAUSADOS O NO EN PARTE POR LA NEGLIGENCIA ACTIVA O PASIVA U OTRA FALTA DE UN INDEMNIZADO. ESTA DISPOSICIÓN DE INDEMNIZACIÓN TAMBIÉN SE APLICA A CUALQUIER RECLAMACIÓN QUE SE HAGA CONTRA LOWE'S BASADA EN CAUSAS DE ACCIÓN DE RESPONSABILIDAD ESTRICTA O POR PRODUCTOS DEFECTUOSOS. LAS

ENJOYS FROM SUITS BY ITS OWN EMPLOYEES. CUSTOMER'S INSURER'S POSITION REGARDING INSURANCE COVERAGE FOR THE INDEMNITIES AS ADDITIONAL INSUREDS DOES NOT LIMIT CUSTOMER'S OBLIGATION TO DEFEND AND INDEMNIFY THE INDEMNITIES IN ACCORDANCE WITH THIS PROVISION. CUSTOMER'S INDEMNITY OBLIGATIONS WILL CONTINUE IN FULL FORCE AND EFFECT NOTWITHSTANDING THE EXPIRATION OR EARLY TERMINATION OF THE RENTAL AGREEMENT.

OBLIGACIONES DE INDEMNIZACIÓN DEL CLIENTE SE VERÁN DISMINUIDAS POR CUALQUIER LIMITACIÓN ESTATUTARIA O CONSTITUCIONAL DE LA RESPONSABILIDAD O INMUNIDAD DE QUE GOCE EL CLIENTE FRENTE A LAS DEMANDAS DE SUS PROPIOS EMPLEADOS. LA POSICIÓN DEL ASEGURADOR DEL CLIENTE EN CUANTO A LA COBERTURA DE LAS INDEMNIZACIONES COMO ASEGURADOS ADICIONALES NO LIMITA LA OBLIGACIÓN DEL CLIENTE DE DEFENDER E INDEMNIZAR LAS INDEMNIZACIONES DE ACUERDO CON ESTA DISPOSICIÓN. LAS OBLIGACIONES DE INDEMNIZACIÓN DEL CLIENTE CONTINUARÁN EN PLENO VIGOR Y EFECTO A PESAR DE DEL VENCIMIENTO O LA TERMINACIÓN ANTICIPADA DEL ACUERDO DE ALQUILER.

9. DEFAULT AND REMEDIES.

(a)    Failure to Extend Rental Period. To extend the Rental Period, Customer must obtain Lowe's written approval prior to the expiration of such Rental Period. Should Customer fail to return the Equipment prior to the expiration of the Rental Period or fail to return the Equipment in as good order and condition as when received, Customer will be in default of this Agreement. In addition to any other remedies in this Agreement, if the Equipment is not returned prior to expiration of the Rental Period, Customer will incur additional rental charges in the amount identified on Page 1 on a daily recurring basis ("Additional Rental Fees") until the first to occur of the following: (i) the Equipment is returned; (ii) Lowe's has received funds in the amount of the value of the Equipment based upon the condition of the Equipment at the beginning of the Rental Period ("Present Value"); or (iii) the 30th day after the Rental Period expires.

(b)    Breach of Terms and Conditions. In the event that Lowe's determines Customer has violated any term or condition of this Agreement, Lowe's may take all action necessary to secure either: (i) the return of the Equipment; or (ii) funds equal to the Present Value. In such cases, Customer will reimburse Lowe's for all costs incurred including, without limitation, reasonable attorney's fees. Customer expressly agrees and

9. INCUMPLIMIENTO Y REPARACIONES.

(a)    Omisión de prorrogar el Período de alquiler. Para prorrogar el Período de alquiler, el Cliente debe obtener la aprobación por escrito de Lowe's antes del vencimiento de dicho Período de alquiler. Si el Cliente no devuelve el Equipo antes de terminado el Período de Alquiler o no devuelve el Equipo en el mismo buen estado y condición que lo recibió, el Cliente incurrirá en incumplimiento de este Acuerdo. Además de cualquier otra reparación dispuesta en este Acuerdo, si el Equipo no se devuelve antes del vencimiento del Período de alquiler, el Cliente incurrirá en cargos de alquiler adicionales diarios por el monto indicado en la Página 1 de forma recurrente (las "Tarifas de alquiler adicionales") hasta que ocurra lo primero de lo siguiente: (i) Se devuelva el Equipo; (ii) Lowe's haya recibido fondos por el monto del valor del Equipo sobre la base de las condiciones de este al comienzo del Período de alquiler (el "Valor presente"); o (iii) al trigésimo día después de que expire el Período de alquiler.

(b)    Incumplimiento de los términos y condiciones. En caso de que Lowe's determine que el Cliente ha incumplido cualquier término o condición de este Acuerdo, Lowe's puede tomar todas las acciones necesarias para obtener: (i) la devolución del Equipo; o (ii) fondos equivalentes al Valor presente. En tales casos, el Cliente reembolsará a Lowe's todos los costos incurridos, lo que incluye, pero sin limitación, los honorarios

hereby authorizes Lowe's to charge to the Renter Card, all amounts shown on Page l, and all charges subsequently incurred by Customer under or related to this Agreement, including but not limited to: (A) extension of the Rental Period; (B) any charges incurred in connection with the recovery of the Equipment; (C) any charges incurred for failure to return the Equipment, INCLUDING, WITHOUT LIMITATION, ADDITIONAL RENTAL FEES OR EQUIPMENT REPLACEMENT FEES (less any paid additional rental fees). To the extent required by applicable payment card network rules, Lowe's will obtain Customer's additional authorization to charge Renter Card, if applicable, for any insurance costs related to Equipment loss, theft, or damage during the Rental Period.

(c)    Payments.    At Lowe's discretion, Customer may withdraw authorization to pay the Additional Rental Fees on a weekly recurring payment at any time, provided that other arrangements are made to pay the Additional Rental Fees. Lowe's is authorized to obtain updated card account information from the card issuer.  Customer agrees that a service charge of 1.5% per month, or the maximum rate permitted by law, will be assessed on all delinquent accounts, until paid in full.    Customer is prohibited to use any Lowe's credit line to pay for delinquent or past due accounts and any future rentals will be postponed until Customer's account is paid in full.  If Customer's payment towards the account is returned, denied, or otherwise unable to be processed, the balance due may be sent to a 3rd party collection agency on the 31st day after the expiration of the Rental Period.

(d)    No Notice.  CUSTOMER HEREBY AGREES THAT CUSTOMER IS NOT ENTITLED TO NOTICE OF DEFAULT OR NOTICE OF ANY ACTION OF ENFORCEMENT BY LOWE'S OTHER THAN

razonables de los abogados.  El Cliente acuerda expresamente, y por este medio autoriza a Lowe's a cargar a la Tarjeta del arrendatario todas las cantidades mostradas en la Página l, y todos los cargos subsecuentes incurridos por el Cliente de conformidad o relacionados con este Acuerdo, incluyendo pero sin limitación: (A) la prórroga del Período de alquiler; (B) cualquier cargo incurrido en relación con la recuperación del Equipo; (C) cualquier cargo incurrido por no haber devuelto el Equipo, incluidos, PERO SIN LIMITACIÓN, LOS GASTOS DE ALQUILER ADICIONALES O LOS GASTOS DE SUSTITUCIÓN DEL EQUIPO (menos las tarifas de alquiler adicionales pagadas). En la medida que lo exijan las reglas aplicables de la red de tarjetas de pago, Lowe's obtendrá autorización adicional del Cliente para cargar a la Tarjeta del arrendatario, si corresponde, cualquier costo de seguro relacionado con la pérdida, robo o daño del Equipo durante el período de arrendamiento.

(c)    Pagos.    A discreción de Lowe's, en cualquier momento el Cliente puede rescindir su autorización para pagar las Tarifas de alquiler adicionales mediante un pago semanal recurrente, siempre y cuando se hagan otros arreglos para pagar dichas Tarifas de alquiler adicionales. Lowe's está autorizada para solicitar al emisor de la tarjeta información actualizada de la cuenta.  El Cliente acuerda que un cargo por servicio del 1.5% mensual, o a la tasa máxima permitida por la ley, será cargado a todas las cuentas morosas, hasta que sean pagadas en su totalidad.  El Cliente tiene prohibido usar cualquier línea de crédito de Lowe's para pagar cuentas morosas o atrasadas y cualquier alquiler futuro será pospuesto hasta que la cuenta del Cliente sea pagada en su totalidad. Si el pago del Cliente a la cuenta es devuelto, negado o no puede ser procesado por cualquier motivo, el saldo adeudado puede ser enviado a una agencia de cobro de terceros el día 31 después del vencimiento del Período de alquiler.

(d)    Sin aviso.  EL CLIENTE POR LA PRESENTE ACEPTA QUE NO TIENE DERECHO A RECIBIR UNA NOTIFICACIÓN DE INCUMPLIMIENTO O UNA NOTIFICACIÓN DE CUALQUIER ACCIÓN

WHAT IS EXPRESSLY PROVIDED FOR UNDER THIS AGREEMENT. Should Lowe's fail to meet any of its obligations under this Agreement, Customer's only remedy is repair or replacement of the Equipment or a rental charge adjustment at Lowe's sole discretion.

10. NOTICES. Lowe's may elect to send any notices to Customer by any means determined by Lowe's. In particular, if Customer has provided Lowe's with an email address, Lowe's may send notices to Customer by email and such email notice by Lowe's will be valid notices for purposes of this Agreement.

11. CUSTOMER'S INDEPENDENT STATUS. The relationship between the Parties under the Agreement is that of independent contractors. Customer is not the agent or authorized representative of Lowe's for any purpose.

12. GOVERNING LAW. This Agreement, including any related tort claims, will be construed in accordance with the laws of the State of North Carolina.

13. SEVERABILITY. If any provision of the Agreement is held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If any court finds that any provision of this Agreement is invalid or unenforceable, but by limiting such provision it would be valid and enforceable, then such provision will be deemed to be written, construed, and enforce as so limited.

14. ENTIRE AGREEMENT. This Agreement represents the entire agreement between Lowe's and Customer. This Agreement may not be amended or modified except in writing signed by both parties. This Agreement supersedes any prior written or oral agreements between the parties.

15. DISPUTE RESOLUTION.
    a) Mediation. All disputes, other than Customer's failure to pay, arising under or related to this Contract that cannot be resolved through negotiations between the

DE EJECUCIÓN POR PARTE DE LOWE'S QUE NO ESTÉ EXPRESAMENTE PREVISTA EN EL PRESENTE ACUERDO. En caso de que Lowe's no cumpla con alguna de sus obligaciones de conformidad con este Acuerdo, la única reparación del Cliente es la reparación o reemplazo del Equipo o un ajuste del cargo de alquiler a la entera discreción de Lowe's.

10. NOTICIAS. Lowe's puede elegir enviar avisos al Cliente por el medio que Lowe's determine. En particular, si el Cliente ha proporcionado a Lowe's una dirección de correo electrónico, Lowe's puede enviar notificaciones al Cliente por correo electrónico y dicha notificación por parte de Lowe's será válida para los propósitos de este Acuerdo.

11. ESTADO DE INDEPENDENCIA DEL CLIENTE. La relación entre las Partes en virtud de este Acuerdo es la de contratistas independientes. El Cliente no es agente o representante autorizado de Lowe's para ningún propósito.

12. JURISDICCIÓN LEGAL. Este acuerdo, incluyendo cualquier reclamo de agravio relacionado, será interpretado de acuerdo con las leyes del Estado de Carolina del Norte.

13. DIVISIBILIDAD. Si alguna de las disposiciones del Acuerdo se considera inválida o imposible de hacer cumplir por cualquier motivo, las demás disposiciones seguirán siendo válidas y aplicables. Si un tribunal considera que alguna disposición del presente Acuerdo es inválida o imposible de hacer cumplir, pero que al limitar dicha disposición sería válida y aplicable, entonces dicha disposición se considerará escrita, interpretada y aplicable tal como se limite.

14. ACUERDO COMPLETO. Este acuerdo representa el acuerdo completo entre Lowe's y el Cliente. El presente Acuerdo no podrá enmendarse ni modificarse, salvo por escrito y con la firma de ambas partes. El presente Acuerdo sustituye a cualquier otro acuerdo previo, escrito u oral, entre las partes.

15. RESOLUCIÓN DE DISCREPANCIAS.
    a) Mediación. Todas las disputas que no sean la falta de pago del Cliente, que surjan de este Contrato o estén relacionadas con él y que no puedan resolverse a través de

Parties shall, as a condition precedent to any arbitration or court proceeding, be submitted to non-binding mediation according to this Section. The mediation shall take place in Charlotte, North Carolina or such other mutually agreeable location. Notwithstanding the foregoing, either Party may seek and obtain an injunctive relief from a court to preserve the status quo with respect to any matter pending conclusion of the mediation, but no such application to a court of law or equity shall in any way be permitted to stay or otherwise impede the progress of the mediation. Either Party may request arbitration or a proceeding in small claims court, as applicable, if your dispute cannot be resolved by mediation. Any statute of limitations will be tolled while the Parties engage in the mediation process described in this Section. This Section shall not apply to Customer's obligations of indemnification under the "Indemnification" Section.

b) <u>Arbitration.</u> Except as provided in this Section, the exclusive means of resolving all disputes related to this Contract is through binding arbitration administered by the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules. Binding arbitration means that Lowe's and Customer both waive: (1) the right to a jury trial; (2) the right to bring an action in any court (with the exception of the right to seek injunctive relief as set forth above); and (3) the right to seek relief in any other forum or from any other agency. **By entering into this Contract, you agree to give up your right to a trial in court except for certain small claims as described below.** This Section shall be broadly interpreted to encompass all disputes or claims arising out of or relating to this Contract. Any dispute or claim made by you against Lowe's or against any of Lowe's subsidiary, parent or affiliated companies arising out of or related to this Contract, whether based on

negociaciones entre las Partes, como condición previa a cualquier arbitraje o procedimiento judicial, se someterán a mediación no vinculante de acuerdo con esta Sección. La mediación tendrá lugar en Charlotte, Carolina del Norte o en cualquier otro lugar de mutuo acuerdo. Sin perjuicio de lo anterior, cualquiera de las Partes podrá solicitar y obtener una medida cautelar de un tribunal para preservar el statu quo con respecto a cualquier asunto pendiente de conclusión de la mediación, pero dicha solicitud a un tribunal de justicia o equidad no se permitirá de ninguna manera para suspender o impedir de otro modo el progreso de la mediación. Cualquiera de las Partes puede solicitar un arbitraje o un procedimiento en un tribunal de reclamos menores, según corresponda, si su disputa no puede resolverse mediante mediación. Cualquier estatuto de limitaciones se interrumpirá mientras las Partes participen en el proceso de mediación descrito en esta Sección. Esta Sección no se aplicará a las obligaciones de indemnización del Cliente en virtud de la Sección "Indemnización".

b) <u>Arbitraje.</u> Excepto por lo dispuesto en esta Sección, el medio exclusivo para resolver todas las disputas relacionadas con este Contrato es a través del arbitraje vinculante administrado por la Asociación Estadounidense de Arbitraje ("AAA") de acuerdo con las reglas de arbitraje comercial. El arbitraje vinculante significa que Lowe's y el Cliente renuncian a: (1) el derecho a un juicio con jurado; (2) el derecho a iniciar una acción en cualquier tribunal (con la excepción del derecho a buscar medidas cautelares como se establece anteriormente); y (3) el derecho a buscar reparación en cualquier otro foro o de cualquier otra agencia. **Al celebrar este Contrato, acepta renunciar a su derecho a un juicio en un tribunal, excepto en el caso de ciertos reclamos menores, como se describe a continuación.** Esta Sección se interpretará en sentido amplio para abarcar todas las disputas o reclamaciones que surjan de este Contrato o se relacionen con él. Cualquier disputa o reclamo realizado por usted contra

contract, statute, tort, fraud, misrepresentation, or any other legal theory, will be resolved by binding arbitration, except that either party may elect to have such claims heard in small claims court if the claims qualify for hearing by such court. Only a court of competent jurisdiction may interpret the arbitration agreement set forth in this Section and resolve challenges to its validity and enforceability. The arbitrator shall have no authority to make such determinations. With the exception of this Section, only the arbitrator shall have authority to interpret, enforce and adjudicate the remaining provisions of this Contract (as well as any other disputes). The AAA rules governing arbitration are available at http://www.adr.org. Lowe's will also provide Customer with a paper copy of the AAA rules on request. The Parties shall cooperate in good faith to select one arbitrator. Each arbitration will be exclusively between Customer and Lowe's. Neither Party may join, or consolidate a dispute with, any arbitration commenced by a nonparty. Each arbitration will take place in Charlotte, North Carolina or such other mutually agreeable location. Any arbitration demand must be signed by the claimant and must include a description of the claim; information about the specific transaction at issue; and a description of the relief sought. Unless otherwise prohibited by law, each Party shall be responsible for its own filing fees and will share the fees and expenses of the arbitrator equally. Where fee and expense sharing is prohibited by law, Lowe's will pay all filing fees and arbitrator fees and expenses in accordance with applicable Law. In the event the claim brought is frivolous, unreasonable, or without foundation, or claimant continues ot prosecute a claim after the claim becomes frivolous, unreasonable, or without foundation, claimant will be required to reimburse respondent for its cost, expenses, and reasonable attorneys' fees, amounts paid in the investigation, defense, and/or settlement of such claims, and all other amounts allowed by law.

Lowe's o contra cualquiera de las compañías subsidiarias, matrices o afiliadas de Lowe's que surja de este Contrato o esté relacionado con él, ya sea que se base en un contrato, estatuto, agravio, fraude, tergiversación o cualquier otra teoría legal, será resuelta mediante arbitraje vinculante, excepto que cualquiera de las partes puede optar por que dichos reclamos se escuchen en un tribunal de reclamos menores si los reclamos califican para una audiencia en dicho tribunal. Únicamente un tribunal de jurisdicción competente podrá interpretar el acuerdo de arbitraje establecido en esta Sección y resolver las impugnaciones a su validez y exigibilidad. El árbitro no tendrá autoridad para tomar tales determinaciones. Con la excepción de esta Sección, solo el árbitro tendrá autoridad para interpretar, hacer cumplir y adjudicar las disposiciones restantes de este Contrato (así como cualquier otra disputa). Las reglas de la AAA que rigen el arbitraje están disponibles en http://www.adr.org. Lowe's también proporcionará al Cliente una copia en papel de las reglas de AAA si así lo solicita. Las Partes cooperarán de buena fe para seleccionar un árbitro. Cada arbitraje será exclusivamente entre el Cliente y Lowe's. Ninguna de las Partes puede unirse o consolidar una disputa con cualquier arbitraje iniciado por un tercero. El arbitraje tendrá lugar en Charlotte, Carolina del Norte o en cualquier otro lugar de mutuo acuerdo. Cualquier demanda de arbitraje debe estar firmada por el demandante y debe incluir una descripción del reclamo; información sobre la transacción específica en cuestión; y una descripción de la reparación solicitada. A menos que la ley lo prohíba, cada Parte será responsable de sus propios honorarios de presentación y compartirá los honorarios y gastos del árbitro por igual. Cuando la ley prohíba compartir tarifas y gastos, Lowe's pagará todas las tarifas de presentación y las tarifas y gastos del árbitro de acuerdo con la ley aplicable. En caso de que el reclamo presentado sea frívolo, irrazonable o sin fundamento, o el reclamante continúe sin procesar un reclamo después de que el reclamo se vuelva frívolo, irrazonable o sin fundamento, el reclamante deberá reembolsar al demandado por su costo, gastos y abogados razonables, honorarios, montos pagados en la investigación, defensa

c)  <u>Class and Representative Action Waiver.</u> To the extent permissible by Law,

    (a)  there shall be no right or authority for any dispute to be arbitrated as a class action or collective action (**this means that all disputes between Customer and Lowe's shall proceed in arbitration solely on an individual basis, and that the arbitrator's authority to resolve any dispute will be limited to claims between Customer and Lowe's alone**); and

    (b)  there shall be no right or authority for any dispute to be arbitrated as a representative action or a private attorney general action, including but not limited to claims brought pursuant to the Private Attorney General Act of 2004, Cal. Lab. Code § 2698, et. seq.

d)  <u>Forum Selection.</u>  If the mandatory arbitration provision in this Section is held to have been waived or to be unenforceable, then the courts in Charlotte, North Carolina will have exclusive jurisdiction over the applicable disputes, and each Party hereby consents to the jurisdiction of those courts.

e)  <u>Choice of Law.</u>  The arbitration agreement set forth in this Section, including the interpretation and enforceability thereof, shall be governed by the Federal Arbitration Act ("FAA").  If for any reason the FAA does not apply, the arbitration agreement contained in this Section 15 shall be governed by the laws of North Carolina without giving effect to any choice-of-law rules or borrowing statutes that may require application of another jurisdiction's Laws.  For all other parts of this Contract, North Carolina law shall apply.  The United Nations Convention on Contracts for the International Sale of Goods does not apply to this Contract or the transactions executed under this Contract.

y/o liquidación de dichos reclamos y todos los demás montos permitidos por la ley.

c)  <u>Renuncia a la acción de clase y representante.</u> En la medida en que lo permita la ley,

    (a)  no habrá derecho o autoridad para que cualquier disputa sea arbitrada como una acción de clase o acción colectiva (**esto significa que para todas las disputas entre el Cliente y Lowe's procederá el arbitraje únicamente sobre una base individual, y que la autoridad del árbitro para resolver cualquier disputa se limitará a las reclamaciones entre el Cliente y Lowe's solamente**); y

    (b)  no habrá ningún derecho o autoridad para que las controversias sean arbitradas como acciones representativas o acciones de procurador general privado, incluidas, pero sin limitación, las reclamaciones presentadas de conformidad con la Ley del Procurador General Privado de 2004, Cal. Lab. Código § 2698, et. seq.

d)  <u>Elección de jurisdicción.</u>  Si se considera que la disposición de arbitraje obligatorio de esta Sección ha sido exonerada o no es aplicable, los tribunales de Charlotte, Carolina del Norte, tendrán la jurisdicción exclusiva sobre las disputas aplicables, y cada una de las Partes acepta por la presente la jurisdicción de esos tribunales.

e)  <u>Elección de ley.</u>  El acuerdo de arbitraje establecido en esta sección, incluida la interpretación y la aplicación de este, se regirá por la Ley Federal de Arbitraje ("FAA").  Si por alguna razón la FAA no aplica, el acuerdo de arbitraje contenido en esta Sección 15 se regirá por las leyes de Carolina del Norte sin dar efecto a ninguna regla de elección de ley o estatutos de préstamo que puedan requerir la aplicación de las leyes de otra jurisdicción. Para todas las demás partes de este Contrato, aplicará la ley de Carolina del Norte.  La Convención de las Naciones Unidas sobre los Contratos de Compraventa Internacional de Mercaderías no aplican al presente contrato ni a las transacciones ejecutadas en virtud de este.

f) <u>Severability</u>. If a court of competent jurisdiction finds the Class and Representative Action Waiver Section unenforceable for any reason, then that section shall be severed. Any claims covered by any unenforceable waiver provisions must be litigated in a court of competent jurisdiction, but the remainder of the Contract shall be binding and enforceable. No arbitrator shall have any authority to adjudicate any class, collective, or representative action.

16. <u>MISCELLANEOUS</u>.

(a)    <u>California Proposition 65 Warning Notification Requirement</u>. Customer acknowledges that Equipment can expose Customer to chemicals including toluene, which arc known to the State of California to cause birth defects or other reproductive harm. For more information go to www.P65Warnings.ca.gov.

(b) <u>Compliance With Export and Import Laws</u>. Removal of the Equipment from the United States ("U.S.") is prohibited under this Contract. If Customer desires or causes the transport and/or operation of the Equipment outside of the U.S., Customer must (a) obtain Lowe's consent prior to taking such action, and (b) execute an amendment to this Contract, which amendment is incorporated herein. If Customer exports or re-exports without complying with the above sentence, Customer agrees that (i) the Equipment is subject to and must comply with all applicable export laws, including but not limited to the Export Administration Regulations; and (ii) Customer is responsible for: (A) determining whether and obtaining if necessary, export or re-export licenses or other authorizations as required prior to exporting or re-exporting the Equipment, (B) obtaining any required documentation necessary for return of the Equipment, and (C) ensuring no unauthorized transfers or diversions of the Equipment occur. Refer to www.bis.doc.gov for information.

17. <u>LANGUAGE</u>. This Agreement is executed in both an English language version and Spanish language version, provided however, that in the event of controversy between such versions, the English version shall prevail.

f) <u>Divisibilidad</u>. Si un tribunal con jurisdicción competente encuentra que la Sección de Renuncia a la acción de clase y representante no es aplicable por cualquier razón, entonces esa sección será eliminada. Todas las reclamaciones amparadas por cualquier disposición de exoneración imposible de hacer cumplir deberán ser litigadas en un tribunal con jurisdicción competente, pero el resto del contrato será vinculante y ejecutable. Ningún árbitro tendrá autoridad para adjudicar una acción colectiva o representativa.

16. <u>DISPOSICIONES VARIAS</u>.

(a) Requisito de <u>notificación de advertencia de la Propuesta 65 de California</u>. El Cliente reconoce que el Equipo puede exponer al Cliente a productos químicos, incluido el tolueno, que el Estado de California reconoce como causante de defectos de nacimiento u otros daños reproductivos. Para obtener más información visite www.P65Warnings.ca.gov.

(b) <u>Cumplimiento de las leyes de exportación e importación</u>. Sacar el Equipo de los Estados Unidos ("EE. UU.") está prohibido en virtud del presente Contrato. Si el Cliente desea o causa el transporte y/o la operación del Equipo por fuera de los Estados Unidos, el Cliente debe (a) obtener el consentimiento de Lowe's antes de tomar dicha acción, y (b) suscribir una enmienda a este Contrato, la cual se incorpora en el presente. Si el Cliente exporta o reexporta sin cumplir el anterior párrafo, el Cliente acepta que (i) el Equipo está sujeto a todas las leyes de exportación aplicables y debe cumplirlas, incluidos, entre otros, los Reglamentos de la Administración de Exportaciones; y (ii) el Cliente es responsable de: (A) determinar si es necesario y obtener, de serlo, las licencias de exportación o reexportación u otras autorizaciones necesarias antes de exportar o reexportar el Equipo, (B) obtener toda la documentación necesaria para la devolución del Equipo, y (C) garantizar que no se produzcan transferencias o desviaciones no autorizadas del Equipo. Consulte www.bis.doc.gov para obtener más información.

17. <u>IDIOMA PREFERIDO</u>. Este Acuerdo se ejecuta tanto en una versión en inglés como en una versión en español, sin embargo, en caso de controversia entre dichas versiones, prevalecerá la versión en inglés.

18. <u>LONG-TERM RENTALS</u>.  The following additional terms apply to Long-Term Rentals:

(a) <u>Approval</u>.  Rental Periods longer than a month must be approved by Lowe's during the reservation process.    Long-Term Rentals shall not exceed 11 months.  If the Equipment is needed longer than 11 months, a new contract must be executed at the expiration of the 11-month due date.

(b) <u>Payment</u>.  Unless otherwise directed by Lowe's, The Customer is responsible for making monthly payments in person at the Lowe's Tool Rental Department.   Such payments are due at the end of each four-week Rental Period.

(c) <u>Equipment Maintenance</u>.  In addition to the Customer's maintenance obligations set forth above, Customer agrees to  make the equipment available at the Customer's location for Lowe's to perform preventative maintenance, on a schedule determined by Lowe's.  Customer acknowledge that the equipment will be unavailable during such maintenance.

(d) <u>Equipment Location</u>.  Throughout the course of the Long-Term Rental, Customer agrees to notify Lowe's before moving the equipment is moved to a different job site address.

(e) <u>Damage Protection</u>:  If selected, payments for Damage Protection must be made with each four-week Rental Period and such Damage Protection will be applied to the upcoming four-week period.

18. <u>ALQUILERES A LARGO PLAZO</u>. Los siguientes términos adicionales se aplican a los alquileres a largo plazo:

(a) <u>Aprobación.</u> Los períodos de alquiler de más de un mes deben ser aprobados por Lowe's durante el proceso de reserva. Los alquileres a largo plazo no podrán exceder los 11 meses. Si el Equipo se necesita por más de 11 meses, se debe ejecutar un nuevo contrato al vencimiento de la fecha de vencimiento de 11 meses.

(b) <u>Pago.</u> A menos que Lowe's indique lo contrario, el Cliente es responsable de realizar los pagos mensuales en persona en el Departamento de alquiler de herramientas de Lowe's. Dichos pagos vencen al final de cada período de alquiler de cuatro semanas.

(c) <u>Mantenimiento de equipos.</u> Además de las obligaciones de mantenimiento del Cliente establecidas anteriormente, el Cliente acepta que el equipo esté disponible en la ubicación del Cliente para que Lowe's realice el mantenimiento preventivo, según un cronograma determinado por Lowe's. El Cliente reconoce que el equipo no estará disponible durante dicho mantenimiento.

(d) <u>Ubicación del equipo.</u> Durante el transcurso del Alquiler a largo plazo, el Cliente acepta notificar a Lowe's antes de trasladar el equipo a una dirección diferente del lugar de trabajo.

(e) <u>Protección contra daños:</u> Si se seleccionan, los pagos de la Protección contra daños deben realizarse con cada Período de alquiler de cuatro semanas y dicha Protección contra daños se aplicará al próximo período de cuatro semanas.