## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DARIN MATHEWS and RONALD REEVES, individually and on behalf of all others similarly situated, | CIVIL ACTION |
| Plaintiffs, | FILE NO. 1:22-cv-02605-ELR |
| v. | JURY TRIAL DEMANDED |
| HOME DEPOT USA, INC., | |
| Defendant. | |

### CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

Darin Mathews and Ronald Reeves ("Plaintiffs"), on behalf of themselves and all others similarly situated, file this Corrected Second Amended Class Action Complaint against Home Depot USA, Inc. ("Home Depot" or "Defendant"), and in support thereof state the following:

### INTRODUCTION

1. Home Depot collects many millions, if not billions, of dollars of revenue annually from its rental program.[1]  A portion of that revenue is made through its

---

[1] ". . . Home Depot Rentals reported $940 million in rental revenue in 2018 and is growing the heavy equipment and moving truck portions of its rental business." Michael Roth, *Home Depot to Grow its Rental Program, CEO Menear Says*,

practices of systematically overcharging customers for late fees they did not incur, overcharging customers for "damage protection" above and beyond the contractual price for "damage protection," and charging customers for damage that is contractually covered by the "damage protection" they purchased. This lawsuit addresses each of these unlawful practices.

## NATURE OF THE CASE

2. This is a nationwide, Texas, and Pennsylvania class action lawsuit filed by Plaintiffs individually, and on behalf of putative classes of similarly situated consumers, who rented tools from Home Depot pursuant to the "form" contract attached as Exhibit A (the "Contract"),[2] and who were overcharged late fees following a rental period extending beyond the original rental period, and/or who elected and were overcharged for "Damage Protection" under the Contract.

3. Home Depot's tool rental Contract is a uniform "form" contract that is materially identical in Home Depot stores throughout all the 50 states in the United States.

---

Rental Equipment Register, May 28, 2019, https://www.rermag.com/rental-news/article/20954736/home-depot-to-grow-its-rental-program-ceo-menear-says.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning given them in the Contract.

4.     The "form" Contract has a choice of law provision, entitled "**GOVERNING LAW**," in which Home Depot has selected Georgia law for all legal issues to be determined under the Contract.

5.     This "form" Contract is a sophisticated financial trap for the ordinary consumer.  Home Depot's corporate policies for employees carrying out the Contract terms are carefully designed by the company to take advantage of unsuspecting consumers.  Pursuant to those policies, Home Depot breaches its own Contract and harms its consumers in the following ways:

6.     **First**, Home Depot breaches the Contract by overcharging consumers who keep their tools longer than the Rental Period by charging excessive late fees prohibited by the Contract terms.

7.     Pursuant to Section 8(a) of the Contract, "if the Equipment is not returned prior to expiration of the Rental Period, Renter will be charged an additional rental fee in the amount identified on Page 1 on a **daily** recurring basis ('Additional Rental Fees')."  Ex. A, § 8(a) (emphasis added).

8.     However, in practice, if a rented tool is returned after the expiration of the Rental Period, Home Depot does not charge the consumer a **daily** rental rate on a recurring basis; instead, and by way of example, if the tool is returned five days late, Home Depot charges the consumer **an entire week** of late fees — that is, the late

fees are imposed on a **weekly** basis, instead of a **daily** basis.  This policy and practice overcharges consumers and violates Section 8(a) of the Contract.

9.    **Second**, Home Depot breaches the Contract by overcharging consumers who elect Damage Protection and then keep their tools longer than the Rental Period.

10.    Under the Contract, if a consumer rents a tool from Home Depot, the consumer can purchase Damage Protection, to cover the cost of repair or replacement if the tool is damaged, for a payment equaling 15% of the Rental Price. *See* Ex. A, § 4(I)(b).  Rental Price is defined in the Contract as "the rental subtotal price identified on Page 1."  *Id*. § 1.

11.    However, if a consumer keeps the tool beyond the Rental Period, Home Depot charges the consumer amounts equal to 15% of the Rental Price **plus an additional 15% of the late fees** charged to the consumer.  The additional charge of 15% of the late fees violates Section 4(I)(b) of the Contract, which provides that the cost of Damage Protection is 15% of the "rental subtotal price identified on Page 1" of the Contract (which does not include 15% of any eventual late fees).  Ex. A, § 4(I)(b).

12.    **Third**, Home Depot's "form" Contract is designed to benefit Home Depot and harm consumers by creating a "heads I win, tails you lose" scenario in the event a consumer purchasing Damage Protection returns a damaged tool.  This scenario

allows Home Depot to deny Damage Protection claims that should be covered under the letter and spirit of the Contract.

13.    Specifically, Home Depot is in breach of the Contract because only tool damage caused by "theft abuse, or intentional acts" is excluded from coverage under the Contract, yet in practice, and pursuant to Home Depot's uniform corporate policies, Damage Protection does not cover any "damage" to tools and instead only covers "normal wear and tear."

14.    **Fourth,** this violation also sounds in promissory fraud because Home Depot's uniform corporate policy regarding Damage Protection demonstrates that it never intended to perform its obligations under the Contract, and instead only intended to cover the cost of "normal wear and tear" to tools, as opposed to "damage," as required by the Contract.  Pursuant to this uniform corporate policy and despite conflicting Contract obligations, Home Depot charges consumers who purchased Damage Protection for **all** damage to tools rented under the Contract.

15.    **Fifth**, and in the alternative to Plaintiff's claim for breach of contract related to coverage under the Damage Protection plan, a unilateral mistake by Home Depot in its drafting of the Contract renders the entirety of the Damage Protection of the Contract meaningless, illusory, and incapable of being enforced by a consumer.  The Contract purports to provide Damage Protection in the event a tool

is damaged during use, however Section 4(I)(b) of the Contract goes on to provide that "Renter expressly acknowledges and agrees that **Renter will be responsible for <u>all</u> loss or damage**." Ex. A, § 4(I)(b) (emphasis added). This clause creates a loophole for Home Depot to avoid providing the Damage Protection purchased by consumers, and which, in effect, "swallows" any coverage extended by the other part of Section 4(I)(b) and makes Damage Protection completely illusory. Accordingly, Plaintiff Mathews brings claims for rescission and return of all for all Damage Protection fees and associated sales taxes paid by members of the Classes, as well as other damages allowed by law.

16.    **Sixth**, Home Depot's nationwide pattern and practice of overcharging consumers who keep their tools longer than the Rental Period by charging excessive late fees prohibited by the Contract terms violates the Pennsylvania Unfair Trade Practices and Consumer Protection Law. The statute prohibits engaging in "unfair or deceptive acts or practices," including, but not limited to, "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *See* 73 Pa. Cons. Stat. §§ 201-2(4). The statute also establishes a private right of action for Pennsylvania consumers who lease goods primarily for personal, family, or household purposes and suffer an ascertainable loss of money as a result of the unlawful practice. *See id.* §§ 201-3, -9.2.

## THE PARTIES

17.    Plaintiff Darin Mathews is a resident of Texas and was a Texas citizen at all times relevant to this lawsuit.

18.    Plaintiff Ronald Reeves is a resident of Pennsylvania and was a Pennsylvania citizen at all times relevant to this lawsuit.

19.    Home Depot is a corporation organized under the laws of Delaware and with a principal place of business in Cobb County, Georgia.

## JURISDICTION AND VENUE

20.    This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) Plaintiffs are members of the putative classes and subclasses relevant to each of them, each of which consists of at least 100 members; (b) Plaintiff Mathews is a Texas citizen; (c) Plaintiff Reeves is a Pennsylvania citizen; (d) Home Depot is a citizen of Delaware and Georgia; (e) the amount in controversy for each of the classes exceeds the sum of $5 million exclusive of interest and costs; and (f) none of the exceptions under § 1332 applies to this claim.

21.    Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district, Defendant's corporate headquarters is located in this district and division, and Defendant is subject to personal jurisdiction in this district and division.

## STATEMENT OF FACTS
### (as to Darin Mathews)

22.     On or about July 17, 2021, at 11:33 a.m., Plaintiff Mathews rented a Drain Camera from the Home Depot store number 0580 Windsor Park, located at 4909 Windsor Hill, San Antonio, Texas (the "Windsor Park Home Depot").

23.     The Drain Camera was due to be rented for four hours (the Rental Period under the Contract), and was due to be returned to the Windsor Park Home Depot that same day, July 17, 2021, at 3:33 p.m.

24.     A Drain Camera is a snake-like device with a camera at one end that allows its user to execute complete inspection of pipes and drains.  A photograph of the Drain Camera rented by Plaintiff Mathews is attached as Exhibit B.

25.     In connection with the rental of the Drain Camera, Plaintiff Mathews and Home Depot entered into the Contract. *See* Ex. A.

26.     The Rental Price of the Drain Camera was $139.00.

27.     In connection with the rental of the Drain Camera, Plaintiff Mathews elected to purchase "Damage Protection" from Home Depot.

28.     The terms of the Damage Protection are set forth in the below excerpt from the Contract:

**I. For Tool and Large Equipment Rentals Only.**

**(a)**    <u>Equipment Damage</u>. Regardless of fault, Renter is responsible for all loss of and damage to tools and large equipment (including loss or damage due to normal use, caused by theft, abuse, misuse, neglect, or intentional acts). Renter is responsible for The Home Depot's loss of use and an administrative charge for expenses associated with processing the loss and damage claim (collectively, "**Administrative Charges**").

**(b)**    <u>Damage Protection</u>. Damage protection is an optional service offered by The Home Depot that, if selected, modifies this Agreement to relieve Renter of repair charges, replacement charges and Administrative Charges if the Equipment is damaged during normal use during the Rental Period ("**Damage Protection**"). In the event Renter elects Damage Protection services, the charge for Damage Protection is 15% of the Rental Price and will appear as a separate line-item on the Agreement and on the invoice. Renter must accept or decline the Damage Protection. <u>Damage Protection is not insurance and The Home Depot may make a profit on its Damage Protection.</u> Damage Protection does not cover loss of or damage to the tools and large equipment caused by theft, abuse, or intentional acts. Renter expressly acknowledges and agrees that Renter will be responsible for all loss or damage.

**(c)**    <u>Repairs</u>. In the event Renter does not elect to purchase Damage Protection, Renter agrees that an estimated "**Repair Cost**" will be charged for tools and large equipment that is returned with damage due to abuse, misuse, neglect, or intentional acts. The Repair Cost will not exceed the fair market value of the tool or large equipment and applicable fees. Renter acknowledges and agrees to pay the Repair Cost and authorizes The Home Depot to charge the Repair Cost to the Renter Card. All maintenance or repairs must be performed by The Home Depot.

29.    Home Depot displays at its stores a pamphlet titled, "Damage Protection Plan" and "The Home Depot Rental."  *See* Exhibit G.

30.    This pamphlet informs consumers: "The Damage Protection Policy for The Home Depot Rental covers tools that are damaged while *in use*."  *Id*. (emphasis in original).

31.    The pamphlet further informs customers:

**What does this mean for customers?**

The Damage Protection Plan is a plan offered to waive possible repair fees that may occur while using the tool during the rental period. While Damage Protection is optional, it is highly recommended to ensure maximum protection when you rent tools and equipment from The Home Depot. It could cover potential gaps in your insurance coverage. The customer is not responsible for the repair cost of damages incurred while the tool or equipment is being used.

For only 15% of the rental price, Damage Protection can protect you against unexpected expenses that could be incurred from damage while using tools and large equipment.

32.     The pamphlet provides consumers the following example of how damage

protection is intended to work for consumers' benefit:

**Example:** Kinked cable on a drain cleaner

| | Without DP | | With DP |
|---|---|---|---|
| Rental Fees | $100 | Rental Fees | $100 |
| Damage Protection | $0 | Damage Protection | $15 |
| Repair Cost | $240 | Repair Cost | $0 |
| Total | $340 | Total | $115 |

**Savings of $225**

33.     The pamphlet says nothing about Home Depot charging consumers an

additional Damage Protection charge of 15% **of late fees** incurred if the tool is kept

longer than the rental period (over and above the initial Damage Protection charge

of 15% of the Rental Price).

34.     The pamphlet says nothing about limitations on the applicability of

Damage Protection based on how the tool is used.  To the contrary, the pamphlet

states, "The customer is not responsible for the repair cost of damages incurred while

the tool or equipment is being used."  Ex. G.

35.     Originally, Plaintiff Mathews was correctly charged $20.85 for Damage

Protection, which was 15% of the Rental Price.

36.     The Rental Price, Damage Protection Charge, and sales taxes on this

transaction totaled $173.04.

37.    Plaintiff Mathews was charged a $500.00 deposit to his Home Depot Account No. XX8970 to cover the Rental Price, Damage Protection, and estimated sales tax.

38.    That same day, July 17, 2021, while operating the Drain Camera under normal conditions and as the Drain Camera was intended to be used, the Drain Camera became stuck in a "cleanout drain" at Plaintiff Mathews' residence.

39.    Shortly thereafter, on the same day, July 17, 2021, Plaintiff Mathews returned to the Windsor Park Home Depot and advised the tool rental department that the Drain Camera had become stuck in his drain.

40.    A Home Depot representative advised Plaintiff Mathews to "twist and pull" the Drain Camera to dislodge it from the drain.

41.    Plaintiff Mathews followed Home Depot's advice, at which point the Drain Camera's signal was lost, and the Drain Camera was damaged.

42.    Plaintiff Mathews reported to Home Depot that he had followed its advice, but that the Drain Camera remained stuck in his drain.

43.    Home Depot advised Plaintiff Mathews that he needed to hire a plumber to remove the Drain Camera from his drain.

44.    On Monday July 19, 2021, and Tuesday July 20, 2021, Plaintiff Mathews hired a professional plumber to come to his residence, demolish masonry and rebar blocking access to the drain, and remove the Drain Camera from the cleanout drain.

45.    When the Drain Camera was removed from the drain, there was damage to the Drain Camera.  A photograph of this damage is attached hereto as Exhibit C.

46.    The Drain Camera was not damaged due to abuse or an intentional act.

47.    Plaintiff Mathews returned the Drain Camera to Home Depot on Tuesday, July 20, 2021 — three days after it was supposed to be returned according to the Rental Period.

48.    Upon returning the Drain Camera to Home Depot, Plaintiff Mathews fully expected the damage to the Drain Camera to be covered by the Damage Protection he had purchased.

49.    To Plaintiff Mathews' complete surprise, he was advised by Jessica Leon, rental manager at the Windsor Park Home Depot, that the Damage Protection which Plaintiff had purchased did not apply because Damage Protection only applies to "wear and tear."

50.    To support Home Depot's position, Jessica Leon then handed Plaintiff Mathews the document attached as Exhibit D, which is the uniform, internal Home Depot corporate policy for applying the terms of the Contract to Damage Protection

claims, and which instructs Home Depot employees that Damage Protection only "covers repairs due to normal wear and tear."

51.   Jessica Leon left the counter for several minutes, and upon her return told Plaintiff she had spoken to the Windsor Park Home Depot store manager Louis Tuttle, who also confirmed to Plaintiff Mathews that Damage Protection only covered "normal wear and tear."

52.   The terms of Home Depot's internal corporate policy conflict with the terms of the Contract because the internal policy, as expressed in written and oral form to Plaintiff Matthews, provides that Damage Protection only covers "normal wear and tear on equipment," Ex. D, whereas Section 4(I)(b) of the Contract states that it covers "damage." Ex. A, § 4(I)(b). The Contract's express scope of coverage is much broader than mere "wear and tear," yet, Home Depot, as a matter of uniform corporate policy, never intended to perform its duties under Section 4(I)(b) of the Contract.

53.   Thereafter, Plaintiff Mathews was informed that, in addition to there being no coverage under the Damage Protection he had purchased, Plaintiff Mathews would also be charged $2,467.01 to offset Home Depot's cost of having the Drain Camera replaced, plus a late fee penalty at the **weekly** rental fee rate of $796.00 (despite the Drain Camera being only three days overdue), and also a new and

additional Damage Protection charge of $45.90.[3]  The sales tax on all of the above

was $232.56.  Thus, the total charges from Home Depot to Plaintiff Mathews were

$3,051.47.

54.    Plaintiff Mathews' total charges of $3,051.47 are shown on the statement

attached as Exhibit E.

55.    Plaintiff Mathews disputed and refused to pay the above charges.

56.    The Contract requires consumers to use a credit card to pay for their tool

rental charges.  *See* Ex. A, § 2.

57.    Despite Plaintiff Mathews' dispute and refusal to pay, Home Depot

charged Plaintiff Mathews' Home Depot Account No. XX8970 the amounts it

claimed to be owed anyway and billed his Home Depot credit card in four

installments over the following three weeks.  *See* Exhibit H (Plaintiff Mathews'

August 2021 Home Depot Credit Card Account No. XX8970 statement).

58.    Plaintiff Mathews then did not receive his Home Depot credit card

statement until more than 25 days after July 20, 2021.

---

[3]  This, despite the fact that the Contract defines Damage Protection only as 15% of the **Rental Price** (which, here, came to $20.85, and for which Plaintiff Mathews had already been charged), not 15% of the Rental Price plus 15% of all late fees eventually imposed **after** Home Depot made the determination that Damage Protection would not cover the repair.

59. Home Depot's website advertises the terms of its tool rental Damage Protection. A copy of that advertisement is attached as Exhibit F. The terms of Home Depot's advertising to consumers (Ex. F) regarding the scope of Damage Protection coverage are inconsistent with the terms of the Contract (Ex. A) and the terms of Home Depot's uniform internal corporate policy (Ex. D) (provided to Plaintiff Mathews by Home Depot employee Jessica Leon).

60. Home Depot's advertised terms make clear that "Customer shall be responsible for all repair or replacement costs **not covered by Damage Protection**." Ex. F (emphasis added).

61. At its tool rental centers Home Depot makes available the pamphlet attached hereto as Exhibit G that describes the terms of its Damage Protection plan. Not only does Exhibit G expressly provide that the cost of Damage Protection is "15% of the rental price" — without any mention of late fees or Additional Rental Fees being added to the Rental Price — but Exhibit G also expressly provides that Damage Protection "covers tools that are damaged while *in use*." Ex. G, 2 (emphasis in original); *see also id.* ("The customer is not responsible for the repair cost of damages incurred while the tool or equipment is being used. For only 15% of the rental price, Damage Protection can protect you against unexpected expenses that could be incurred from damage while using tools and large equipment."). In other

words, Home Depot uses Exhibit G to induce customers to purchase Damage Protection by telling them it will cover "tools that are damaged while *in use*," and not merely those that have experienced "wear and tear."

62.    In the alternative to promissory fraud, Home Depot committed a unilateral mistake in the drafting of Section 4(I)(b) the Contract in that, even after Damage Protection is selected by the consumer, Section 4(I)(b) provides that "Renter expressly acknowledges and agrees that **Renter will be responsible for <u>all</u> loss or damage**." Ex. A, § 4(I)(b) (emphasis added).

63.    The unilateral mistake in the drafting of Section 4(I)(b) creates a loophole for Home Depot to avoid providing the Damage Protection purchased by consumers, and which, in effect, "swallows" any coverage extended by the other part of Section 4(I)(b) and makes Damage Protection completely illusory.  This renders Plaintiff Mathews, and all similarly situated consumers, without any protection whatsoever because Home Depot's uniform internal corporate policy directs its employees to reject all Damage Protection claims that are not for "repairs due to normal wear and tear on equipment."  *See* Ex. D.

64.    Furthermore, Section 4(I)(a) of the Contract expressly identifies six distinct ways in which a tool can be damaged: "normal use, theft, abuse, misuse, neglect, or intentional acts." Ex. A, § 4(I)(a).

65.    The Damage Protection plan under the Contract only excludes damage which is caused by "theft, abuse or intentional acts." Ex. A, § 4(I)(b). This list of exclusions is inconsistent with Home Depot's internal policy, which is to only cover damage caused by "normal wear and tear" with the Damage Protection. The internal policy is inconsistent with (i) Home Depot's website advertisement regarding the scope of exclusions from Damage Protection, and the (ii) pamphlet that provides that tools that are damaged "in use" are covered by Damage Protection

66.    Furthermore, damage to tools from "normal use," "misuse," and "neglect" are not excluded from coverage under the Damage Protection terms in the Contract, but despite this, if a consumer pays for Damage Protection and the tool is damaged due to "normal use," "misuse," or "neglect," Home Depot still denies coverage and covers only "normal wear and tear," as evidenced by the corporate policy attached as Exhibit D.

## STATEMENT OF FACTS
### (as to Ronald Reeves)

67.    Plaintiff Reeves visited Home Depot Store Number 4103 located at 1336 Bristol Pike, Bensalem, Pennsylvania 19020 ("Bensalem Home Depot") on August 7, 2021.

68.    Plaintiff Reeves leased a jackhammer, which Home Depot called a PRO Small Breaker, for a duration of one day for a Rental Price of $119.  A copy of Page 1 of Plaintiff Reeves' contract with Home Depot is attached as Exhibit I.

69.    Plaintiff Reeves declined Damage Protection.

70.    Plaintiff Reeves rented this tool subject to the same uniform "form" Equipment Rental Agreement Terms and Conditions that is attached as Exhibit A and which expressly provides that late fees will assessed on a "daily recurring basis."

71.    In the event his tool was not returned on time, Plaintiff Reeves agreed to a "weekly recurring charge of $476.00" – which is $68.00 per day.  *See* Ex. I.

72.    Plaintiff Reeves returned the tool undamaged 11 days late on August 19, 2021.  *See* Ex. J.

73.    Accordingly, Plaintiff Reeves should have been charged for 11 days of late fees.

74.    Instead, and as a result of Home Depot's pattern and practice of overcharging rental tool customers for late fees, Plaintiff Reeves was charged **$952.00** in rental charges (not including sales tax), as if he had kept the tool for two full weeks (i.e., 14 days).  *See* Ex. J.  A copy of the statement provided to Plaintiff Reeves showing these charges is attached as Exhibit J.

75.    Despite Reeves disputing these charges, Home Depot charged Plaintiff Reeves the full $952.00 on his Discover Credit Card.  *See* Ex. J.

### The Lowe's Tool Rental Agreement Is Evidence of Internal Inconsistencies in the Home Depot Contract

76.    For purposes of comparison, and to illustrate the internal inconsistencies in the Contract, a copy of the tool rental contract used by Home Depot's competitor, Lowe's Companies, Inc. ("Lowe's") is attached hereto as Exhibit K.

77.    The Lowe's contract does not contain the internal inconsistencies contained in the Home Depot Contract.  For instance, Section 5(c) of the Lowe's contract makes clear that a consumer who rents a tool from Lowe's and who elects Damage Protection coverage from Lowe's owes 15% of the Rental Price for Damage Protection *plus* an additional 10% if the Rental Period is extended as a result of the tool being returned late.  Ex. K at 7.

78.    In addition, Section 5(a) of the Lowe's contract also expressly provides that the consumer is responsible for all damage "beyond reasonable wear and tear." Ex. K at 6.

79.    The contrast between the language of Lowe's tool rental agreement and the language of the Home Depot Contract brings into stark relief the problems and ambiguities identified in Home Depot's own Contract.

## CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this lawsuit as a class action seeking representation of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

81.     Plaintiffs Mathews and Reeves assert claims for breach of contract and O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a class (hereafter "Class 1" or the "Nationwide Late Fee Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract and who were charged Additional Rental Fees as a late fee penalty because they returned the tool after the expiration of the Rental Period, and whose Additional Rental Fees were assessed on a recurring weekly basis or some basis other than a daily recurring basis, from the period of six years from the filing of this lawsuit through the date of a class certification order.

82.     In the alternative, Plaintiff Mathews asserts claims for breach of contract and attorneys' fees and expenses of litigation on behalf of a subclass (hereafter "Class 1a" or the "Texas Late Fee Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot in Texas by executing a contract with language identical to or materially similar to the Contract and who were charged Additional Rental Fees as a late fee penalty because they returned the tool after the expiration of the Rental Period, and whose Additional Rental Fees were assessed on a recurring weekly basis or some basis other than a daily recurring basis, from the period of four years from the filing of this lawsuit through the date of a class certification order.

83.    In the alternative, Plaintiff Reeves asserts a claim for breach of contract and attorneys' fees and expenses of litigation on behalf of a subclass (hereafter "Class 1b" or the "Pennsylvania Late Fee Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot in Pennsylvania by executing a contract with language identical to or materially similar to the Contract and who were charged Additional Rental Fees as a late fee penalty because they returned the tool after the expiration of the Rental Period, and whose Additional Rental Fees were assessed on a recurring weekly basis or some basis other than a daily recurring basis, from the period of four years from the filing of this lawsuit through the date of a class certification order.

84.    Plaintiff Mathews asserts claims for breach of contract and O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a class (hereafter "Class 2" or the "Nationwide Damage Protection Fee Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract and who were charged more than 15% of the Rental Price for Damage Protection from the period of six years from the filing of this lawsuit through the date of a class certification order.

85.    In the alternative, Plaintiff Mathews asserts claims for breach of contract and attorneys' fees and expenses of litigation on behalf of a subclass (hereafter "Class 2a" or the "Texas Damage Protection Fee Subclass") defined as follows:

> All Home Depot customers who rented tools from Home Depot in Texas by executing a contract with language identical to or materially similar to the Contract and who were charged more than 15% of the Rental Price for Damage Protection from the period of

four years from the filing of this lawsuit through the date of a class certification order.

86.    Plaintiff Mathews asserts a claim for breach of contract and O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a class ("Class 3" or the "Nationwide Damage Protection Coverage Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection and had the tool damaged by a cause other than an enumerated excluded cause under the Contract, and who were denied coverage for Damage Protection, for the time period of six years before the filing of this lawsuit through the date of a class certification order.

87.    Plaintiff Mathews asserts a claim for breach of contract and attorneys' fees and expenses of litigation on behalf of a subclass ("Class 3a" or the "Texas Damage Protection Coverage Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot in Texas by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection and had the tool damaged by a cause other than an enumerated excluded cause under the Contract, and who were denied coverage for Damage Protection, for the time period of four years before the filing of this lawsuit through the date of a class certification order.

88.    Plaintiff Mathews asserts a claim for breach of contract and attorneys' fees and expenses of litigation on behalf of a subclass ("Class 3b" or the "Nationwide Damage Protection – Normal Use Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by
> executing a contract with language identical to or materially similar
> to the Contract, and who purchased Damage Protection and had the
> tool damaged through "normal use" and who were denied coverage
> for Damage Protection, for the time period of six years before the
> filing of this lawsuit through the date of a class certification order.

89.    Plaintiff Mathews asserts a claim for breach of contract and attorneys' fees

and expenses of litigation on behalf of a subclass ("Class 3c" or the "Texas Damage

Protection – Normal Use Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot in
> Texas by executing a contract with language identical to or
> materially similar to the Contract, and who purchased Damage
> Protection and had the tool damaged through "normal use" and who
> were denied coverage for Damage Protection, for the time period of
> four years before the filing of this lawsuit through the date of a
> class certification order.

90.    In the alternative to the Class 3 and Classes 3a, 3b and 3c, Plaintiff asserts

a claim for fraud on behalf of a class ("Class 4" or the "Texas Fraud Class") defined

as follows:

> All Home Depot customers in the state of Texas who rented tools
> from Home Depot by executing a contract with language identical
> to or materially similar to the Contract, and who purchased Damage
> Protection, for the time period of four years before the filing of this
> lawsuit through the date of a class certification order.

91.    In the alternative to Class 3, Subclass 3a, and Class 4, Plaintiff Mathews

assert claims for rescission, restitution and O.C.G.A. § 13-6-11 attorneys' fees and

expenses of litigation on behalf of a class (hereafter "Class 5" or the "Nationwide Rescission Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection and who did not have Damage Protection claims honored by Home Depot, for the time period of four years before the filing of this lawsuit through the date of a class certification order.

92.     In the alternative to Class 3, Subclass 3a, and Class 4, Plaintiff Matthews asserts claims for rescission, restitution and O.C.G.A. § 13-6-11 attorneys' fees and expenses of litigation on behalf of a subclass (hereafter "Class 5a" or the "Texas Rescission Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot in Texas by executing a contract with language identical to or materially similar to the Contract, and who purchased Damage Protection and who did not have Damage Protection claims honored by Home Depot, for the time period of four years before the filing of this lawsuit through the date of a class certification order.

93.     Plaintiff Reeves asserts claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1 *et seq.*, as well as for and attorneys' fees and expenses of litigation on behalf of a subclass ("Class 6" or the "Pennsylvania UTPCPL Class") defined as follows:

> All Home Depot customers who rented tools from Home Depot in Pennsylvania by executing a contract with language identical to or materially similar to the Contract and who were charged Additional

Rental Fees as a late fee penalty because they returned the tool after the expiration of the Rental Period, and whose Additional Rental Fees were assessed on a recurring weekly basis or some basis other than a daily recurring basis, from the period of six years from the filing of this lawsuit through the date of a class certification order.

94.    Excluded from these classes and subclasses are all officers and employees of Home Depot and its affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the classes and subclasses; government entities; and the judges to whom this case is assigned, their immediate family, and their court staff.

### Fed. R. Civ. P. 23(a)

95.    **Numerosity.**  In 1995, Home Depot opened Tool Rental centers.  By 2015, the company was "the fourth largest equipment company in the U.S. and the biggest general large equipment and small tool rental company in the world."[4] Upon information and belief, members of each of the Classes and Subclasses identified herein are so numerous and geographically dispersed throughout the United States and throughout the States of Texas and Pennsylvania that separate joinder of each is impracticable.

---

[4] *See* https://corporate.homedepot.com/newsroom/home-depot-tool-rental-20-years (last visited 6/29/2022).

96.    **Ascertainability.**   The members of each of the Classes and Subclasses identified herein are ascertainable and readily identifiable from Home Depot's own information, documents, and data.

97.    **Commonality.**   Common questions of law and fact predominate, which are susceptible to common answers:

     a.   Has Home Depot breached the Contract with Class 1 and Subclasses 1a and 1b by charging late fees on a basis other than a daily recurring basis (such as a weekly recurring basis);

     b.   Has Home Depot breached the Contract with members of Class 2 and Subclass 2a by charging fees for Damage Protection in excess of 15% of the Rental Price for such protection under the Contract;

     c.   Whether Home Depot has breached the Contract with Class 3 and Subclass 3a by denying Damage Protection claims for anything other than "wear and tear," and denying coverage for damage caused by normal use, misuse or neglect, in violation of the Contract terms;

     d.   Whether Home Depot breached the Contract with Subclass 3(b) and 3(c) by denying coverage for damage caused by normal use;

     e.   Did Home Depot engage in promissory fraud with respect to Class 4 by representing in the Contract that it intended to provide Damage

Protection for damage caused to tools by normal use, misuse or neglect without having any intention of doing so;

f.    Whether a unilateral mistake by Home Depot in the drafting Section 4(I)(b) of the Contract's the Damage Protection provision allows Class 5 and Subclass 5a to rescind that section of the Contract;

g.    Whether Home Depot has engaged in fraudulent or deceptive conduct that creates a likelihood of confusion or of misunderstanding, in violation of Pennsylvania's UTPCPL.  *See* 73 Pa. Const. Stat. § 201-1 *et seq.*

98.    **Typicality.**  Plaintiffs' claims are typical of the claims of all members of all classes.  The Contract contains a Georgia choice of law provision which results in uniform application of Georgia law to all members of Classes 1-3 and 5 and the associated subclasses. The Texas Class and the Texas Subclasses are subject to Texas law, then Plaintiff Mathews as a Texas citizen and consumer at a Texas Home Depot and is typical of the members of those classes.  The Pennsylvania Class and Subclass are subject to Pennsylvania law, and Plaintiff Reeves is a citizen of Pennsylvania.  In addition, each member of each class signed the same or materially identical contract with Home Depot and is governed by the same material terms.

99.     Upon information and belief, the uniform, internal corporate policy of Home Depot provided to Plaintiff Mathews as a justification for Defendant's breach of contract is the same throughout the country and throughout the State of Texas. Furthermore, (i) Plaintiffs Mathews and Reeves are members of Class 1 (and Mathews Subclass 1a, and Reeves Subclass 1b and Class 6) because they were charged additional late fees on a basis other than a daily recurring basis; (ii) Plaintiff Mathews is also a member of (i) Class 2 and Subclass 2a because he incurred charges for Damage Protection in excess of 15% of the Rental Price; (iii) Plaintiff Mathews is a member of Class 3 and Subclasses 3a, 3b, and 3c because he purchased Damaged Protection and Home Depot did not honor his claim due to its "wear and tear" policy; (iv) Plaintiff Mathews is a member of Class 4 because he purchased Damage Protection on the Drain Camera in Texas based on representations Home Depot made in the Contract; (v) Plaintiff Mathews is a member of Class 5 and Subclass 5a because he purchased Damage Protection made illusory due to a unilateral mistake by Home Depot and (vi) Plaintiff Reeves is a member of Class 6 because he was overcharged late fees for a tool he rented in Pennsylvania.

100.    **Adequacy.** Plaintiffs are adequate class representatives because their interests do not conflict with interests of the members of the classes and subclasses, and they will fairly and adequately protect these interests.  Plaintiffs' attorneys are

experienced in litigating consumer class actions and complex litigation, and are adequate class counsel for this case.

## Fed. R. Civ. P. 23(b)(3).

101.   Plaintiffs' claims are maintainable on behalf of the Classes and Subclasses pursuant to Fed. R. Civ. P. 23(b)(3).

102.   Questions of law and fact, including the common questions identified above in paragraph 98, predominate over any questions only affecting individual members of the classes.

103.   A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute.   Members of the classes have individual damages that, while meaningful, are too small to prosecute individually.   Given the relatively small damages individually suffered, individual members of the classes and subclasses would have little interest in controlling the prosecution of this matter in separate actions, and individual plaintiffs would find it difficult to locate adequate counsel to litigate these claims against counsel hired by corporate giant Home Depot. Thousands of individual lawsuits seeking relatively small recoveries based on the same legal theories would burden the court system.   A class action presents far fewer management difficulties and provides the benefits of a single adjudication,

economies of scale, and comprehensive supervision by a single court. Plaintiffs' counsel are unaware of likely difficulties in managing this class action.

104.   It is desirable to concentrate the litigation of these claims in this forum because the class action involves claims under Georgia law according to Home Depot's own uniform nationwide Contract.

105.   Plaintiffs are unaware of other pending litigation on behalf members of the various classes involving these claims against Home Depot.

**COUNT I**
**BREACH OF CONTRACT**
**CLASS 1 or the Nationwide Late Fee Breach of Contract Class**
**CLASS 1a or the Texas Late Fee Breach of Contract Subclass**
**Class 1b or the Pennsylvania Late Fee Breach of Contract Subclass**

106.   The allegations in paragraphs 1 through 105 are incorporated herein by reference.

107.   Section 8(a) of the Contract provides that "if the Equipment is not returned prior to expiration of the Rental Period, Renter will be charged an additional rental fee in the amount identified on Page 1 on a daily recurring basis." Ex. A, § 8(a).

108.   However, if a consumer returns a tool to Home Depot after the expiration of the Rental Period, the consumer is not charged a late fee on a daily recurring basis until the tool is returned.

109.   Instead, Home Depot charges the consumer on a **weekly** recurring basis, or some basis other than a daily recurring basis – which results in the consumer being overcharged for more days of late fees than the Contract permits.

110.   Home Depot's practice of charging its consumers late fees on a basis other than a daily recurring basis is a breach of the Contract and the implied duty of good faith and fair dealing.

111.   Home Depot breached its contract with Plaintiff Mathews by charging him for seven days of late fees despite him being only three days late in returning his tool.  Home Depot breached its contract with Plaintiff Reeves by charging him for fourteen days of late fees despite him returning the tool only eleven days late.

112.   Plaintiffs Mathews and Reeves, Class 1, and Subclasses 1a and 1b have been damaged by this breach of the Contract by Home Depot in an amount to be determined at trial.

## COUNT II
### BREACH OF CONTRACT
### CLASS 2 or the Nationwide Damage Protection Fee Class
### CLASS 2a or the Texas Damage Protection Fee Subclass

113.   The allegations in paragraphs 1 through 105 are incorporated herein by reference.

114.    The Contract provides that "the charge for damage Protection is 15% of the Rental Price and will appear as a separate line item on the Agreement and on the invoice."  Ex. A, § 4(I)(b).

115.    The Rental Price is defined as "the rental subtotal price identified on Page 1."  Ex. A, § 1.

116.    Neither the Rental Price definition, nor the "rental subtotal price identified on Page 1," includes or in any way indicates that the charge for Damage Protection will **also** include 15% of any late fees ultimately imposed.

117.    Home Depot charges consumers more than 15% of the Rental Price for Damage Protection if late fees are assessed.

118.    There is no basis in the Contract for Home Depot to charge more than 15% of the Rental Price for Damage Protection.

119.    Home Depot has breached the Contract and the implied duty of good faith and fair dealing as to Plaintiff, Class 2, and Subclass 2a by charging more than 15% of the Rental Price for Damage Protection.

120.    Plaintiff Mathews, Class 2, and Subclass 2a have been damaged by this breach by Home Depot in an amount to be determined at trial.

## COUNT III
## BREACH OF CONTRACT
### CLASS 3 or the Nationwide Damage Protection Coverage Class
### CLASS 3a or the Texas Damage Protection Coverage Subclass
### CLASS 3b or the Nationwide Damage Protection – Normal Use Class
### CLASS 3c or the Texas Damage Protection - Normal Use Class

121.    The allegations in Paragraphs 1 through 105 are hereby incorporated by reference.

122.    Plaintiff Mathews, members of Class 3, and members of Subclass 3a rented tools from Home Depot that were damaged either by normal use, misuse, or neglect after having purchased Damage Protection.

123.    Plaintiff Mathews, and members of Subclasses 3b and 3c, rented tools from Home Depot that were damaged by normal use after having purchased Damaged Protection.

124.    Home Depot's internal policy mandates that only "repairs due to normal wear and tear" are covered under Damage Protection – and that damage from normal use, misuse, or neglect are not subject to Damage Protection coverage.

125.    Home Depot denied Damage Protection to Plaintiff Mathews, Class 3, and Subclasses 3a, 3b, and 3c, despite the fact that damage from normal use, misuse, or neglect are covered under Section 4(I)(b) of the Contract.

126.    Home Depot then charged Plaintiff Mathews, members of Class 3, and members of Subclasses 3a, 3b, and 3c "repair, replacement and Administrative

Charges," rather than honoring the Damage Protection, as well as sales tax on these charges.

127.    Plaintiff Mathews, members of Class 3, and members of Subclasses 3a, 3b and 3c, have been damaged by Home Depot's breach of the contract and the implied duty of good faith and fair dealing in an amount to be determined at trial.

**COUNT IV**
**PROMISSORY FRAUD**
**CLASS 4 or the Texas Fraud Class**
**(in the alternative to Count III)**

128.    The allegations in Paragraphs 1 through 105 are hereby incorporated by reference.

129.    Home Depot entered into the Contract with members of Class 4 with the intent not to perform the duties imposed on it by Section 4(I)(b) of the Contract.

130.    It was the intent and design of Home Depot to deceive members of Class 4 and to induce them into entering the Contract.

131.    The members of Class 4 entered into the Contract and paid Home Depot for Damage Protection in reasonable reliance on the representations made by Home Depot in the Contract.

132.    The members of Class 4 were entitled as a matter of law to rely on the representations made by Home Depot in the Contract, and such reliance was reasonable as a matter of law.

133.   Plaintiff Mathews and the members of Class 4 were damaged by relying on Home Depot's representations in Section 4(I)(b) of the Contract in that they purchased Damage Protection that Home Depot did not intend to honor, and in fact did not honor.

134.   The damages of Class 4 include, but are not limited to, the amounts paid for the Damage Protection, and any amounts charged by Home Depot to be paid for damage to tools.

135.   Class 4 seeks an award of punitive damages and attorneys' fees and expenses of litigation in connection with Home Depot's promissory fraud.

**COUNT V**
**EQUITABLE RESCISSION AND RESTITUTION**
**CLASS 5 or the Nationwide Rescission Class**
**SUBCLASS 5a or the Texas Recission Class**
**(in the alternative to Count III)**

136.   The allegations in Paragraphs 1 through 105 are hereby incorporated by reference.

137.   Home Depot's unilateral mistake in drafting Section 4(I)(b) of the Contract has created a Contract that renders the Damage Protection purchased by Plaintiff Mathews and the members of Class 5 and Subclass 5a meaningless and valueless, and allows Home Depot to deny coverage under Section 4(I)(b) for any reason or no reason at all.  Any "Damage Protection" coverage sold by Home Depot is inherently

and fundamentally illusory because of the final sentence Home Depot inserted into Section 4(I)(b) of the Contract.

138.   The final sentence in Section 4(I)(b) of the Contract flatly contradicts the terms of the Damage Protection program advertised by Home Depot and set out in the earlier portions of the Contract to entice consumers to pay Home Depot to purchase such coverage.

139.   As a matter of law, the final sentence in Section 4(I)(b) of the Contract is a unilateral mistake by Home Depot.   It has the purpose and function of disadvantaging consumers and allowing Home Depot to reject coverage for any reason, making Damage Protection a profit center for the company rather than a financial protection for the consumer.

140.   Furthermore, the clear inconsistencies between causes of damage that are not excluded from Damage Protection coverage (damage due to "misuse" and "neglect") and Home Depot's corporate policies used by its managers (*see, e.g.*, Ex. D) further make any coverage under Damage Protection illusory.

141.   Plaintiff Mathews, the members of Class 5, and the members of Subclass 5a, seek an order from this Court rescinding the Damage Protection provision of the Contract.

142.  Plaintiff Mathews, all members of Class 5, and all members of Subclass 5a have made payment to Home Depot for sham Damage Protection coverage that was non-existent and illusory, and these payments were made pursuant to a contract provision that Plaintiff Mathews, the members of Class 5, and the members of Subclass 5a seek to rescind.

143.  Plaintiff Mathews, all members of Class 5, and all members of Subclass 5a are entitled to repayment from Home Depot of all Damage Protection premiums paid to Home Depot, all Administrative Charges paid by Class and Subclass Members, and all sales taxes paid on said payments.

**COUNT VI**
**PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER**
**PROTECTION LAW**
**CLASS 6 or the Pennsylvania UTPCPL Class**

144.  The allegations in Paragraphs 1 through 105 are hereby incorporated by reference.

145.  Plaintiff Reeves and the members of Class 6 leased goods through Home Depot's tool rental program, and primarily for personal, family, or household purposes.

146.  Home Depot's pattern and practice of overcharging consumers who keep their tools longer than the Rental Period by charging excessive late fees prohibited

by the Contract terms is an unfair or deceptive practice, in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

147.    Plaintiff Reeves and the other members of Class 6 were overcharged for late fees they did not incur under the terms of the Contract, and they suffered an ascertainable loss of money as a result of the unlawful practice.

**COUNT VII**
**O.C.G.A. § 13-6-11 and V.T.C.A. § 38.001**
**ATTORNEYS' FEES AND EXPENSES OF LITIGATION**

148.    The allegations in Paragraphs 1 through 105 are hereby incorporated by reference.

149.    Home Depot has acted in bad faith, has been stubbornly litigious, and has caused Plaintiffs and the members of the various classes unnecessary trouble and expense thereby entitling Plaintiffs and the members of the classes to an award of attorneys' fees and expenses of litigation.

150.    Home Depot has breached the Contract and damaged Plaintiffs, and all Class and Subclass members, thus entitling Plaintiffs and all members of the Classes and Subclasses to an award of attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes and Subclasses, demands a trial by jury on all triable issues and seek judgment as follows:

a)    An order certifying this action as a class action on behalf of Class 1, and an award of all damages for provable at trial;

b)    An order certifying this action as a class action on behalf of Subclass 1a and 1b, and an award of all damages for provable at trial;

c)    An order certifying this action as a class action on behalf of Class 2, and an award of all damages provable at trial;

d)    An order certifying this action as a class action on behalf of Subclass 2a, and an award of all damages for provable at trial;

e)    An order certifying this action as a class action on behalf of Class 3, and an award of all damages provable at trial;

f)    An order certifying this action as a class action on behalf of Subclass 3a, and an award of all damages provable at trial;

g)    An order certifying this action as a class action on behalf of Subclass 3b, and an award of all damages provable at trial;

h)   An order certifying this action as a class action on behalf of Subclass 3c, and an award of all damages provable at trial;

i)   In the alternative to Class 3 and Subclasses 3a, 3b, and 3c, an order certifying this action as a class action as to Class 4, and an award of all damages provable at trial including punitive damages;

j)   Also in the alternative to Class 3 and Subclass 3a, 3b, and 3c, for an order rescinding Section 4(I)(b) of the Contract as to Class 5, and for an order of restitution requiring Home Depot to repay all Damage Protection fees and related fees;

k)   Also in the alternative to Class 3, Subclasses 3a, 3b, and 3c, and Class 5, for an order rescinding Section 4(I)(b) of the Contract as to Class 5a, and for an order of restitution requiring Home Depot to repay all Damage Protection fees and related fees;

l)   An order certifying this action as a class action on behalf of Class 6, and an award of all damages for provable at trial and recoverable under the Pennsylvania UTPCPL, including treble damages and punitive damages;

m)   for all other damages according to proof;

n)     for an award of attorneys' fees and expenses pursuant to O.C.G.A.

§ 13-6-11;

o)     for pre-judgment interest as allowed by law;

p)     for costs of Court;

q)     for all other relief this Court deems necessary and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable.

**BAYUK PRATT, LLC**

*/s/Bradley W. Pratt*
Bradley W. Pratt
Georgia Bar No. 586672
4401 Northside Pkwy, Suite 390
Atlanta, Georgia 30327
Telephone: (404) 500-2669
bradley@bayukpratt.com

**THE LOCKETT LAW FIRM LLC**

*/s/John A. Lockett III*
John A. Lockett III
Georgia Bar No. 455549
1397 Carroll Drive
Atlanta, Georgia 30318
Telephone: (404) 806-7448
john@lockettlawfirm.com

and

CROSS KINCAID

/s/Meredith C. Kincaid
Meredith C. Kincaid
Georgia Bar No. 148549
520 W. Ponce de Leon Ave. No. 1858
Decatur, Georgia 30030
Telephone: (404) 948-3022
meredith@crosskincaid.com
*Counsel for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned certifies that this document has been prepared in Times New Roman 14-point font in accordance with Local Rule 5.1(B).

*/s/John A. Lockett, III*
John A. Lockett III
Georgia Bar No. 455549
