**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| DARIN MATHEWS, individually and on behalf of all others similarly situated, et al., | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | 1:22-CV-02605-ELR |
| HOME DEPOT USA, INC., | * * | |
| Defendant. | * * | |

—————

**ORDER**

—————

There are several matters pending before the Court that are ripe for review. The Court sets forth its reasoning and conclusions below.

## I.    Background

Plaintiffs Darin Mathews and Ronald Reeves bring this putative class action against Defendant Home Depot USA, Inc., alleging breach of contract claims on behalf of individuals who rented tools from Defendant pursuant to a "form" contract that is "materially identical" in Defendant's stores throughout the United States (the "Agreement"). See 2d Am. Compl. ¶¶ 1–3 [Doc. 34]. Plaintiffs' claims are based on two provisions of the Agreement: the "Additional Rental Fees Provision"

(Count I, brought by Plaintiff Reeves[1]) and the "Damage Protection Provision" (Count II, brought by Plaintiff Mathews).

## A.    Additional Rental Fees Provision (Count I)

The Additional Rental Fees Provision states that customers "will be charged an additional rental fee in the amount identified on Page 1 on a daily recurring basis." [Doc. 123-4 ¶ 8(a)]. However, the only place on "Page 1" that identifies an amount that customers will be charged if they do not return their rental on time says that customers "agree to a weekly recurring charge of [a dollar amount that varies depending on the rental selected]." [Doc. 123-8]. To harmonize the inconsistency between the unspecified "daily recurring" charge and the specific "weekly recurring charge," Plaintiffs contend that one-seventh of the "weekly recurring charge" listed on Page 1 must be charged on a "daily recurring basis" for each day that the tool is late and that Defendant fails to charge customers accordingly. [See Doc. 149 at 3].

For example, Plaintiff Reeves rented a piece of equipment for one day, which was priced at $119 per day, or $476 per week. [Doc. 123-8]. Page 1 of his Agreement

---

[1] Plaintiff Mathews initially also brought a breach-of-contract claim related to the Additional Rental Fees Provision. However, it appears that he abandoned that claim in his Motion for Partial Summary Judgment. Compare 2d Am. Compl. ¶ 112 (alleging Plaintiff Mathews was damaged by Defendant's breach of the Additional Rental Fees Provision), with [Doc. 123-1 at 27–28] (arguing that Plaintiff Mathews only incurred damages pursuant to the Damage Protection Provision). Plaintiffs also concede that they have abandoned their promissory fraud, recission, and Pennsylvania Unfair Trade Practices and Consumer Protection Law claims. [See Doc. 133-1 at 40] ("Plaintiffs abandon their other claims, and therefore [Defendant's] motion for summary judgment on those claims is moot."). Thus, the Court grants Defendant summary judgment against Plaintiffs as to those claims. See Baxter v. Santiago-Miranda, 121 F.4th 873, 884 (11th Cir. 2024).

stated that if he did not return the equipment on time, he agreed "to a weekly recurring charge of $476." Plaintiff Reeves returned the equipment 11 days late. [Id.] Under Plaintiffs' interpretation of Additional Rental Fee Provision, Plaintiff Reeves should have been charged $119 for his first day plus $68 multiplied by 11 for his overdue days ($476 divided by seven equals $68), for a total of $867. [Doc. 123-1 at 6]. Instead, he was charged $952. [Doc. 123-9]. Accordingly, Plaintiff Reeves claims that Defendant breached the Agreement by overcharging him $85 (Count I).

Defendant interprets the Agreement differently. It contends that the "amount on "Page 1" to be charged at a "daily recurring rate" is the amount listed in a table at the top of the page under the rental period option for "1 Day," which is located between rental period options and prices for "4 Hours," "2 Days," "1 Week," and "4 Weeks." [See, e.g., Doc. 112-1 at 16]. Thus, Defendant argues, it was authorized to charge Plaintiff Reeves $119 per day for every day his rental was late—in other words, Defendant purportedly could have charged Plaintiff $1,428 (Plaintiff's initial $119 one-day charge plus $119 times 11). [Id.] However, Defendant instead charged Plaintiff $952 based on its uniform practice of "giv[ing] tardy renters a discount by using the weekly rate" listed in the table on Page 1—which is less than five days of the daily rate charge—"after a tool is more than four days late." See, e.g., Declaration of Jenifer L. Causey ("Causey Decl.") ¶¶ 15–18 [Doc. 127-5]. Thus, because Defendant charged Plaintiff Reeves the equivalent of two weekly rates ($952 is $476

times two) when he returned his tool 11 days late, Defendant argues it did not overcharge Plaintiff Reeves or breach the Agreement. [Doc. 112-1 at 18–19].

### B.    Damage Protection Provision (Count II)

Under the "GENERAL" section of the Agreement, Defendant agrees to provide the rented equipment described on "Page 1" during the selected rental period (defined in the contract as the "Rental Period") "according to the rental subtotal price identified on Page 1 ('Rental Price')." [Doc. 123-4 ¶ 1]. Additionally, under the "EQUIPMENT DAMAGE / REPAIRS / PROTECTION" section, if a customer elects to add damage protection (an optional service offered by Defendant that, if selected, relieves the renter of any repair or replacement charges if the equipment is damaged during normal use during the "Rental Period"), the customer agrees to be charged "15% of the Rental Price." [Id. ¶ 4(I)(b)].

Below is an example of "Page 1" from Plaintiff Mathews's agreement. As mentioned above, Page 1 lists the selected tool's rental price in a table for five different rental periods: 4 hours, 1 day, 2 days, 1 week, or 4 weeks. Depending on the selected rental period price, the corresponding amount is shown under a "Contract Amt." column. Plaintiff Mathews chose to rent a drain camera for 4 hours, resulting in a "Rental Subtotal" of $139. He also opted into Damage Protection, so his contract amount included $20.85 for damage protection (15% of $139), in addition to "Estimated tax," for an "Estimated Total" of $173.04.

**Rental Center Hours**
MON 6A-8P TUE 6A-8P WED 6A-8P THU 6A-8P FRI 6A-8P SAT 6A-8P SUN 8A-8P

| RENTAL DURATION | DUE BACK | FOR ASSISTANCE CALL |
|---|---|---|
| 4 Hours | Jul. 17 @ 3:33pm | (210)871-7602 |

Deposit Trans:  Register #: **90**   Transaction #: **28903**       Date: **07/17/21**   eDeposit #: **0580210717073334128802151**

| Agent Name: | DARIN MATHEWS | Date Out: 07/17/2021 - 11:33 AM | Contract Created By: | rbp6r1m |
|---|---|---|---|---|
| | | Date Due: 07/17/2021 - 3:33 PM | Checked In By: | |
| | | Date In: | | |

| Part Number | Item Description | 4 Hours | 1 Day | 2 Days | 1 Week | 4 Weeks | Contract Amt. |
|---|---|---|---|---|---|---|---|
| 0446300945 | **Drain Camera** | $139 | $199 | $398 | $796 | $2,388 | $139 |
| | (1) Locator For Camera (XT-512) | | | | | | |

| | |
|---|---|
| Rental Subtotal | $139.00 |
| Damage Protection | $20.85 |
| Estimated Tax | $13.19 |
| **Estimated Total** | **$173.04** |

[Doc. 123-10].

Ultimately, Plaintiff Mathews returned his rental camera after three days and five hours instead of the agreed-upon four-hour period. When he returned the camera, Defendant calculated Plaintiff Mathews's 15% damage protection fee as 15% of his Rental Subtotal *plus* his Additional Rental Fees (i.e., his late fees). Consequently, instead of paying $20.85 for damage protection, he paid $45.90 (15% of $306). Plaintiff Mathews claims that Defendant breached the Agreement by overcharging him by $25.05 (Count II).

Defendant, on the other hand, argues that "context and common sense" imply that the Rental Subtotal on Page 1 is an estimated amount and that the Rental Subtotal "can go up or down based on how long the customer actually keeps the tool." [Doc. 112-1 at 27]. Thus, Defendant contends, it did not overcharge Plaintiff

Mathews or breach the Agreement by charging him 15% of the Rental Subtotal on Page 1 plus 15% of his subsequently incurred late fees. [Id.]

### C.    The 25-Day Notice Provision

As relevant here, under the "PAYMENT" section of the Agreement, the customer is responsible for all charges due in full at the commencement of the Rental Period or upon Defendant's request. [Doc. 123-4 ¶ 2]. Additionally, the customer "must notify [Defendant] in writing of any disputed amounts, including credit card charges, within twenty-five (25) days after the receipt of [the] rental contract/invoice, or [the customer] will be deemed to have irrevocably waived [his or her] right to dispute such amounts" (the "25-Day Notice Provision"). [Id.]

Plaintiffs never provided Defendant written notice of their disputed charges. Deposition of Darin Mathews ("Mathews Dep.") at 128:1–4 [Doc. 102-1]; Deposition of Ronald Reeves ("Reeves Dep.") at 171:4–8. However, they did orally dispute their charges through various calls with Defendant's customer service representatives. Mathews Dep. at 123:8–124:20; 128:5–7; Reeves Dep. at 171:9–172:15.

## II.    Procedural History

At the motion to dismiss stage, the Court found that the Additional Rental Fees and Damage Protection Provisions were "ambiguous" and that Plaintiffs' allegations were sufficient to state a claim. [Doc. 28]. However, the Court did not

reach the question of whether the 25-Day Notice Provision was enforceable or applicable to Plaintiffs' claims. [Id. at 7]. After the close of discovery, Plaintiffs filed a Motion for Class Certification [Doc. 97] and Motion for Partial Summary Judgment [Doc. 122]. Meanwhile, Defendant filed a Motion for Summary Judgment [Doc. 111] and Motion to Exclude the Opinions and Testimony of Jason Wells [Doc. 115].[2] Each motion has been fully briefed and is ripe for the Court's review.[3] However, because the Court finds below that Defendant's Motion for Summary Judgment is due to be granted because the 25-Day Notice Provision bars Plaintiffs' claims, the Court limits its following discussion to that motion.

## III. Legal Standard

The Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is material if resolving the factual issue might change the suit's outcome pursuant to the governing law. See id.

---

[2] Defendant also filed a Motion to Substitute Expert Witness seeking to substitute F. Dean Driskell III in place of David P. Hoffman as its expert witness in this matter because Mr. Hoffman has passed away. [Doc. 158].

[3] The Court heard oral argument on these motions on February 5, 2025. [See Doc. 157].

When ruling on a motion for summary judgment, the Court must view all evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must show the lack of evidentiary support for the non-moving party's position. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the moving party meets this initial burden, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial to survive summary judgment. See Celotex, at 324–26. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52. "The mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. Id. at 252. There must be evidence on which the jury could reasonably find for the non-moving party. See id. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)).

## IV.    Discussion

Defendant is entitled to summary judgment because there is no genuine dispute of material fact that Plaintiffs waived their claims under the Agreement by failing to provide written notice. As relevant here, the Agreement contains the following paragraph:

> **2.    PAYMENT**. Renter is responsible for all charges due in full at the commencement of the Rental Period or upon The Home Depot's request, using a payment card approved by The Home Depot ("Renter Card"), including deposits ("Deposits"). Renter consents to the reservation of credit for estimated charges due, and authorizes The Home Depot to process all amounts due, on Renter Card (including vehicle rental, traffic law violations and parking citations, and any applicable administrative charge. In the event Renter cancels delivery of large equipment within 12 hours of the scheduled delivery time, a cancellation fee of $___ will be charged to the credit card on file. All charges are subject to audit, and either party will promptly pay to or credit the other party for any necessary adjustments or corrections to charges as a result the audit. *Renter must notify The Home Depot in writing of any disputed amounts, including credit card charges, within twenty-five (25) days after the receipt of The Home Depot rental contract/invoice, or Renter will be deemed to have irrevocably waived its right to dispute such amounts.* Renter will also pay all direct costs of collection, including attorney fees, and interest at the highest rate permitted by law on any past-due amounts.

[Doc. 123-4 ¶ 2] (emphasis added).

It is undisputed that Plaintiffs did not provide written notice that they contested their charges within the required 25-day window. Thus, Plaintiffs irrevocably waived their right to dispute their charges under the contract and

therefore cannot bring this lawsuit. Plaintiffs' four arguments to the contrary are unavailing.

First, Plaintiffs argue that the 25-Day Notice Provision pertains only to a customer's right to "audit" their charges because the provision follows a sentence about audits. [Doc. 123-1 at 28–30]. The Court disagrees. "Georgia law is clear that construction of a contract is a matter of law for the court." Mehic v. Allstate Prop. & Cas. Ins. Co., 587 F. Supp. 3d 1327, 1331 (N.D. Ga. 2022) (cleaned up) (quoting Envision Printing, LLC v. Evans, 786 S.E.2d 250, 252 (Ga. Ct. App. 2016)). The first step in contract construction is to decide whether the pertinent contractual "language is clear and unambiguous." Id. (quoting Envision Printing, 786 S.E.2d at 252). "If it is, no construction is required" and the analysis ends there; "the court simply enforces the contract according to its clear terms." Id. (quoting Envision Printing, 786 S.E.2d at 252). In deciding whether the relevant language is clear and unambiguous, "courts initially look to the four corners of the agreement to ascertain the meaning of the contract from the language employed" and, in so doing, give words "their usual and common" meaning. See id. (cleaned up) (quoting Brogdon v. Pro Futures Bridge Cap. Fund, L.P., 580 S.E.2d 303, 306 (Ga. Ct. App. 2003) and O.C.G.A. § 13-2-2(2)).

Here, the 25-Day Notice Provision plainly states that the written notice requirement pertains to "*any* disputed amounts, including credit card charges."

[Doc. 123-4 ¶ 2] (emphasis added). Although the sentence is preceded by a sentence about all charges being subject to audit, there is nothing to indicate that the Notice Provision is limited to only audited charges. Instead, the 25-Day Notice Provision unambiguously applies to "*any* disputed amounts," including credit card charges, regardless of whether an optional audit occurred.[4] Thus, the Court must enforce the Agreement according to its clear terms.

Second, Plaintiffs argue that the 25-Day Notice Provision is an exculpatory clause that is unenforceable because Georgia law requires such clauses to be "prominent." [Doc. 123-1 at 31–34]. An exculpatory clause is a contract provision that shields one party from liability for a wrongful act. See Omstead v. BPG Inspection, LLC, 903 S.E.2d 7, 12 (Ga. 2024). The Supreme Court of Georgia has distinguished between true exculpatory clauses—which completely relieve a party from liability—and clauses that merely limit the timeline for liability, such as clauses that impose a deadline to assert a claim but otherwise still allow a party to be found liable. See id. at 10, 12 (finding that Georgia law on exculpatory clauses did not apply to a contract provision that prohibited a plaintiff from suing a defendant at any time after one year from when defendant rendered the agreed-upon services under

---

[4] The Court's conclusion is underscored by the fact that the sentence after the 25-Day Notice Provision discusses attorney fees and interest related to past-due amounts, which has no relation to audited charges. [See Doc. 123-4 ¶ 2]. Thus, taking the audit provision, the 25-Day Notice Provision, and the past-due amounts provision together, each sentence functions as a standalone agreement relevant to the paragraph's "PAYMENT" heading. [See id.]

the contract). But see id. at 17 n.13 (Peterson, J., concurring) (stating that the "effect of a too-short limitations period" to file a lawsuit "seems to me as not materially different from an exculpatory clause"). Here, the 25-Day Notice Provision is not a true exculpatory clause because it still contemplates that Defendant may be liable for disputed charges. The provision merely requires that, as a condition precedent to liability, the customer must provide notice of the dispute in writing. Because this is not a true exculpatory clause, Plaintiff's arguments related to exculpatory clauses are inapposite. See, e.g., Alghadeer Bakery & Mkt., Inc. v. Worldpay US, Inc., No. 1:16-CV-03627, 2018 WL 5016496, at *4 (N.D. Ga. Oct. 16, 2018) (collecting cases showing that courts applying Georgia law "routinely enforce" similar notice provisions without applying requirements that are typically applied to exculpatory clauses, such as the prominence test).

Third, Plaintiffs argue that the 25-Day Notice Provision is unenforceable because it is too vague as to where and when a customer is supposed to dispute a charge. [Doc. 123-1 at 36–37]. Plaintiffs point out that the 25-Day Notice Provision does not include a physical address or email address for delivering the required written notice, and Page 1 and Section 9 of the Agreement contain different phone numbers for how to contact Defendant for questions or assistance. [Id.] Further, Plaintiffs take issue with the fact that the Notice Provision states that written notice is required 25 days "after receipt of The Home Depot rental contract/invoice"

because customers receive a rental contract when they first rent the tool, and they receive their invoice when they return their tool—and neither document is labeled "rental contract" or "invoice." [Id. at 37]. Thus, Plaintiffs argue that the Notice Provision is unenforceable because it is too vague.

In response, Defendant points out that Page 1 of Agreement includes the physical store address associated with a customer's rental, which is where a customer can send a written dispute. [Doc. 137-1 at 34]. Further, Defendant explains that the 25-day notice period runs from when the customer receives his or her final invoice—the only sensical reading of the provision—because a customer would have no charges to dispute until he or she receives the invoice showing the final charges. [Id. at 33–34]. In reply, Plaintiffs "agree that the only way any notice provision could work is if it runs from the date of the invoice" but maintain that the provision is "unenforceably vague" because the Agreement says "contract/invoice." [Doc. 139 at 17].

The Court is unmoved by Plaintiffs' arguments. Under Georgia law "the test" to "determine whether a contract is unenforceable because of vagueness" is to ask whether a contract contains "matter which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves." Sheppard v. Sheppard, 494 S.E.2d 240, 242 (Ga. Ct. App. 1997). "It is not necessary that a contract shall state definitely and specifically all

facts in detail to which the parties may be agreeing." Id. (cleaned up). Additionally, one of the rules of contract construction is that "the contract must be read reasonably and in a way that does not lead to an absurd result." Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co., 522 F. Supp. 3d 1279 (N.D. Ga. 2021) (cleaned up), aff'd, No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021).

Here, although the Agreement could be clearer about where to send Defendant written notice and when the 25-day clock starts to run, any such lack of clarity here does not render the provision unenforceable. Instead, reading the Agreement as a whole, the Court can readily ascertain that the Parties intended to bind themselves to an agreement that the 25-day period to dispute "credit card charges" would start to run after a customer receives his or her final invoice—i.e., when the customer's credit card is charged. Even if the "contract/invoice" term or the location of where to send written notice is arguably ambiguous, the proper remedy is to apply the tools of contract construction and construe the terms against Defendant as the drafter of the Agreement, not to render the entire provision unenforceable. See, e.g., Hertz Equip. Rental Corp. v. Evans, 397 S.E.2d 692, 694 (Ga. 1990) ("[I]f a contract is capable of being construed two ways, it will be construed against the preparer and in favor of the non-preparer."). The Court does so here by interpreting the provision in such a way that maximizes the amount of time a customer has to dispute their charges without reading the 25-day deadline out of the contract. See Argo v. G-Tec

Servs., LLC, 791 S.E.2d 193, 195 (Ga. Ct. App. 2016) (noting that courts should "construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms"). Thus, the Court rejects Plaintiffs' argument that the 25-Day Notice Provision is unenforceable due to vagueness.

Finally, Plaintiffs argue that the 25-Day Notice Provision is substantively and procedurally unconscionable based on (1) the short notice period, and (2) the fact that customers generally do not see or receive a copy of the Agreement until *after* they sign it. [Docs. 123-1 at 34–35; 149 at 14–17]. At the outset, when analyzing whether an agreement is unconscionable, courts applying Georgia law begin by recognizing that Georgia law "protects the freedom of parties to contract." See NEC Techs., Inc. v. Nelson, 478 S.E.2d 769, 774 (Ga. 1996). As described by the Georgia Court of Appeals,

> [i]t is better that one individual may now and then suffer the tedious or costly burdens of an ill-advised agreement than to upset the sanctity and security of contractual relations as a whole. Our laws are founded on the great general weal, and must be construed in the consciousness of this supreme purpose, notwithstanding the regrettable hardship which may result in occasional individual cases.

Yaryan Rosin & Turpentine Co. v. Haskins, 116 S.E. 913, 920 (Ga. Ct. App. 1923). Put another way by the Supreme Court of Georgia,

> [p]eople should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be

permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of *a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice*, that equity will deny the use of its good offices in the enforcement of such unconscionability.

NEC Techs., 478 S.E.2d at 771 (emphasis in original). The Supreme Court of Georgia has also described unconscionable contracts as contracts that "no sane man not acting under a delusion would make and that no honest man would take advantage of[.]" Id. at 771 n.2. Such contracts "shock the conscience" and are "abhorrent to good morals." See id.; Alghadeer Bakery, 2018 WL 5016496, at *4 (quoting BMW Fin. Servs., N.A., Inc. v. Smoke Rise Corp., 486 S.E.2d 629, 630 (Ga. Ct. App. 1997)). It is "rare" for the Georgia Court of Appeals to "uphold[] a trial court determination of unconscionability." Premier Petroleum, Inc. v. Heer, Inc., 899 S.E.2d 785, 794 (Ga. Ct. App. 2024), cert. denied (Aug. 13, 2024).

In determining whether a contractual term is unconscionable, "Georgia law distinguishes between procedural and substantive unconscionability" and generally requires "a certain quantum" of both. Alghadeer Bakery, 2018 WL 5016496, at *4 (citing NEC Techs., Inc. v. Nelson, 478 S.E.2d 769, 772, 773 n.6 (Ga. 1996)). When a court determines that a provision is not substantively unconscionable, the court need not address whether the provision is procedurally unconscionable. See id. at *4, n.4 (citing Clark v. Aaron's, Inc., 914 F. Supp. 2d 1301, 1311 (N.D. Ga. 2012)).

To determine procedural unconscionability, courts applying Georgia law consider a "non-inclusive list of some factors" such as "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." NEC Techs., 478 S.E.2d at 771–72. To determine substantive unconscionability, "courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." Id. at 772.

Plaintiff's argument that the 25-Day Notice Provision is unconscionable fails as a matter of law because the provision is not substantively unconscionable. Alghadeer Bakery is instructive. 2018 WL 5016496. In Alghadeer Bakery, the court rejected plaintiff's argument that the following contract provision in a "non-negotiable, take-it-or-leave-it contract" was substantively unconscionable: "Customer acknowledges and agrees that [the defendant] shall not be liable or otherwise responsible to Customer, and shall have no obligation to reimburse Customer, for any underpayment to Customer or other discrepancy that is not reported to [defendant] in writing within 30 days of Customer's receipt of the

applicable statement."[5] Id. at *2–3. The court reasoned that Georgia courts "routinely enforce" similar notice provisions, and it was "commercially reasonable" to expect customers to be "in the best position" to review their statements and identify discrepancies. Id. at 5. According to the court, it was also commercially reasonable to require customers to notify defendant of any errors within thirty days—"[a]fter all, it would be easier for the parties to resolve disputes while the information is current rather than allowing time to run, information to become stale, or errors to amass." Id. (citing Triad Constr. Co., Inc. v. Robert Half Int'l, Inc., 679 F. App'x 748, 753 n.6 (11th Cir. 2017)). Finally, the Alghadeer Bakery court reasoned that it was not unreasonable for the parties to agree that the defendant would "not be liable for unreported discrepancies." Id. It noted that the 30-day notice provision did not require customers to file a claim against defendant during that time; rather, after satisfying the initial requirement of providing written notice of a payment discrepancy, customers would have "plenty of time" to subsequently

---

[5] The notice provision in Alghadeer Bakery was not located in the agreement's INDEMNIFICATION, DISCLAIMER, LIMITED LIABILITY section. See 2018 WL 5016496 at *2–3. Thus, the plaintiff argued that the provision was unconscionable because it was "not prominent" enough. Id. at *3. The court declined to extend the "prominence requirement" associated with exculpatory clauses to the notice provision and thus rejected the plaintiff's argument. Id. at *4. Here, the Court clarifies that although the conspicuousness of a certain provision may affect its procedural unconscionability, the fact that a provision is inconspicuous is not necessarily dispositive when determining whether a provision is enforceable—it is merely a factor. See NEC Techs., 478 S.E.2d at 772 (noting that "the conspicuousness and comprehensibility" of the contract language at issue is a factor courts consider when determining whether a contract is procedurally unconscionable).

resolve such discrepancies, "whether through a lawsuit or otherwise." <u>Id.</u> Thus, that court concluded that the agreement was not "commercially unreasonable, shocking, or appalling." <u>Id.</u>

This Court finds that the same reasoning applies here. The only argument that Plaintiffs offer about the substantive unconscionability of the 25-Day Notice Provision is that "no Georgia case has ever upheld the enforceability of a notice provision as short as 25 days."[6] [<u>See</u> 149 at 16]. While this is true, it is also true that no Georgia case has ever struck down a 25-day notice provision. And the Court is hard-pressed to find that the five-day difference between the enforceable 30-day notice provision in <u>Alghadeer Bakery</u> and the 25-Day Notice Provision here renders the instant provision so "abhorrent to good morals" that "no sane man not acting under a delusion" would agree to it. 2018 WL 5016496 at *4; <u>NEC Techs.</u>, 478 S.E.2d at 771. Rather, the Court finds that the 25-Day Notice Provision is commercially reasonable and that this not a "rare" case where Georgia law dictates

---

[6] Plaintiffs' arguments about unconscionability primarily focus on the 25-Day Notice Provision's purported *procedural* unconscionability based on the provision's inconspicuous location, the customer's absence of a meaningful choice, and the unequal bargaining power of the Parties. [<u>See</u> Docs. 123-1 at 34–36 (arguing that a contract of adhesion that is delivered to a purchaser after the purchaser commits himself or herself to the transaction is unconscionable); 133-1 at 16–17 (same); 149 at 14–17 (same, and arguing that the provision is unconscionable because it is hidden)]. However, because the Court finds that the 25-Day Notice Provision is not substantively unconscionable, the Court need not address whether it is procedurally unconscionable.

a finding of unconscionability.[7] See Premier Petroleum, 899 S.E.2d at 794. Thus, in

view of the Parties' freedom to contract "without the indulgence of paternalism by

courts in the alleviation of one side or another from the effects of a bad bargain," the

Court must enforce the 25-Day Notice Provision. NEC Techs., 478 S.E.2d at 771;

see In re Colony Square Co., 843 F.2d 479, 481 (11th Cir. 1988) (noting that clear

and unambiguous notice provisions "must be strictly followed" and "summary

judgment is warranted if notice is not given"). Thus, because Plaintiffs failed to

notify Defendant in writing of their disputed credit card charges within 25 days of

receiving their final invoices, they have "irrevocably waived" their "right[s] to

---

[7] During oral argument, Plaintiffs pointed out that Justice Peterson of the Supreme Court of Georgia wrote a concurrence in Omstead v. BPG Inspection, LLC, in which he noted that the parties in that case "acknowledged that a 30-day" limitation period to bring a claim would be unconscionable. 903 S.E.2d 7, 18 (Ga. 2024) (Peterson, J., concurring). However, that case is readily distinguishable from the instant Agreement. In Omstead, the hypothetical 30-day limitation period would have required the plaintiff to file a lawsuit within 30 days of defendant's wrongful act. See id. at 10 (explaining that the limitation clause prohibited the plaintiff from filing a lawsuit after the allotted time). Here, the 25-Day Notice Provision is commercially reasonable and enforceable because it only requires Plaintiffs to provide written notice of their disputed charges. It does not require Plaintiffs to obtain legal representation, draft a complaint, and file a lawsuit against Defendant within that timeframe. See Alghadeer Bakery, 2018 WL 5016496, at *5 (noting that after complying with a 30-day written notice provision, the plaintiff "has plenty of time to resolve any discrepancy, whether through a lawsuit or otherwise"). At oral argument, Plaintiffs conceded this distinction but argued that the provision was nevertheless unconscionable given the "opaque" nature of the Agreement overall. In other words, Plaintiffs argue that it is substantively unconscionable to require a layperson to discern that Defendant overcharged them and submit a written dispute within 25 days. However, Plaintiffs' position is belied by the fact that Plaintiff Mathews did orally dispute his charges related to the Damage Protection Provision multiple times within days of receiving his invoice. See Mathews Dep. at 123:1–18; 124:13–20. Additionally, although "incomprehensible language" is a factor that courts may assess when considering whether a contract is unconscionable, see Premier Petroleum, 899 S.E.2d at 792, the 25-Day Notice Provision itself is not incomprehensible.

dispute such amounts." [See Doc. 123-4 at ¶ 2]. Therefore, Plaintiffs' claims are barred as a matter of law.[8]

## V.    Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 111]. Accordingly, the Court **DISMISSES AS MOOT** Plaintiffs' Motion for Class Certification [Doc. 97], Plaintiffs' Motion for Partial Summary Judgment [Doc. 122], Defendant's Motion to Exclude the Opinions and Testimony of Jason Wells [Doc. 115], and Defendant's Motion to Substitute Expert Witness [Doc. 158]. The Court **DIRECTS** the Clerk to **ENTER JUDGMENT** for Defendant and **TERMINATE** this case.

**SO ORDERED**, this 14th day of February, 2025.

Eleanor L. Ross
United States District Judge
Northern District of Georgia

---

[8] Because this ruling bars Plaintiffs' claims, the Court need not reach the Parties' remaining arguments for summary judgment or other pending motions.

21